# EXHIBIT A

DEFENDANT'S RESPONSE TO PLAINTIFF'S PRELIMINARY INJUNCTION MOTION

## BE 25-003 Wright - FCH Review and Motions Form

**Please place an "X" below to indicate that work is complete.**

| | |
|---|---|
| | **1) Initial Draft of Review and Motion form is prepared and ready to be read by Chair/Dir.** |
| | **2) Reviewed by Chair** |
| | **3) Reviewed by Sr. Dir.** |
| | **4) Reviewed by Assoc. Dir. Ethics Operations** |
| | **5) Review and Motion form is FINAL** |

### FCH COMPLAINT INFO

| | |
|---|---|
| **Case:** | **BE 25-003 \| FCH** |
| **Code of Ethics:** | 2023 |
| **Respondent:** | Roderick Wright, CCC-SLP |
| **Complainant:** | Laura Verdun, CCC-SLP |
| **Complaint Type:** | Member |
| **Case Topic:** | Credentials |
| **Panel:** | All Adjudicators |
| **Reviewer:** | Osmelak |
| **Recused:** | |
| **Date Heard:** | October XX, 2025 |
| **State License:** | |
| **Resp. Counsel:** | |
| **ASHA Status:** | CCC-SLP |
| **Did Respondent Self-Report?** | No |

Note: If the Complaint Type is Board-Initiated, that indicates the complaint was initiated and opened by the Board of Ethics.

### ICH REVIEW

This is Third Party Complaint filed by Laura Verdun ("Complainant") against Roderick Wright, CCC-SLP ("Respondent") on October 2, 2024. The Complainant was the Vice Chair for Speech-Language Pathology (SLP) of the Council for Clinical Certification in Audiology and Speech-Language Pathology (CFCC) and the Chair of the CFCC's SLP committee. The Complainant filed the complaint on behalf of the SLP Committee of the CFCC. The Complainant alleged that the Respondent submitted an application for ASHA certification on April 13, 2024, and that the application included inaccurate information related to the clinical fellowship (CF) experience. A timeline of events in chronological order:

- In August of 2022, the Respondent applied for ASHA certification and noted on his application that his CF start date with Stepping Stones would be September of 2022. The Respondent's start date was pushed back, and his CF was cancelled. During this employment, he only received non-client training and no direct client care.
- In February of 2023, the Respondent began a new position with a different employer, which consisted of 100% telepractice and telesupervision during his CF experience.
- September 12, 2023 (1:31 p.m.), the Respondent emailed ASHA certification and asked what was the "initiation of the CF experience."
- September 12, 2023 (2:10 p.m.), Lilly Schwartz, ASHA Certification Department, responded to the Respondent's email, "That would be the actual start date of your CF experience that we're looking for."
- September 12, 2023 (2:34 p.m.), the Respondent responded and asked "What does the start date entail? The date my program director signed off? Or the Date I got my CF license? Or the date I was hired to do my CF?"
- September 12, 2023 (4:08 p.m.), Ms. Schwartz responded: "Usually it would be the day of actual work. So if you were hired to start on a day but then that was pushed back, it would be whatever day you actually began working at your placement. That could include training/orientation on your first day/week, but remember on average, you need to have 80% of your work week in direct clinical contact. Thanks!"
- September 12, 2023 (4:15 p.m.), the Respondent responded: "I was hired to start after the winter semester in January."
- September 12, 2023 (4:20 p.m.), Ms. Schwartz responded: "Yes, and what was the first date you actually went to work for the agency you were hired for? That would be your start date. If your contract started 3 months ago, but you did not work any days providing clinical services or doing training or orientation for the company, then you cannot count that time period towards your CF experience for ASHA."

- September 12, 2023 (4:42 p.m.), The Respondent responded: "I see, I was a little scared for a moment there. I was hired by Stepping Stones October 6 to tele in Albuquerque public schools and did my onboarding, but my start date kept being pushed back. Finally I went through orientation and training in the school system and got my caseload two weeks before the students went on break. I was supposed to start after the break, but for some reason the assignment was canceled at the last minute so I had to scramble to find another company since stepping stones was not making any effort to help me find one. I hired on with a new company in February and have been there ever since as a teletherapist."
- September 13, 2023 (10:40 a.m.), Amanda Gallagher, ASHA's Director of Clinical Certification, responded to the Respondent and stated: "**Unfortunately, the scenario you described does not provide you with a CF experience start date in 2022 therefore you will need to meet the CF requirements for individuals initiating the CF experience on or after January 1, 2023. If I understand correctly, you did not ultimately work with any clients during your time with the Stepping Stones Group? If that is the case, then the experience cannot count toward your CF because: (i) you didn't receive the necessary direct and indirect mentorship during that time (which would be considered as a partial segment for purposes of your CF report) and (2) the time didn't include at least 80% direct care/care management of clients with communication, cognitive or swallowing difficulties**."
- September 13, 2023, the Respondent sent several additional emails asserting that his CF experience started in 2022 and stated the following points: (1)He was assured his CF experience would count; (2) ASHA had stated that his orientation and training with the school system counted; (3) There is no difference between a CF who did their CF teletherapy and one who did not; (4) Individuals who did in-person Clinical Fellowship Years (CFYs) were not better than him; (5) It is not his fault his assignment was cancelled; and (6) ASHA should not contract him anymore, as he has enough stress in his life, and he will continue the process of his application submission.
- September 25, 2023, Marlaina Stevenson, the SLP who was supposed to be the Respondent's CF mentor at Stepping Stones before he was terminated, sent in an attachment to the Respondent's Clinical Fellowship Skills Inventory (CFSI) and she stated that the Respondent did not spend 80% of his work week in direct clinical contact with patients with communication and/or swallowing disorders. Ms. Stevenson noted that she couldn't rate the Respondent's CF experience because she did not observe or rate any of his skills as he only attended training, and it was not possible for the Respondent to meet the minimum requirement of 6 hours of direct and 6 hours of indirect supervising during this time.
- September 28, 2023, ASHA certification emailed the Respondent and noted that his CF Mentor stated that the hours he reported for his CF experience were not accurate.
- September 28, 2023, the Respondent responded and asked if ASHA had reviewed the letter from Ms. Stevenson.
- October 5, 2023 (3:55 p.m.), **Ms. Gallagher emailed the Respondent and again stated that the time spent under Ms. Stevenson's mentorship will not count toward his CF experience, which means that the start date of his CF experience was later than January 1, 2023. A CF start date after January 1, 2023, means that to be eligible for ASHA certification, the Respondent would need to complete at least 75% of their time in care and care management via direct, onsite, in-person service delivery.** Ms. Gallagher stated that the Respondent could appeal the information submitted by the CF mentor by sending a letter to the CFCC.
- October 5, 2023 (4:48 p.m.), the Respondent responded and appeared to claim that he was told by ASHA and his employer that as long as he was hired in 2022, he fell under the 2022 CF guidelines for teletherapy. The Respondent reiterated that he did not want Ms. Gallagher to contact him again.
- October 5, 2023 (5:05 p.m.), the Respondent emailed ASHA Certification again and noted he would not be redoing his CF experience. He requested that Certification not insist that he needs to do his CF after he completed 9 months of his CF. He stated he fell under the 2022 requirements and did not appreciate the continued emails to the contrary.
- October 5, 2023 (6:05 p.m.), the Respondent filed a complaint with the ASHA Action Center, complaining about the emails he had received from Ms. Gallagher, which stated that his CFY would not count. He stated that she was harassing him, and he did not want to hear from her again.
- November 2, 2023, the Respondent received an ASHA dues renewal request. He responded by stating that it's funny that ASHA calls him a valued member when ASHA keeps telling him that he did not start his CFY in 2022. He complained that ASHA did not cease and desist all contact with him.
- In December of 2023, the Respondent withdrew his ASHA certification application. The application termination date was December 7, 2023, and the termination reason was resigned.
- April 13, 2024, the Respondent's second ASHA certification application was received by the ASHA Certification Department. The application noted that the Respondent's mentor was Rachel Johannes. Ms. Johannes verified that the Respondent's CF experience started in October of 2022 and that the Respondent had COVID-19 accommodations, as justification for the use of more than 25% telepractice and 100% telesupervision during the CF experience.
- June 17, 2024, Todd Philbrick, ASHA Chief Certification Officer, emailed Ms. Johannes and asked for the Respondent's start date, date of hire, method of service delivery, and other information regarding the Respondent's CF experience.

- June 24, 2024, Ms. Johannes responded and confirmed the Respondent's start date as October 17, 2022, and the end date of February 29, 2024. Ms. Johannes confirmed that the Respondent's experience was all teletherapy service delivery.
- June 25, 2024, the Respondent was awarded his Certificate of Clinical Competence (CCC).
- June 26, 2024, Ms. Johannes sent Mr. Philbrick a clarifying email that noted that the Respondent started his CF on October 17, 2022, but the contract was cancelled before he could start seeing students and the Respondent received a new contract and continued his CF under Ms. Johannes.
- June 26, 2024, Mr. Philbrick emailed Ms. Johannes and asked if she had begun mentoring the Respondent on October 17, 2022.
- June 26, 2024, Ms. Johannes stated that she was not the Respondent's mentor at the time and was the Respondent's second mentor.
- June 26, 2024, Mr. Philbrick emailed Ms. Johannes again and asked when she started mentoring the Respondent.
- July 1, 2024, Ms. Johannes responded to Mr. Philbrick and noted she started mentioning the Respondent in early February of 2023.

In summary, the Complainant noted that the Respondent applied for ASHA certification in the past and was advised that the CF experience he reported that began on October 5, 2022 (under the supervision of Ms. Stevenson) did not meet certification standards and could not count toward the CF experience for ASHA certification. The Respondent subsequently withdrew the application. The complaint alleged that because the Respondent did not include the CF experience with Ms. Stevenson as a mentor on his second application (submitted on April 13, 2024), and included the October 2022 start date under the mentorship of Ms. Johannes, the Respondent knowingly submitted false/incorrect data to gain ASHA certification.

The Respondent responded to the complaint on March 3, 2025, through his attorney, Mr. Connor D. Jackson, and stated that the Respondent refutes the allegations in the strongest possible terms that he knowingly submitted false or incorrect data to gain ASHA certification. The Respondent alleged that he was hired by Stepping Stones Group on October 5, 2022, and his Clinical Fellowship Year (CF) began on October 17, 2022. Ms. Victoria Hanawalt was the Respondent's initial mentor through Stepping Stones. While the Respondent was in the process of obtaining his New Mexico license, Stepping Stones assigned Laura Syme as his second CF mentor on October 13, 2022, and subsequently assigned Ms. Marlaina Stevenson as his third CF mentor on November 8, 2022. Between October 13, 2022, and December 31, 2022, the Respondent alleged that he completed his onboarding, orientation, and training with Stepping Stones, received his New Mexico license, and received his caseload of patients. In February of 2023, the Respondent moved from his position with Stepping Stones to a new placement with the Early Childhood Education Center where Ms. Rachel Johannes was assigned as his permanent CF mentor. The Respondent completed his CF on February 29, 2024, and subsequently submitted his application for ASHA certification on April 13, 2024.

Four points of consideration were provided:

1. The CF that the Respondent began in October 2022 was governed by the ASHA Standards for CFs that began prior to December 31, 2022, which therefore permitted him to fully complete his CF via telepractice with virtual observations. The Respondent noted that Lilly Schwarts from ASHA confirmed that his start date "would be whatever day you actually began working at your placement. That could include training/orientation."
2. The documentation that the Respondent provided with his ASHA certification application was compliant with ASHA's Standards. The Respondent noted that he complied with ASHA's guidelines regarding the submission of his Clinical Fellowship Skills Inventory for his CF on April 13, 2024. Consistent with ASHA's instructions, the Respondent submitted the Clinical Fellowship Skills Inventory for verification by his primary mentor, Rachel Johannes. Ms. Johannes further verified the Respondent's application documentation with Todd Philbrick via email on June 24, 2024, and ASHA accepted the verification and issued the Respondent's certification on June 25, 2024. The Respondent alleged that the instructions on the ASHA application for certification did not indicate that more than one Skills Inventory for a CF must be submitted or that a temporary mentor must be added to the application. The Respond noted that if he had known, he would have made his best efforts to do so. He did not intend to mislead ASHA with any of the data he entered.
3. The Complaint Omitted Critical Information. The Respondent alleged that the Complainants' supplemental materials only contained a partial version of an email chain between the Respondent and Ms. Hanawalt, which included Ms. Hanawalt's entire confirmation that the Respondent would "be able to complete [his] CFY experience as a TeleSLP since [he] began the CF experience before 12/31/2022." In addition, the Complainant alleged that Ms. Johannes misstated the dates of her tenure as the Respondent's mentor at his direction. The Respondent denied that he told Ms. Johannes that it was an appropriate course of action. The Complainant provided no evidence that the Respondent knowingly submitted false or incorrect data to gain ASHA certification
4. Conclusionary remarks included the request that ASHA dismiss the complaint, close its investigation, and confirm that ASHA would not report the complaint to any state licensing agencies.

## ICH DECISION WITH PROPOSED ICH SANCTION

## INITIAL DETERMINATION

**Ethics Complaint Number:** BE 25-003

**RESPONDENT:** Roderick Wright, CCC-SLP

**FINDING:** At its June 2025 meeting, the Board of Ethics found Roderick Wright, a non-member certified in speech-language pathology (the "Respondent"), in violation of the American Speech-Language-Hearing Association's *Code of Ethics* (2023) as follows:

*Principle of Ethics II*: Individuals shall honor their responsibility to achieve and maintain the highest level of professional competence and performance.

*Principle of Ethics II*, *Rule B*: ASHA members who do not hold the Certificate of Clinical Competence may not engage in the provision of clinical services; however, individuals who are in the certification application process may provide clinical services consistent with current local and state laws and regulations and with ASHA certification requirements.

> *Rationale:* The Respondent violated *Principle of Ethics II*, and the following subpart of *Principle II, Rule B*: ". . . [I]ndividuals who are in the certification application process may provide clinical services consistent with . . . ASHA certification requirements," as evidenced by the Respondent exceeding the 25% telepractice limit of direct client contact hours during the application process.

*Principle of Ethics IV:* Individuals shall uphold the dignity and autonomy of the professions, maintain collaborative and harmonious interprofessional and intraprofessional relationships, and accept the professions' self- imposed standards.

*Principle of Ethics IV, Rule E:* Individuals shall not engage in dishonesty, negligence, deceit, or misrepresentation.

> *Rationale:* The Respondent violated *Principle of Ethics IV,* and *Principle IV, Rule E:* "Individuals shall not engage in dishonesty, negligence, deceit, or misrepresentation," as evidenced by the Respondent knowingly providing false data as part of their ASHA certification application.

*Principle of Ethics IV, Rule G*: Applicants for certification or membership, and individuals making disclosures, shall not make false statements and shall complete all application and disclosure materials honestly and without omission.

> *Rationale:* The Respondent violated *Principle of Ethics IV*, and *Principle IV, Rule G:* "Applicants for certification or membership, and individuals making disclosures, shall not make false statements and shall complete all application and disclosure materials honestly and without omission," as evidenced by the Respondent knowingly providing false data as part of their ASHA certification application.

**PROPOSED SANCTION:** The Board of Ethics proposes a sanction of Revocation of Membership and Certification for six (6) months (public), effective from the date of the Final Decision.

At the completion of the revocation period, the Respondent may petition the Board of Ethics for approval to seek reinstatement of their membership and certification. For more information, the Respondent can review the reinstatement policy set forth in the *Practices and Procedures of the Board of Ethics* (2025) at https://www.asha.org/policy/practices-and-procedures-of-the-board-of-ethics/and review *Petitioning For Approval From Board of Ethics to Reinstate Certification and Membership* at https://www.asha.org/Practice/ethics/Petitioning-For-Approval-From-BOE-to-Reinstate-Certification/.

**PROPOSED DISCLOSURE:** The proposed sanction is a formal disciplinary action of public record. This decision, upon becoming final, will be published in an ASHA publication that is distributed and available to all members. The Board of Ethics may provide its Final Decision to any person or entity requesting a copy of the decision. Additionally, the Board of Ethics may provide its Final Decision and relevant case information (a) to any state agency that has provided the Respondent a license or credential or to which the Respondent has applied for a license or credential; (b) to any state agency located in the state where the Respondent resides; (c) to any other professional

organization that enforces a code of ethics or code of professional conduct of which the Respondent is a member or an applicant for membership; and (d) as required by law.

**REQUEST FOR FURTHER CONSIDERATION BY THE BOARD OF ETHICS:** The Respondent may request a Further Consideration Hearing in front of the Board of Ethics. At a Further Consideration Hearing, the Respondent can present their case as to why the violations of the Code of Ethics should be modified and/or why the proposed sanction should be reduced. The Respondent's request for a further consideration hearing must be made in writing and received by the Board of Ethics no later than thirty (30) days after the mailing date of the attached Initial Determination letter. The further consideration process is described in the *Practices and Procedures of the Board of Ethics (2024)*, a copy of which was provided to the Respondent with the complaint. (This document is also available on the ASHA website at https://www.asha.org/policy/practices-and-procedures-of-the-board-of-ethics.)

If the Respondent does not request further consideration by the Board of Ethics within thirty (30) days of the transmittal date of this Initial Determination, this decision shall become final. In that event, there shall be no further right of appeal.

| | |
|---|---|
| ______________________________ | June 26, 2025 |
| Michele Simler, MS, CCC-SLP, FNAP<br>Chair, ASHA Board of Ethics | Date |