IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

RODERICK WRIGHT,

Plaintiff,

v.

AMERICAN SPEECH-LANGUAGE-HEARING ASSOCIATION,

Defendant.

Case No. 1:25-cv-01367-PLM-MV

Hon. Paul L. Maloney

Magistrate Judge Maarten Vermaat

**FIRST AMENDED COMPLAINT**

Plaintiff Roderick Wright ("Plaintiff") alleges the following claims against the American Speech-Language-Hearing Association ("Defendant" or "ASHA"). Plaintiff brings this action under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; and related law.

**JURISDICTION AND VENUE**

1. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under the ADA and Section 504.

2. This Court has jurisdiction under 28 U.S.C. § 1343 because Plaintiff seeks to redress the deprivation of rights secured by federal law, including the ADA and Section 504.

3. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's related common-law claim because it forms part of the same case or controversy as Plaintiff's federal claims.

4. This Court also has diversity jurisdiction under 28 U.S.C. § 1332 because Plaintiff is a citizen of Michigan, Defendant is incorporated and headquartered in Maryland, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred here and Plaintiff resides in this District.

**PARTIES**

6. Plaintiff Roderick Wright is an individual residing in Allendale, Michigan.

7. Defendant American Speech-Language-Hearing Association ("ASHA") is a professional association headquartered in Rockville, Maryland. On information and belief, ASHA receives federal financial assistance, including but not limited to federal grants and federally funded programs or relief, making it subject to Section 504. The precise nature and scope of Defendant's federal financial assistance is within Defendant's possession and will be confirmed in discovery.

**FACTUAL ALLEGATIONS**

8. Plaintiff began his Clinical Fellowship ("CF") on or about October 17, 2022, when he was hired, onboarded, assigned mentors, and began CF duties including training, caseload preparation, reviewing student files, learning and using the district's electronic systems (including MAXCapture), and organizing his student caseload within those systems in preparation for providing services after winter break.

9. The Council for Clinical Certification in Audiology and Speech-Language Pathology ("CFCC") has determined that all Clinical Fellows who initiate their CF experience on or before December 31, 2022 may engage in telepractice and telesupervision using the 2022 guidelines for the entirety of their CF experience. Under this CFCC policy, Fellows whose CF initiated in 2022 remain governed by the 2022 telepractice rules for the full CF term, even if portions of the CF occur in calendar year 2023 or later.

10. Plaintiff's CF began in 2022, and his employer and then-current mentor confirmed that his CF experience started in 2022 with indirect hours. Plaintiff understood, consistent with the CFCC policy, that his CF could be completed via telepractice under the 2022 guidelines for the entire CF experience.

11. On December 8, 2022, Plaintiff's telepractice lead and temporary CF supervisor, Victoria Hanawalt, MS, CCC-SLP, confirmed in writing that Plaintiff had begun his CF experience before December 31, 2022 and therefore would be able to complete his CFY as a TeleSLP under the pre-2023 standards. In that email, Hanawalt stated: "Yes, you will be able to complete your CFY experience as a TeleSLP since you began the CF experience before 12/31/2022." See Exhibit D (Hanawalt email), as previously filed with Plaintiff's TRO/PI papers and identified in the Exhibits and Declarations Index.

12. During his CFY, Plaintiff received repeated emails from ASHA staff member Amanda Gallagher asserting that his CFY would not count. These communications conflicted with prior written confirmations of Plaintiff's CF start date and created confusion about his certification status.

13. On October 5, 2023, at approximately 6:05 p.m., Plaintiff submitted a written harassment complaint to ASHA regarding Gallagher. In that complaint, Plaintiff explained that he was in his CFY, that he had started his CF experience in 2022 as a teletherapist, that Gallagher repeatedly emailed him saying his CFY would not count, and that he had already twice asked her to stop contacting him.

14. In his October 5, 2023 harassment complaint, Plaintiff explained that his CF experience began in 2022 with indirect hours, including file review, caseload balancing, and other preparatory tasks, for the express purpose of obtaining his CCC at the end of the CF, and he noted that CF experiences typically begin with such indirect duties rather than immediate direct-service hours.

15. Plaintiff expressly requested in his harassment complaint that ASHA direct Gallagher to cease contacting him and stated that he did not need that type of harassment. ASHA never provided Plaintiff with a substantive response, never informed him of any corrective action, and, to Plaintiff's knowledge, took no disciplinary or remedial measures regarding Gallagher.

16. Before the events at issue, Plaintiff had once begun a draft CF application associated with mentor Marlaina Stevenson in 2022. That draft was never completed or paid for and was not submitted as an application for certification. Plaintiff believed he had discarded it after he learned that he should file a complete CF application after finishing his CFY with his actual

long-term mentor. Plaintiff did not knowingly submit false information in connection with the Stevenson draft, and that incomplete episode does not demonstrate dishonesty.

17. Plaintiff submitted an application for ASHA certification on April 13, 2024 that used an October 17, 2022 CF start date and identified mentor Rachel Ann Johannes. In mid-June 2024, ASHA's Chief Certification Officer, Todd Philbrick, emailed Johannes seeking additional information regarding Plaintiff's CF experience, including dates, settings, telepractice, and supervision details, and Johannes confirmed that Plaintiff's CF experience ran from October 17, 2022 through February 29, 2024, serving preschool and early elementary students via teletherapy with telesupervision. ASHA thereafter accepted Plaintiff's application and, on or about June 25, 2024, awarded him the Certificate of Clinical Competence ("CCC").

18. On June 26, 2024, Johannes further clarified to Philbrick that Plaintiff started his CFY on October 17, 2022 under a teletherapy contract that was cancelled before he could begin seeing students, and that he then continued his CFY under a new contract with Johannes as his second mentor. In subsequent emails, Johannes confirmed that she began mentoring Plaintiff in early February 2023, while Plaintiff consistently maintained—and informed Johannes, consistent with New Mexico Regulation and Licensing Department guidance (NMAC 16.26.2.17)—that the CF start date remained October 17, 2022 and that only the mentor changed.

19. On October 2, 2024, approximately one year after Plaintiff's harassment complaint, CFCC Vice-Chair Laura Verdun, on behalf of the SLP Committee of the CFCC, filed ethics complaint BE 25-003 against Plaintiff. In that complaint, Verdun asserted that Plaintiff's certification application contained "false/incorrect" information about his CF start date and that his CF experience did not meet ASHA standards because it involved more than 25% telepractice and

lacked the onsite, in-person observation hours required for CFs starting on or after January 1, 2023.

20. Verdun's BE 25-003 complaint treated Plaintiff's CF as if it began in 2023, when Johannes became his mentor, and applied the post-January 1, 2023 25% telepractice cap and onsite-observation requirements to Plaintiff. This framing ignored both Plaintiff's true CF initiation in 2022 and the CFCC policy that Fellows who initiated their CF on or before December 31, 2022 may follow the 2022 telepractice guidelines for the entirety of their CF.

21. By disregarding Plaintiff's 2022 CF start and the CFCC policy, the BE 25-003 complaint incorrectly portrayed Plaintiff's telepractice usage and supervision pattern as non-compliant and falsely alleged that he "knowingly" submitted incorrect data to gain certification. Plaintiff disputes those accusations and maintains that he reasonably relied on ASHA and CFCC guidance and on New Mexico regulatory requirements regarding CF start dates and mentor changes.

22. On July 3, 2025, Plaintiff submitted a written request to ASHA for ADA accommodations in connection with the BE 25-003 ethics process, asking for modifications to communication methods, extensions or modifications of deadlines, clear plain-language instructions, and any additional adjustments necessary to ensure a fair and accessible process, so that he could meaningfully prepare a rebuttal, including detailed written explanations and supporting documentation for the telepractice and CF-start-date allegations. See Exhibit H (ADA Accommodation Request Letter), as identified in the Exhibits and Declarations Index.

23. In response, ASHA requested medical documentation, which Plaintiff's treating provider supplied on July 30, 2025 with recommendations including extended deadlines, written-only communication, clear instructions, flexibility in submission formats, and an interactive process. On August 18, 2025, ASHA granted only a subset of these accommodations—allowing

written-only communications for the Further Consideration Hearing and a 60-day window to submit written responses and materials—while declining to provide the broader accommodations and interactive process Plaintiff had requested. See Exhibit L (Treating Provider Letter), as identified in the Exhibits and Declarations Index.

24. On September 3, 2025, ASHA Ethics Officer Katharine Meyer sent an email acknowledging receipt of Plaintiff's ADA accommodation package and confirming that it had been entered into the official record of BE 25-003. As later described in Count I, that email reframed Plaintiff's ADA request as part of ASHA's internal ethics process and incorrectly suggested that ASHA had been working through his attorneys rather than engaging directly with him regarding accommodations. See Exhibit G (Meyer email), as identified in the Exhibits and Declarations Index.

25. ASHA never meaningfully corrected the false narrative about Plaintiff's CF start date, never acknowledged that his CF initiated in 2022, and continued to evaluate BE 25-003 under the wrong telepractice standard. At the same time, ASHA failed to accommodate Plaintiff's disability-related needs during the ethics process.

26. As a result of ASHA's actions, Plaintiff has suffered and continues to suffer economic harm and reputational injury, including loss of professional opportunities, damage to professional standing, and legal expenses incurred in retaining counsel and responding to the ethics proceeding and related regulatory matters.

27. Plaintiff incorporates by reference, as though fully set forth herein, Exhibits A through O, together with the Declaration and Exhibits and Declarations Index previously filed in connection with Plaintiff's Complaint and motions for temporary restraining order, preliminary injunction, and ADA accommodations, as well as Exhibit J (OCR Complaint Packet). These exhibits are

already on file with the Court and are identified on the docket as Plaintiff's prior TRO/PI submissions.

**COUNT I – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (TITLE III)**

28. Plaintiff incorporates paragraphs 1 through 27 as if fully set forth herein.

29. ASHA is a private entity that operates places of public accommodation and provides certification and related services affecting public professional licensure and employment.

30. Plaintiff is a qualified individual with a disability within the meaning of the ADA.

31. ASHA failed to make reasonable modifications to policies, practices, or procedures when such modifications were necessary to afford Plaintiff equal access to its services, and failed to engage in the interactive process.

31A. On September 3, 2025, ASHA Ethics Officer Katharine Meyer sent an email acknowledging receipt of Plaintiff's ADA accommodation package and confirming that it had been entered into the official record of BE 25-003. In that email, ASHA attempted to reframe the ADA request as part of its internal ethics process and represented that it had been "working with Plaintiff's attorneys" regarding accommodations, even though Plaintiff's attorneys were not handling the ADA portion and Plaintiff himself initiated and pursued that request. At no time did ASHA engage in the required interactive process directly with Plaintiff, despite this contemporaneous record reflecting both ASHA's actual notice of Plaintiff's disability and its failure to interact directly with him regarding accommodations.

32. ASHA's actions and omissions unlawfully discriminated against Plaintiff on the basis of disability.

**COUNT II – VIOLATION OF SECTION 504 OF THE REHABILITATION ACT**

33. Plaintiff incorporates paragraphs 1 through 27 as if fully set forth herein.

34. Defendant ASHA receives federal financial assistance from the U.S. Department of Health and Human Services, including federal research grants administered by the National Institutes of Health (NIH). For example, NIH's official RePORT database lists ASHA as the recipient of federal awards totaling approximately $41,824 in FY2024 and additional awards in prior years, on information and belief, as reflected in that public database. ASHA is therefore subject to Section 504 of the Rehabilitation Act and its implementing regulations.

35. ASHA discriminated against Plaintiff on the basis of disability by refusing to provide reasonable accommodations and by proceeding with disciplinary actions without addressing Plaintiff's disability needs.

36. To the extent the precise nature of Defendant's federal financial assistance is disputed, the facts lie within Defendant's control and will be confirmed in discovery.

**COUNT III – DENIAL OF FAIR PROCEDURE (COMMON-LAW)**

37. Plaintiff incorporates paragraphs 1 through 36 as if fully set forth herein.

38. Defendant conducted the BE 25-003 ethics proceeding in a manner that denied Plaintiff a fair opportunity to present evidence and to participate on equal terms given his disability and the true facts of his CF experience. Defendant did so by, among other things, mischaracterizing Plaintiff's CF start date despite contemporaneous written confirmation that his CF began in 2022, applying the wrong telepractice standards, and ignoring Plaintiff's requests for clarity and correction.

39. Defendant relied upon incomplete and misleading information regarding Plaintiff's CF initiation date and the Stevenson draft application, failed to give due weight to the CFCC policy governing 2022 CF initiations, and persisted in treating Plaintiff's CF as a 2023 start solely to justify the application of stricter telepractice limits. Defendant also proceeded without meaningful response to Plaintiff's October 5, 2023 harassment complaint about Gallagher's conduct, thereby allowing the same actors and themes to influence BE 25-003.

40. Defendant ignored Plaintiff's timely ADA accommodation request, failed to engage in the interactive process, and continued the ethics process without the requested accommodations, depriving Plaintiff of a fair and accessible chance to defend his certification and reputation.

41. Taken together, these actions and omissions rendered the BE 25-003 process fundamentally unfair and contrary to basic notions of fair procedure, causing Plaintiff serious reputational and economic harm.

42. Defendant is equitably estopped from treating Plaintiff's Clinical Fellowship as having begun in 2023 or from enforcing post-January 1, 2023 Clinical Fellowship telepractice standards against him, because Plaintiff reasonably relied, to his detriment, on written and oral confirmations from his ASHA-approved mentors and employer that his CF experience began in 2022 and would be governed by the 2022 CFCC telepractice guidelines for the entirety of his CF, as well as on ASHA/CFCC's published rule that Clinical Fellows who initiated their CF experience on or before December 31, 2022 may continue using the 2022 telepractice allowances for the duration of their CF experience.

**COUNT IV – RETALIATION**

43. Plaintiff incorporates paragraphs 1 through 42 as if fully set forth herein.

44. Plaintiff engaged in protected activity when, on October 5, 2023, he filed a written harassment complaint against ASHA staff member Amanda Gallagher, and again when, on July 3, 2025, he requested ADA accommodations in connection with the BE 25-003 ethics process.

45. Defendant took materially adverse actions against Plaintiff by initiating and advancing BE 25-003, accusing him of dishonesty, threatening his CCC, and proceeding with ethics sanctions while ignoring his harassment complaint and ADA accommodation request.

46. The temporal sequence—Plaintiff's harassment complaint in October 2023, Defendant's failure to respond, the October 2, 2024 ethics complaint from Verdun, and the later denial of Plaintiff's requested accommodations—together with the use of disputed CF start-date and telepractice narratives, supports a reasonable inference that Defendant's actions were motivated, at least in part, by retaliation for Plaintiff's protected activities.

47. Defendant's retaliation has caused Plaintiff reputational injury and economic harm, and warrants compensatory damages and injunctive relief.

**PRAYER FOR RELIEF**

48. Enter permanent injunctive relief prohibiting Defendant from revoking Plaintiff's CCC and from publishing any revocation or related disciplinary action based on BE 25-003 or the same underlying facts.

49. Enter a declaratory judgment that: (a) Plaintiff's Clinical Fellowship initiated in 2022 and is governed by the CFCC's 2022 telepractice guidelines for the entirety of his CF; (b) Defendant's BE 25-003 ethics action and related findings are invalid to the extent they rely on treating Plaintiff's CF as having begun in 2023 and on applying post-January 1, 2023 telepractice standards; and (c) Defendant violated the ADA and Section 504 as alleged herein.

50. Order Defendant to reinstate and preserve Plaintiff's CCC in good standing, with prejudice to any further revocation or disciplinary action based on the same or substantially similar allegations or facts underlying BE 25-003, absent new, materially different facts.

51. Require Defendant to provide the reasonable accommodations requested, including written-only communications, extended deadlines, and plain-language instructions.

52. Award compensatory damages for Plaintiff's reputational injury and economic loss, including reimbursement of out-of-pocket attorneys' fees and expenses incurred in responding to the ethics proceeding and in pursuing ADA accommodations, which were proximately caused by Defendant's unlawful conduct.

53. Award costs and such other and further relief as the Court deems just and proper.

54. Award Plaintiff reasonable attorneys' fees and costs as permitted by 42 U.S.C. § 12205 (ADA) and 29 U.S.C. § 794a(b) (§ 504).

Exhibits

Plaintiff refers to and incorporates by reference the exhibits previously filed with this Court in connection with his Complaint and motions for TRO, preliminary injunction, and ADA accommodations, including Exhibits A–O and the supporting declaration, as identified in the Exhibits and Declarations Index.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Dated: February 28, 2026

/s/ Roderick Wright

Roderick Wright

6181 Lake Michigan Drive, #103

Allendale, MI 49401

(616) 990-9284

Email: wrightiir@yahoo.com

Plaintiff, pro se