**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RODERICK WRIGHT,

Plaintiff,

AMERICAN SPEECH-LANGUAGE-HEARING ASSOCIATION,

Defendant.

Case No. 1:25-cv-1367
Hon. Paul L. Maloney

---

**DEFENDANT'S ANSWER TO FIRST AMENDED COMPLAINT**

---

**NOW COMES** Defendant, American Speech-Language Hearing Association ("Defendant"), by and through its attorneys, PLUNKETT COONEY, and for its Answer to Plaintiff's First Amended Complaint states as follows:

**Jurisdiction and Venue**

1. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under the ADA and Section 504.

**ANSWER: Answering the Allegations contained in Paragraph 1, Defendant admits that this Court has jurisdiction pursuant to 28 USC § 1331 and Section 504 of the Rehabilitation Act, but denies that Defendant violated same.**

1A. This Court also has diversity jurisdiction under 28 U.S.C § 1332 because Plaintiff is a citizen of Michigan, Defendant is incorporated and headquartered in Maryland, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**ANSWER: Answering the Allegations contained in Paragraph 1A, Defendant admits that this Court has jurisdiction pursuant to 28 USC § 1332.**

2. Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred here and Plaintiff resides in this District.

**ANSWER: Answering the Allegations contained in Paragraph 2, Defendant admits that venue is proper.**

**PARTIES**

3. Plaintiff Roderick Wright is an individual residing in Allendale, Michigan.

**ANSWER: Answering the Allegations contained in Paragraph 3, Defendant neither admits nor denies the allegations contained therein and leaves Plaintiff to his strict proofs.**

4. Defendant American Speech-Language Hearing Association ("ASHA") is a professional association headquartered in Rockville, Maryland. On information and belief, ASHA receives federal financial assistance, including but not limited

to federal grants and/or federally backed relief, making it subject to Section 504. The precise nature and scope of Defendant's federal financial assistance is within Defendant's possession and will be confirmed in discovery.

**ANSWER: Answering the Allegations contained in Paragraph 4, Defendant admits only that it is a professional association headquartered in Rockville, Maryland. As to the remaining allegations, Defendant neither admits nor denies the allegations contained therein and leaves Plaintiff to his strict proofs**.

**FACTUAL ALLEGATIONS**

5. Plaintiff began his Clinical Fellowship (CF) on or about October 17, 2022, when he was hired, onboarded, assigned mentors, and began training and caseload preparation, reviewing student files, learning and using the district's electronic systems (including MAXCapture), and organizing his student caseload within those systems in preparation for providing services after winter break.

**ANSWER: Answering the Allegations contained in Paragraph 5, Defendant denies the allegations for the reason that they are untrue.**

6. The Council for Clinical Certification in Audiology and Speech-Language Pathology ("CFCC") has determined that all Clinical Fellows who initiate their CF experience on or before December 31, 2022 may engage in telepractice and

telesupervision using the 2022 guidelines for the entirety of their CF experience. Under this CFCC policy, Fellows whose CF initiated in 2022 remain governed by the 2022 telepractice rules for the full CF term, even if the portions of the CF occur in calendar year 2023 or later.

**ANSWER: Answering the Allegations contained in Paragraph 6, Defendant neither admits nor denies the allegations contained therein and leaves Plaintiff to his strict proofs.**

7. Plaintiff's CF began in 2022, and his employer and then-current mentor confirmed that his CF experience started in 2022 with indirect hours. Plaintiff understood, consistent with the CFCC policy, that his CF could be completed via telepractice under the 2022 guidelines for the entire CF could be completed via telepractice under the 2022 guidelines for the entire CF experience.

**ANSWER: Answering the Allegations contained in Paragraph 7, Defendant denies the allegations for the reason that they are untrue.**

8. On December 8, 2022, plaintiff's telepractice lead and temporary CF supervisor, Victoria Hanawalt, MS, CCC-SLP, confirmed in writing that Plaintiff had begun his CF experience before December 31, 2022 and therefore would be able to complete his CFY as a TeleSLP under the pre-2023 standards. In that email, Hanawalt stated: "Yes, you will be able to complete your CFY experience as a TeleSLP since you began the CF experience before 12/31/202." See Exhibit

D (Hanawalt email), as previously filed with Plaintiff's TRO/PI papers and identified in the Exhibits and Declarations Index.

**ANSWER: Answering the Allegations contained in Paragraph 8, Defendant neither admits nor denies the allegations contained therein and leaves Plaintiff to his strict proofs.**

9. During his CFY, Plaintiff received repeated emails from ASHA staff member Amanda Gallagher asserting that his CFY would not count. These communications contradicted what plaintiff had been told by his employer and mentor and caused him significant stress and anxiety.

**ANSWER: Answering the Allegations contained in Paragraph 9, Defendant neither admits nor denies the allegations contained therein and leaves Plaintiff to his strict proofs.**

10. On October 5, 2023, at approximately 6:05 p.m., Plaintiff submitted a written harassment complaint to ASHA regarding Gallagher. In that complaint, Plaintiff explained that he was in his CFY, that he had started his CF experience in 2022 as a teletherapist, that Gallagher repeatedly emailed him saying his CFY would not count, and that he had already twice asked her to stop contacting him.

**ANSWER: Answering the Allegations contained in Paragraph 10, Defendant neither admits nor denies the allegations contained therein and leaves Plaintiff to his strict proofs.**

11. In his October 5, 2023 harassment complaint, Plaintiff explained that his CF experience began in 2022 with indirect hours, including file review, caseload balancing, and other preparatory tasks, for the express purpose of obtaining his CCC at the end of the CF, and he noted that CF experiences typically begin with such indirect duties rather than immediate direct-service hours.

**ANSWER: Answering the Allegations contained in Paragraph 11, Defendant neither admits nor denies the allegations contained therein and leaves Plaintiff to his strict proofs.**

12. Plaintiff expressly requested in his harassment complaint that ASHA direct Gallagher to cease contacting him and stated that he did not need that type of harassment. ASHA never provided Plaintiff with a substantive response, never informed him of any corrective action, and, to Plaintiff's knowledge, took no disciplinary or remedial measures regarding Gallagher.

**ANSWER: Answering the Allegations contained in Paragraph 12, Defendant neither admits nor denies the allegations contained therein and leaves Plaintiff to his strict proofs.**

13. Before the events at issue, Plaintiff had once begun a draft CF application associated with mentor Marlaina Stevenson in 2022. That draft was never completed, paid for, or intended to be his final application, and Plaintiff believed he had discarded it after he learned that he should file a complete CF application after finishing his CFY with his actual long-term mentor. Plaintiff did not knowingly submit false information in connection with the Stevenson draft, and that incomplete episode does not demonstrate dishonesty.

**ANSWER: Answering the Allegations contained in Paragraph 13, Defendant denies the allegations for the reason that they are untrue.**

14. Plaintiff submitted an application for ASHA certification on April 13, 2024 that used an October 17, 2022 CF start date and identified mentor Rachel Ann Johannes. In mid-June 2024, ASHA's Chief Certification Officer, Todd Philbrick, emailed Johannes seeking additional information regarding Plaintiff's CF experience, including dates, settings, telepractice, and supervision details, and Johannes confirmed that Plaintiff's CF experience ran from October 17, 2022 through February 29, 2024, serving preschool and early elementary students via teletherapy with telesupervision. ASHA thereafter accepted Plaintiff's application and, on or about June 25, 2024, awarded him the Certificate of Clinical Competence ("CCC").

**<u>ANSWER:</u> Answering the Allegations contained in Paragraph 14, Defendant neither admits nor denies the allegations contained therein and leaves Plaintiff to his strict proofs.**

15. On June 26, 2024, Johannes further clarified to Philbrick that Plaintiff started his CFY on October 17, 2022 under a teletherapy contract that was cancelled before he could begin seeing students, and that he then continued his CFY under a new contract with Johannes as his second mentor. In subsequent emails, Johannes confirmed that she began mentoring Plaintiff in early February 2023, while Plaintiff consistently maintained—and informed Johannes, consistent with New Mexico Regulation and licensing Department guidance (NMAC 16.26.2.17)—that the CF start date remained October 17, 2022 and that only the mentor changed.

**<u>ANSWER:</u> Answering the Allegations contained in Paragraph 15, Defendant neither admits nor denies the allegations contained therein and leaves Plaintiff to his strict proofs.**

16. On October 2, 2024, approximately one year after Plaintiff's harassment complaint, CFCC Vice-Chair Laura Verdun, on behalf of the SLP Committee of the CFCC, filed ethics complaint BE 25-003 against Plaintiff. In that complaint, Verdun asserted that Plaintiff's certification application contained "false/incorrect" information about his CF start date and that his CF

experience did not meet ASHA standards because it involved more than 255 telepractice and lacked the onsite, in-person observation hours required for CFs starting on or after January 1, 2023.

**<u>ANSWER:</u> Answering the Allegations contained in Paragraph 16, Defendant admits that an Ethics Complaint was filed by Ms. Verdun based on Plaintiff's submission of false/incorrection information.**

17. Verdun's BE 25-003 complaint treated Plaintiff's CF as if it began in 2023, when Johannes became his mentor, and applied the post-January 1, 2023 25% telepractice cap and onsite-observation requirements to plaintiff. This framing ignored both plaintiff's true CF initiation in 2022 and the CFCC policy that Fellows who initiated their CF on or before December 31, 2022 may Follow the 2022 telepractice guidelines for the entirety of their CF.

**<u>ANSWER:</u> Answering the Allegations contained in Paragraph 17, Defendant neither admits nor denies the allegations contained therein and leaves Plaintiff to his strict proofs.**

18. By disregarding Plaintiff's 2022 CF start and the CFCC policy, the BE 25-003 complaint incorrectly portrayed Plaintiff's telepractice usage and supervision pattern as non-compliant and falsely alleged that he "knowingly" submitted incorrect data to gain certification. Plaintiff disputes those accusations and maintains that he reasonably relied on ASHA and CFCC

guidance and on New Mexico regulatory requirements regarding CF start dates and mentor changes.

**<u>ANSWER:</u> Answering the Allegations contained in Paragraph 18, Defendant neither admits nor denies the allegations contained therein and leaves Plaintiff to his strict proofs.**

19. On July 3, 2025, Plaintiff submitted a written request to ASHA for ADA accommodations in connection with the BE 25-003 ethics process, asking for modifications to communication methods, extensions or modifications of deadlines, clear plain-language instructions, and any additional adjustments necessary to ensure a fair and accessible process, so that he could meaningfully prepare a rebuttal, including detailed written explanations and supporting documentation for the telepractice and CF-star-date allegations. See Exhibit H (ADA Accommodation Request Letter), as identified in the Exhibits and Declarations Index.

**<u>ANSWER:</u> Answering the Allegations contained in Paragraph 19, Defendant neither admits nor denies the allegations contained therein and leaves Plaintiff to his strict proofs.**

20. In response, ASHA requested medical documentation, which Plaintiff's treating provider supplied on July 30, 2025 with recommendations including extended deadlines, written-only communication, clear instructions,

flexibility in submission formats, and an interactive process. On August 18, 2025, ASHA granted only a subset of these accommodations—allowing written-only communications for Further Consideration hearing and a 6-day window to submit written responses and materials—while declining to provide the broader accommodations and interactive process Plaintiff had requested. See Exhibit L (Treating Provider Letter), as identified in the Exhibits and Declarations Index.

**<u>ANSWER:</u> Answering the Allegations contained in Paragraph 20, Defendant denies the allegations for the reason that they are untrue.**

21. On September 3, 2025, ASHA Ethics Officer Katharine Meyer sent an email acknowledging receipt of Plaintiff's ADA accommodation package and confirming that it had been entered into the official record of BE 25-003. As later described in Count I, that email reframed Plaintiff's ADA request as part of ASHA's internal ethics process and incorrectly suggested that ASHA had been working through his attorneys rather than engaging directly with him regarding accommodations. See Exhibit G (Meyer email), as identified in the Exhibits and Declarations Index.

**<u>ANSWER:</u> Answering the Allegations contained in Paragraph 21, Defendant neither admits nor denies the allegations contained therein and leaves Plaintiff to his strict proofs.**

22. ASHA never meaningfully corrected the false narrative about Plaintiff's CF start date, never acknowledged that his CF initiated in 2022, and continued to evaluate BE 25-003 under the wrong telepractice standard. At the same time, ASHA failed to accommodate Plaintiff's disability-related needs during the ethics process.

**ANSWER: Answering the Allegations contained in Paragraph 22, Defendant denies the allegations for the reason that they are untrue.**

23. As a result of ASHA's actions, Plaintiff has suffered and continues to suffer economic harm, reputational injury (including stigmatization from ethics accusation), emotional distress, and exacerbation of his disability. Plaintiff maintains a contemporaneous ADA Symptom & Stress Log documenting ongoing emotional distress, sleep disturbance, compulsive behaviors, and cognitive impacts caused by ASHA's conduct. See Exhibit K (ADA Symptom & Stress Log), as previously filed.

**ANSWER: Answering the Allegations contained in Paragraph 23, Defendant neither admits nor denies the allegations contained therein and leaves Plaintiff to his strict proofs.**

24. Plaintiff incorporates by reference, as though fully set forth herein, Exhibits A through O, together with the Declaration and Exhibits and Declarations Index previously filed in connection with Plaintiff's Frist Amended

Complaint and motions for temporary restraining order, preliminary injunction, and ADA accommodations, as well as Exhibit J (OCFR Complaint Packet). These exhibits are already on file with the Court and are identified on the docket as Plaintiff's prior TRO/PI submissions.

**ANSWER: Answering the Allegations contained in Paragraph 24, Defendant neither admits nor denies the allegations contained therein and leaves Plaintiff to his strict proofs.**

**COUNT I – VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (TITLE III)**

25. Plaintiff incorporates paragraphs 1 through 24 as if fully set forth herein.

**ANSWER: Defendant hereby incorporates by reference its responses to allegations 1-24 above as if fully set forth herein.**

26. ASHA is a private entity that operates places of public accommodation and provides certification and related services affecting public professional licensure and employment.

**ANSWER: Answering the Allegations contained in Paragraph 26, Defendant neither admits nor denies the allegations contained therein and leaves Plaintiff to his strict proofs.**

27. Plaintiff is a qualified individual with a disability within the meaning of the ADA.

**<u>ANSWER:</u> Answering the Allegations contained in Paragraph 27, Defendant neither admits nor denies the allegations contained therein and leaves Plaintiff to his strict proofs.**

28. ASHA failed to make reasonable modifications to policies, practices, or procedures when such modifications were necessary to afford Plaintiff equal access to its services, and failed to engage in the interactive process.

**<u>ANSWER:</u> Answering the Allegations contained in Paragraph 28, Defendant denies the allegations for the reason that they are untrue.**

28A. On September 3, 2025, ASHA Ethics Officer Katharine Meyer sent an email acknowledging receipt of Plaintiff's ADA accommodation package and confirming that it had been entered into the official record of BE 25-003. In that email, ASHA attempted to reframe the ADA request. At no time did ASHA engage in the required interactive process directly with Plaintiff, despite this contemporaneous record reflecting both SHA's actual notice of Plaintiff's disability and its failure to interact directly with him regarding accommodations.

**<u>ANSWER:</u> Answering the Allegations contained in Paragraph 28A, Defendant denies the allegations for the reason that they are untrue.**

29. ASHA's actions and omissions unlawfully discriminated against Plaintiff on the basis of disability.

**<u>ANSWER:</u> Answering the Allegations contained in Paragraph 29, Defendant denies the allegations for the reason that they are untrue.**

**COUNT II – VIOLATION OF SECTION 504 OF THE REHABILITATION ACT**

30. Plaintiff incorporates paragraphs 1 through 24 (sic) as if fully set forth herein.

**<u>ANSWER:</u> Defendant hereby incorporates by reference its responses to allegations 1-29 above as if fully set forth herein.**

31. Defendant ASHA receives federal financial assistance from the U.S. Department of Health and Human Services, including federal research grants administered by the National Institutes of health (NIH). For example, NIH's official report database lists ASHA as the recipient of federal awards totaling approximately $41,824 in FY2024 and additional awards in prior years. ASHA is therefore subject to Section 504 of the Rehabilitation Act and its implementing regulations.

**ANSWER:** **Answering the Allegations contained in Paragraph 31. Defendant neither admits nor denies the allegations contained therein and leaves Plaintiff to his strict proofs.**

32. ASHA discriminated against Plaintiff on the basis of disability by refusing to provide reasonable accommodations and by proceeding with disciplinary actions without addressing Plaintiff's disability needs.

**ANSWER:** **Answering the Allegations contained in Paragraph 32, Defendant denies the allegations for the reason that they are untrue.**

33. To the extent the precise nature of Defendant's federal financial assistance is disputed, the facts lie within Defendant's control and will be confirmed in discovery.

**ANSWER:** **Answering the Allegations contained in Paragraph 33, Defendant neither admits nor denies the allegations contained therein and leaves Plaintiff to his strict proofs.**

**COUNT III – DENIAL OF FAIR PROCEDURE (COMMON LAW)**

34. Plaintiff incorporates paragraphs 1 through 31 (sic) as if fully set forth herein.

**ANSWER:** **Defendant hereby incorporates by reference its responses to allegations 1-33 above as if fully set forth herein.**

35. Defendant conducted the BE 25-003 ethics proceeding in a manner that denied Plaintiff a fair opportunity to present evidence and to participate on equal terms given his disability and the true facts of his CF experience. Defendant did so by, among other things, mischaracterizing Plaintiff's CF start date despite contemporaneous written confirmation that his CF began in 2022, applying the wrong telepractice standards, and ignoring Plaintiff's requests for clarity and correction.

**<u>ANSWER:</u> Answering the Allegations contained in Paragraph 35, Defendant denies the allegations for the reason that they are untrue.**

36. Defendant Relied upon incomplete and misleading information regarding Plaintiff's CF initiation date and the Stevenson draft application, failed to give due weight to the CFCC policy governing 2022 CF initiations, and persisted in treating Plaintiff's CF as a 2023 start solely to justify the application of stricter telepractice limits. Defendant also proceeded without meaningful response to Plaintiff's October 5, 2023 harassment complaint about gallagher's conduct, thereby allowing the same actors and themes to influence BE 25-003.

**<u>ANSWER:</u> Answering the Allegations contained in Paragraph 36, Defendant denies the allegations for the reason that they are untrue.**

37. Defendant ignored Plaintiff's timely ADA accommodation request, failed to engage in the interactive process, and continued the ethics process

without the requested accommodations, depriving Plaintiff of a fair and accessible chance to defend this certification and reputation.

**<u>ANSWER:</u> Answering the Allegations contained in Paragraph 37, Defendant denies the allegations for the reason they are untrue.**

38. Taken together, these actions and omissions rendered the BE 25-003 process fundamentally unfair and contrary to basic notions of fair procedure, causing Plaintiff serious reputational, economic, and emotional harm.

**<u>ANSWER:</u> Answering the Allegations contained in Paragraph 38, Defendant denies the allegations for the reason they are untrue.**

39. Defendant is equitably estopped from treating Plaintiff's Clinical Fellowship as having begun in 2023 or from enforcing post-January 1, 2023 Clinical Fellowship telepractice standards against him, because Plaintiff reasonably relied, to his detriment, on written and oral confirmations from his ASHA-approved mentors and employer that his CF experience began in 2022 and would be governed by the 2022 CFCC telepractice guidelines for the entirety of his CF, as well as on ASHA/CFCC's published rule that Clinical Fellows who initiated their CF experience on or before December 31, 2022 may continue using the 2022 telepractice allowances for the duration of their CF experience.

**ANSWER: Answering the Allegations contained in Paragraph 39, Defendant denies the allegations for the reason that they are untrue.**

**COUNT IV - RELATIATION**

40. Plaintiff incorporates paragraphs 1 through 38 (sic) as if fully set forth herein.

**ANSWER: Defendant hereby incorporates by reference its responses to allegations 1-39 above as if fully set forth herein.**

41. Plaintiff engaged in protected activity when, on October 5, 2023, he filed a written harassment complaint against ASHA staff member Amanda Gallagher, and again when, on July 3, 2025, he requested ADA accommodations in connection with the BE 25-003 ethics process.

**ANSWER: Answering the Allegations contained in Paragraph 41, Defendant denies that Ms. Gallagher (at any point) engaged in any form of harassment as to Plaintiff. As to the remaining allegations contained in Paragraph 41, Defendant denies the allegations for the reason that they are untrue.**

42. Defendant took materially adverse actions against Plaintiff by initiating and advancing BE 25-003, accusing him of dishonesty, threatening his CCC, and proceeding with ethics sanctions while ignoring his harassment complaint and ADA accommodation request.

**<u>ANSWER:</u> Answering the Allegations contained in Paragraph 42, Defendant denies the allegations for the reason that they are untrue.**

43. The temporal sequence—Plaintiff's harassment complaint in October 2023, Defendant's failure to respond, the October 2, 2024 ethics complaint from Verdun, and the later refusal to accommodate Plaintiff's disability—together with the use of disputed CF start-date and telepractice narratives, supports a reasonable inference that Defendant's actions were motivated, at least in part, by retaliation for Plaintiff's protected activities.

**<u>ANSWER:</u> Answering the Allegations contained in Paragraph 43, Defendant denies the allegations for the reason that they are untrue.**

44. Defendant's retaliation has caused Plaintiff reputational injury, economic harm, and emotional distress, and warrants compensatory and, where permitted, punitive damages and injunctive relief.

**<u>ANSWER:</u> Answering the Allegations contained in Paragraph 44, Defendant neither admits nor denies the allegations contained therein and leaves Plaintiff to his strict proofs.**

## <u>PRAYER FOR RELIEF</u>

45. Enter permanent injunctive relief prohibiting Defendant from revoking Plaintiff's CCC and from publishing any revocation or related disciplinary action based on BE 25-003 or the same underlying facts.

**<u>ANSWER:</u> Answering the Allegations contained in Paragraph 45, Defendant denies that Plaintiff is entitled to any injunctive relief as ruled upon by this Court on numerous occasions.**

46. Enter a declaratory judgment that: (a) Plaintiff's Clinical Fellowship initiated in 2022 and is governed by the CFCC's 2022 telepractice guidelines for the entirety of his CF: (b) Defendant's BE 25-003 ethics action and related findings are invalid to the extent they rely on treating Plaintiff's CF as having begun in 2023 and on applying post-January 1, 2023 telepractice standards; and (c) Defendant violated the ADA and Section 404 in the manner alleged above.

**<u>ANSWER:</u> Answering the Allegations contained in Paragraph 46, Defendant denies that Plaintiff is entitled to a declaratory judgment as the evidence will establish that Plaintiff's "CF" start date began in 2023. In addition, the evidence will unequivocally establish that Defendant did not violate the ADA and/or Section 504.**

47. Order Defendant to reinstate and preserve Plaintiff's CCC in good standing, with prejudice to any further revocation or disciplinary action based on the same or substantially similar allegations or facts underlying BE 25-003.

**<u>ANSWER:</u> Answering the Allegations contained in Paragraph 47, Defendant denies that Plaintiff's CCC should be reinstated for the reason that 1) Plaintiff failed to obtain the necessary prerequisites to obtain a CCC and 2) submitted false information in support of his Application.**

48. Require Defendant to provide the reasonable accommodations requested, including written-only communications, extended deadlines, and plain-language instructions;

**<u>ANSWER:</u> Answering the Allegations contained in Paragraph 48, Defendant states that it has already provided Plaintiff his requested reasonable accommodations, thus, denies the allegations for the reason that they are untrue.**

49. Award compensatory and punitive damages for Plaintiff's emotional distress, reputational injury, and economic loss, including reimbursement of out-of-pocket attorneys' fees and expenses incurred in responding to the ethics proceeding and in pursuing ADA accommodations, which were proximately caused by Defendant's unlawful conduct;

**<u>ANSWER:</u> Answering the Allegations contained in Paragraph 49, Defendant denies that Plaintiff is entitled to any damages and denies that it engaged in any "unlawful conduct."**

50. Award costs and such other and further relief as the Court deems just and proper.

**<u>ANSWER:</u> Answering the Allegations contained in Paragraph 50, Defendant denies that Plaintiff is entitled to any costs or relief from this Court.**

51. Award Plaintiff reasonable attorneys' fees and costs as permitted by 42 U.S.C. § 12205 (ADA) and 29 U.S.C. § 794a(b) (§ 504).

**<u>ANSWER:</u> Answering the Allegations contained in Paragraph 51, Defendant denies that Plaintiff is entitled to any fees and costs for the reason that this allegation is unsupported.**

**WHEREFORE,** Defendant American Speech-Language-Hearing Association, respectfully requests that this Court dismiss Plaintiff's Frist Amended Complaint in its entirety and award Defendant its costs and fees incurred.

## <u>AFFIRMATIVE DEFENSES</u>

**NOW COMES** Defendant, American Speech-Language Hearing Association ("Defendant"), by and through its attorneys, PLUNKETT COONEY, and sets forth the following Special and/or Affirmative Defenses upon which it may rely:

1. Plaintiff's Frist Amended Complaint fails to state a claim upon which relief can be granted.

2. Plaintiff's claims may fail as a matter of law because he does not meet the definition of "disabled" under applicable law.

3. Plaintiff's claims fail as a matter of law because he was not discriminated against by Defendant.

4. Plaintiff's disability claims fail as a matter of law because he was never denied any reasonable accommodation.

5. Plaintiff cannot maintain a retaliation claim under federal law as he did not exhaust his administrative remedies with regard to same.

6. Plaintiff's disability claims fail as a matter of law because he failed to engage in the interactive process.

7. Plaintiff's disability claims fail as a matter of law as Defendant engaged in the interactive process.

8. Plaintiff's retaliation claim fails as a matter of law because he was not treated differently because of any alleged protected activity.

9. Plaintiff's retaliation claim fails as a matter of law because his CCC was revoked for a legitimate, nondiscriminatory and non-retaliatory reason that he cannot establish its pretext.

10. Plaintiff may have failed to mitigate his damages.

11. Some or all of Plaintiff's claims may be barred by the equitable doctrines of waiver, unclean hands, latches, and/or estoppel.

12. Plaintiff's alleged damages may be barred and/or limited in accordance with the after-acquired evidence doctrine.

13. Plaintiff's claims are not warranted under existing law and are unsupported by credible evidence available to Plaintiff upon filing his Complaint.

14. One or more of Plaintiff's claims may be barred by the doctrines of res judicata, waiver and release, exclusive remedy and/or accord and satisfaction. Defendant reserves the right to conduct discovery on these issues and if ultimately proven inapplicable, will agree to withdraw this defense prior to trial.

15. Defendant intends to rely upon such other and further affirmative defenses and counterclaims as may become available or apparent through the course of discovery and hereby reserves its right to amend its Answer to assert such defenses or claims.

**RELIANCE ON JURY DEMAND**

Defendant American Speech-Language Hearing Association, by and through its attorneys, PLUNKETT COONEY, states its reliance upon the Jury Demand previously filed by Plaintiff in this matter.

Respectfully Submitted,

PLUNKETT COONEY

By: /s/ *Joshua J. Trombley*

Joshua J. Trombley (P78858)
Attorneys for Defendant
333 Bridge Street, NW, Suite 530
Grand Rapids, MI 49504
(616) 752-4617
jtrombley@plunkettcooney.com

Dated: March 23, 2026

**PROOF OF SERVICE**

The undersigned certifies that on March 23, 2026, a copy of the foregoing document was served upon the attorneys/parties of record in this matter at their stated address as disclosed by the records herein via:

☐ Email ☒ Electronic e-file

I declare under the penalty of perjury that the foregoing statement is true to the best of my information, knowledge and belief.

*/s/ Darla K. Korhorn*
Darla K. Korhorn