UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF MICHIGAN

RODERICK WRIGHT,

Plaintiff,

v.

AMERICAN SPEECH-LANGUAGE-HEARING ASSOCIATION,

Defendant.

Case No. 1:25-cv-01367-PLM-MV

Hon. Paul L. Maloney

Magistrate Judge Maarten Vermaat

# PLAINTIFF'S OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER AND REPORT AND RECOMMENDATION

Pursuant to Fed. R. Civ. P. 72(a)–(b) and W.D. Mich. LCivR 72.3, Plaintiff Roderick Wright respectfully objects to: (1) the Magistrate Judge's March 10, 2026 Order denying Plaintiff's motion for protective order; and (2) the March 10, 2026 Report and Recommendation ("R&R") recommending denial of Plaintiff's Motion for Preliminary Injunction. Plaintiff respectfully requests de novo review of all portions of the Report and Recommendation addressed in Sections II–IV below.

## I. OBJECTION TO ORDER DENYING PROTECTIVE ORDER (Rule 72(a))

The Order denying a protective order is "clearly erroneous and contrary to law" under Fed. R. Civ. P. 26(c) because it fails to protect a pro se litigant with a documented disability from an avoidable and unnecessary hardship created by Defendant.

**Vexatious Scheduling:** Plaintiff acted in good faith by offering two unrestricted dates (April 1 and April 3, 2026) for a full-day deposition window. Defendant instead unilaterally noticed March 31, 2026—the one date on which Plaintiff has a non-negotiable 1:00 p.m. EST hard stop due to childcare and work obligations, a conflict he disclosed in advance.

**The Impossible Choice:** By denying any time limit or date adjustment, the Order forces Plaintiff to choose between abandoning minor children or risking sanctions for ending the deposition at his disclosed hard stop. In its January 9, 2026 Order (ECF No. 35, PageID.589–591), this Court denied Plaintiff's request for written-only proceedings by finding such an accommodation was not "reasonable." However, the Court's current reliance on defense counsel's informal "estimate" that questioning will last three hours provides no legal protection if examination exceeds that estimate. By refusing to codify a hard stop, the Court ignores the protections against "undue burden" under Rule 26(c) and leaves a *pro se* litigant's compliance at the whim of an adversarial party.

## II. OBJECTION TO R&R: LIKELIHOOD OF SUCCESS (Rule 72(b))

**A. The Governing Standard — Winter and Carson**

A preliminary injunction requires Plaintiff to establish: (1) a strong likelihood of success on the merits; (2) irreparable harm absent injunctive relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 83–84 (1981). The Sixth Circuit applies these factors and requires a "strong" showing on likelihood of success when the injunction would alter the status quo. *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). Plaintiff meets this burden.

**B. ASHA's Ethics Revocation Rests on a Factual Falsehood**

This is not a lawsuit over a minor paperwork dispute; it is a challenge to an ethics revocation that rests entirely on ASHA's incorrect re-labeling of a 2022 Clinical Fellowship as a 2023 start in order to apply the wrong telepractice rules. The R&R finds that Plaintiff failed to show a strong likelihood of success and treats the CF start-date dispute as a mere disagreement with ASHA's determination. That conclusion ignores dispositive, undisputed facts pled in the First Amended Complaint and incorporated exhibits.

**Vested Rights under 2022 Standards:** Plaintiff alleges, and supports with his Chronology of CF Initiation (Attachment A to this Objection) and previous exhibits, that he initiated his Clinical Fellowship (CF) in October 2022, when he was hired, onboarded, assigned mentors, and began CF duties, and that he obtained his New Mexico Clinical Fellow license effective November 2022. The Council for Clinical Certification (CFCC) policy states that “Clinical Fellows who have initiated their CF experience on or before December 31, 2022 may engage in telepractice

and telesupervision using the 2022 guidelines for the entirety of their CF experience." See Attachment B (CFCC COVID-19 Telepractice Transition Guidance).

Plaintiff's telepractice supervisor, Victoria Hanawalt, confirmed on December 8, 2022, that Plaintiff "began the CF experience before 12/31/2022" and would complete his CFY under the pre-2023 standards (ECF No. 1-5, PageID.22), incorporated in the First Amended Complaint ¶ 8). New Mexico's Regulation & Licensing Department and Public Education Department treated Plaintiff as a Clinical Fellow in 2022 by issuing his CF license in 2022 and accepting CFY plans and supervision forms that all use October 17, 2022, as the CF start date. This is confirmed by Plaintiff's Clinical Fellowship Year (CFY) Plan signed by supervisor Victoria Hanawalt on October 14, 2022 (ECF No. 29-18, PageID.353), and the official verification of his New Mexico license issued on November 23, 2022 (Attachment D). Furthermore, Hanawalt explicitly confirmed in writing on December 8, 2022, that Plaintiff "began the CF experience before 12/31/2022" (ECF No. 1-5, PageID.22). ASHA's position is not a good-faith "interpretation" of Plaintiff's CF start date; it is a factual rewrite that contradicts these objective records, because under ASHA's framing even a CF that indisputably began in 2022 is relabeled as "starting" in 2023 solely to justify applying post-January 1, 2023 standards.

Nor may ASHA salvage this error by recasting it as "interpretive discretion" over its own standards. The CFCC's 2022 transition policy and Standard VII-A anchor the rule to when a fellow "began" or "initiated" the Clinical Fellowship; they nowhere state that a CF "begins" only upon the first direct client contact, and ASHA has identified no written standard, policy, or guidance in this record that adopts such a definition. See Attachment C (ASHA SLP Certification Standard VII-A: Clinical Fellowship Experience) and Attachment B (CFCC COVID-19 telepractice transition guidance).

ASHA may apply internal formulas for counting qualifying hours, but it cannot invent an unwritten "direct-hours-only" start-date rule after the fact and retroactively override the plain text of its own standards, Plaintiff's November 23, 2022 tele-orientation and onboarding, and New Mexico's contemporaneous CF licensure records.

ASHA’s attempt to apply the post-January 1, 2023 telepractice caps to a Clinical Fellowship that was initiated and licensed as a 2022 CF—after the full CF had already been completed and verified—is a classic denial of fair procedure.

**C. The "Binary Date" Rule: ASHA's Violation of Its Own Calendar Triggers**

ASHA's effort to re-label Petitioner's 2022 Clinical Fellowship as a "2023 start" is not a reasonable interpretation; it is a mathematical and regulatory impossibility.

**The Definition:** ASHA’s Clinical Fellowship standard in Standard VII defines the CF as a mentored professional experience and ties it to when the CF experience is initiated (Attachment C). Under New Mexico law, "professional" SLP practice is legally prohibited without a state license; absent licensure, there is no lawful "professional experience" to initiate a CF.

**The Undisputed Fact (Attachment D):** Petitioner was granted his New Mexico Clinical Fellow License (No. SLPCF22006) on November 23, 2022.

**The Calendar Trigger (Attachment B):** ASHA's telepractice transition policy mandates that the COVID-era 100% telepractice allowance applies to all CF experiences "beginning on or before December 31, 2022."

Because November 23, 2022 is chronologically prior to December 31, 2022, Petitioner's mentored professional experience—and thus his CF—began within the 100% telepractice window by operation of ASHA's own written rules. Nothing in the CFCC transition policy or Standard VII-A requires Clinical Fellows to pinpoint the exact minute, or even the exact calendar day, of their first work activity in order to claim a 2022 start; the rule turns on whether the CF "began" or was "initiated" on or before December 31, 2022. In ordinary practice, Fellows and employers treat a CF as having "started" in the year they were hired, onboarded, assigned mentors, and placed into CF roles. By demanding that Plaintiff uniquely prove the exact moment his CF began while ignoring New Mexico's 2022 license issuance, 2022 CF plans, and 2022 telepractice onboarding, ASHA is imposing an ad hoc burden that exists nowhere in its written rules.

ASHA does not possess "interpretive discretion" to retroactively alter a calendar date or nullify a state-conferred professional status in order to force a 2023 telepractice cap onto a 2022 CF. ASHA's guidance (Attachment B) mandates that Clinical Fellows who begin by this date are entitled to the 100% telepractice allowance for the "entirety of their CF experience," leaving no room for a mid-fellowship rule change.

ASHA's own records document a direct regulatory contradiction. In her November 28, 2022, official guidance (Attachment E), ASHA Director of Clinical Certification Amanda Gallagher established a clear "grandfather" rule: *"Did you begin your… CF experience before December 31, 2022? If yes, you may continue following the COVID-19 guidance (100% telepractice) until you… complete your CF experience."*

However, on September 13, 2023, Gallagher attempted to retroactively nullify Petitioner's 2022 start date by claiming that because he "did not ultimately work with any clients" during his initial

2022 employment, his experience “cannot count” toward a 2022 initiation (Defendant’s Ex. A, at 3). This position contradicts ASHA Standard VII-A, which defines the Clinical Fellowship as a mentored professional experience (Attachment C), and it directly conflicts with ASHA Certification staff member Lilly Schwartz’s written clarification that a CF start date is “whatever day you actually began working at your placement,” which “could include training/orientation” (ECF No. 1-6, PageID.27; incorporated by reference in the First Amended Complaint). In context, this was not a theoretical “could”: Plaintiff had no prior CF placement, and his inquiry specifically asked ASHA to define the initiation of his CF experience, so the only possible application of Schwartz’s clarification was that his first day of licensed CF work at Stepping Stones—including required orientation and training—marked the initiation of his CF in 2022. Because Plaintiff had never before initiated any CF experience, Schwartz’s definition necessarily applied to his 2022 onboarding at his first CF placement; there was no earlier CF to which ASHA could anchor the “start date.” Petitioner was a licensed professional engaged in such mentored professional orientation in 2022. Because Petitioner's professional experience began upon his licensure on November 23, 2022, he fell within the 100% telepractice window by operation of the very official guidance Gallagher herself published. ASHA cannot “un-begin” a 2022 start date simply because the initial professional experience consisted of the orientation and training required to begin a fellowship.

ASHA may apply whatever internal formulas it wants for counting individual hours, but it cannot use those formulas to erase established facts about when Plaintiff's CF began or which CFCC transition policy applies. Plaintiff's professional beginning as a Clinical Fellow was in 2022, confirmed by his New Mexico Clinical Fellow license (Attachment D) and his 2022 CFY plans and supervision forms which explicitly use an October 17, 2022, start date (ECF No. 29-18,

PageID.353; ECF No. 29-20, PageID.355). He is therefore entitled to the 2022 telepractice guidelines for the entirety of his CF under the CFCC's own transition rule.

**D. Evidence of Procedural Irregularity: Discovery Proves an "Autopilot" Adjudication**

Beyond the legal errors regarding the CF start date, newly discovered Board of Ethics Adjudication Minutes (Attachment F) prove the administrative process was a procedural sham. ASHA's own ethics summary falsely states that Plaintiff's "start date was pushed back and his CF was canceled," collapsing the cancellation of a single Stepping Stones placement into a claim that no 2022 CF initiation occurred at all, despite 2022 CFY plans, onboarding records, and a New Mexico CF license issued in November 2022. The Board's own "timeline of events" in the Adjudication Minutes illustrates how far ASHA departed from the actual record. It asserts that in August 2022 Plaintiff "applied for ASHA certification" with a Stepping Stones CF start date in September 2022 and that "the Respondent's start date was pushed back, and his CF was canceled," describing that period as "only non-client training and no direct client care." That characterization conflates an abandoned 2022 application draft with Plaintiff's actual Clinical Fellowship, erases his 2022 CFY plans and onboarding as a Clinical Fellow, and presents the cancellation of a single Stepping Stones placement as if Plaintiff's entire 2022 CF initiation never occurred.

**Contemporaneous HR and employment emails prove the Board's "CF was canceled" narrative is false (Attachment G).** On January 4, 2023, Stepping Stones HR placed Plaintiff in "displaced status" for approximately 30 days, a period explicitly used "to redirect the employee to another assignment." On January 31, 2023, HR confirmed that Plaintiff's displaced status had

ended. During this period, Stepping Stones was actively scheduling Plaintiff for CF-SLP interviews with Gallup-McKinley County Schools (December 30, 2022 and January 11, 2023). On January 17–18, 2023, Plaintiff contacted Unlimited Teletherapy describing himself as "a fully licensed clinical fellow that started teletherapy in New Mexico with a company last year." These emails—none of which were provided to or considered by the Board—directly refute the central premise of the Board's "timeline" and demonstrate that only a single school assignment was cancelled, not Plaintiff's 2022 Clinical Fellowship initiation.

**Meyer-Engineered "CF Was Canceled" Narrative:** Discovery confirms that the phrase "his CF was canceled" came from an internal Timeline prepared by Senior Director of Ethics Katharine Meyer and provided to the Board before it voted. That Timeline asserts that Plaintiff's "start date was pushed back, and his CF was canceled," depicting the Stepping Stones episode as "only non-client training and no direct client care," thereby collapsing the cancellation of a single placement into a claim that no 2022 CF initiation occurred at all.

**Mischaracterization of the Legal Record:** The Board's minutes (Attachment F, p. 11) characterize Plaintiff's comprehensive legal defense as "conclusionary remarks" that only "requested" a dismissal (p. 11). This is a substantive mischaracterization. In reality, Plaintiff's counsel issued a firm legal challenge (Attachment H) predicated on a documented deficiency: ASHA's failure to provide evidence of "knowing" misrepresentation. By reducing a detailed legal brief to a simple "request," the Board attempted to minimize a firm challenge, further illustrating the "autopilot" nature of their adjudication.

**Official State Verification of 2022 Licensure:** The State of New Mexico has issued a formal Verification of Licensure (Attachment D) confirming Plaintiff was licensed as a Clinical Fellow on November 23, 2022. This official government record contradicts ASHA's findings.

**Failure to Address Dispositive Evidence:** The Board's final Rationale (Attachment F, p. 12) fails to reconcile its finding of "knowing" misrepresentation with its own summary of the record on Page 8. Specifically, the Board acknowledges that ASHA Certification staff (Lilly Schwartz) told Plaintiff that a start date "could include training/orientation" (p. 8), yet the final Rationale ignores this documented reliance and assumes "knowing" intent. This indicates that while the evidence was in the record, it was not substantively considered in the final adjudication.

**Immediate Reciprocal Harm:** As of February 18, 2026, ASHA's Ethics Director has used this verdict to trigger a reciprocal disciplinary complaint with the New Mexico Board (Complaint SAH-2026-00168-INC), threatening Plaintiff's licensure and current employment.

The Magistrate's finding that Plaintiff is unlikely to succeed is clear error because the Board reached its conclusion by mischaracterizing the legal record and ignoring official state licensing dates.

**E. The "Gallagher vs. Gallagher" Contradiction: A Regulatory Bait-and-Switch**

The Board's reliance on internal emails from Amanda Gallagher as "superseding" all other evidence is legally fatal because Gallagher's 2023 internal emails directly contradict her own 2022 published regulatory guidance.

**The Published Rule (Nov. 28, 2022):** In her official guidance as Director of Clinical Certification (Attachment E), Gallagher established a clear "Safe Harbor" for transition: "Did you begin your... CF experience before December 31, 2022? If yes, you may continue following the COVID-19 guidance... for the entirety of your CF experience."

**The Internal Contradiction (Sept. 2023):** In her later emails, Gallagher attempts to "un-begin" Plaintiff's 2022 start date by claiming his 2022 orientation and licensed practice "cannot count" toward a 2022 initiation (Defendant's Ex. A). Approximately ten months into his CF, Plaintiff wrote to ASHA Certification to "double-check" his start date, explicitly disclosing that his direct student treatment was scheduled to begin "after winter break" in January (ECF No. 1-6, PageID.25-26; First Amended Complaint ¶ 11). Schwartz responded that the CF start date is "the first date you actually went to work for the agency you were hired for," which "could include training/orientation" (ECF No. 1-6, PageID.26; First Amended Complaint ¶ 5). Only after this written confirmation did Gallagher—acting without any documented board approval or regulatory authority—unilaterally introduce a new, unwritten requirement that a 2022 CF start does not count unless it includes direct client care. This unauthorized "rule" contradicts both the plain language of Standard VII-A and Schwartz's contemporaneous clarification.

This is a classic bait-and-switch. The published guidance anchors the rules to a calendar date of initiation—which occurred in 2022 upon Plaintiff's licensure and hiring—while the internal email attempts to retroactively move that date based on a counting formula for hours. By ASHA's own Standard VII-A, a Clinical Fellowship is a "mentored professional experience" that includes orientation and training. Gallagher cannot use an internal email to strip away a "Safe Harbor" she publicly granted to every Fellow in the country.

Plaintiff did not stumble into the 2022 transition window by accident. Before committing to a 100% telepractice CF placement, Plaintiff expressly asked ASHA-affiliated supervisors whether beginning his CF experience in 2022 would allow him to complete the CFY under the 100% telepractice guidelines. At no point did ASHA, Stepping Stones, or any mentor tell Plaintiff that his CF would "not count" unless he logged direct client hours in 2022.

Nor may ASHA rescue this contradiction by re-labeling it as ordinary "interpretation." The CFCC's transition policy and Standard VII-A tie the applicable rules to when a Clinical Fellowship "began" or was "initiated"; they do not define "begin" as the moment a Fellow first logs direct client hours. Whatever internal formulas ASHA uses to count qualifying hours, it cannot invent an unwritten, "direct-hours-only" start-date rule after the fact and apply it retroactively to erase Plaintiff's 2022 initiation.

Beyond these procedural failures, ASHA's 2023 start-date theory is not supported by any independent actor. New Mexico's Regulation & Licensing Department and Public Education Department, Plaintiff's CF employer (Stepping Stones), and Plaintiff's supervisors have consistently treated his CF as beginning in 2022. No licensing authority, employer, or mentor outside ASHA has ever treated Plaintiff's CF as "starting" in 2023.

ASHA's own director of the Board of Ethics, Katharine Meyer, has admitted through counsel that the Board treated internal emails from Gallagher as “superseding” the assurances Plaintiff received from ASHA staff member Lilly Schwartz and from his ASHA-certified CF supervisor, Victoria Hanawalt, because they were not the “correct” ASHA source (ECF No. 42-8, PageID.483). ASHA cannot allow a 2023 email from Gallagher to "supersede" the New Mexico Regulation and Licensing Department's official records. By unilaterally deciding which evidence was "correct" before the adjudication, the Board abandoned its role as an impartial fact-finder, further illustrating the "autopilot" and bad-faith nature of these proceedings.

**States, not ASHA, control official Clinical Fellowship status:** Both Michigan and New Mexico conferred and recognized Plaintiff's Clinical Fellow status in 2022. Michigan’s LARA accepted a CFY Supervision Plan using an October 17, 2022, start date (ECF No. 29-20, PageID.355), and New Mexico's RLD similarly accepted CFY plans using the same October 17,

2022, start date (ECF No. 29-18, PageID.353). New Mexico further issued an official Clinical Fellow license in November 2022 (Attachment D). ASHA cannot override these multiple state-level determinations by relabeling the same 2022 fellowship as "beginning" in 2023.If ASHA persists in its 2023 start-date narrative, Plaintiff will be prepared at trial to call witnesses from New Mexico's licensing authorities, his CF employer, and his supervisors, all of whom can independently confirm that he was licensed and treated as a Clinical Fellow in 2022.

**Retroactive Enforcement and Fair Procedure:** ASHA's ethics complaint treated Plaintiff's CF as if it began in 2023, applied the stricter 2023 telepractice caps, and then labeled Plaintiff dishonest for using the 2022 start date ASHA's own policy and supervisors had recognized. Had the Committee been given the correct 2022 start date reflected in state licensure records, it would have had no basis to conclude that Plaintiff's reliance on the 2022 telepractice standards was dishonest or unethical.

On these facts, Plaintiff is not simply disputing a close call; he is challenging an ethics revocation that contradicts governing CFCC rules and contemporaneous 2022 documentation. This supports a strong likelihood of success on his fair-procedure and disability-based access claims.

## III. OBJECTION TO R&R: IRREPARABLE HARM (Rule 72(b))

The R&R concludes that Plaintiff's harms are compensable by money damages and not irreparable, characterizing the matter as a six-month suspension and lost income. In reality, there is no automatic restoration of Plaintiff's CCC at six months; ASHA retains discretion to deny

recertification, and the public ethics notation and certification gap will follow Plaintiff indefinitely.

**Immediate Effect of Revocation:** The ethics decision provided that Plaintiff's CCC would be revoked and publicly reported after a 30-day period, and ASHA in fact pulled his certification and published the ethics finding once that window closed. The injury to Plaintiff's professional status and reputation was therefore immediate and ongoing.

**Mischaracterization of the Sanction:** ASHA did not impose a time-limited suspension that automatically lifts at six months; it revoked Plaintiff's CCC, publicly branded him with an ethics violation, and conditioned any future certification on submitting a new application. There is no guarantee of restoration, and Plaintiff has stated that he does not intend to reapply to validate an ethics narrative he disputes. ASHA cannot convert a permanent, stigmatizing revocation into a "voluntary" injury by forcing Plaintiff to choose between surrendering his challenge or living indefinitely with a published designation of unethical conduct.

**Permanent Stigma and Ongoing Revocation:** ASHA has revoked Plaintiff's CCC and published that revocation. This is not a "six-month suspension": ASHA stripped a credential Plaintiff already earned, and there is no automatic restoration. The revocation and public ethics finding remain unless Plaintiff submits to ASHA's narrative—a coerced "choice" that is itself part of the irreparable harm.

**Professional Death Penalty:** Courts recognize that loss or public taint of a professional credential inflicts reputational and career harm that cannot be fully remedied by back pay alone. ASHA does not require certificants in good standing to "reapply" periodically; only those whose credentials have been revoked are told they must start over.

**Exceeding Clinical Requirements:** While ASHA requires 1,260 hours for certification, Plaintiff actually completed 1,450 hours of clinical experience. He exceeded requirements by 190 hours.

**Failure to Preserve the Status Quo:** The R&R erroneously treats the current state of revocation as the "status quo." In the Sixth Circuit, the status quo for a preliminary injunction is the "last actual, peaceable, noncontested status which preceded the pending controversy." *United Steelworkers of Am. v. Cooper Tire & Rubber Co.*, 474 F.3d 271, 277 (6th Cir. 2007). Here, that status was Plaintiff's active, compliant standing under the 2022 standards. By allowing the revocation to stand during litigation, the Court permits ASHA to unilaterally change the status quo through the very contested, retroactive act that is the subject of this lawsuit.

## IV. OBJECTION TO R&R: FACTUAL ERROR REGARDING ADA INTERACTIVE PROCESS

The R&R's finding that ASHA satisfied its ADA obligations by communicating with Plaintiff's "attorneys" is a clear factual error that ignores the limited scope of Plaintiff's representation and the record evidence that Plaintiff handled all ADA issues pro se.

**No Authority to Handle ADA Matters:** The R&R assumes that because Plaintiff had counsel in the ethics proceeding, ASHA satisfied its ADA duty by communicating only with those attorneys. That ignores Plaintiff's right under 28 U.S.C. § 1654 to conduct his own case on specific issues and his explicit reservation of ADA matters to himself. As shown in Attachment I, Plaintiff told his ethics counsel: "the ADA interactive process is something I initiated directly with ASHA, and it remains between me and them," and that ASHA's "choice to send Kathy

Meyer's Sept. 2 email only to you and Connor — not to me — is itself part of the ADA violation." Plaintiff's attorneys never appeared to represent him on ADA accommodations.

**ASHA's Knowledge and Bypass of Plaintiff:** Plaintiff's counsel acknowledged that Plaintiff was "within [his] rights to engage with ASHA directly" on ADA issues. ASHA thus knew Plaintiff had initiated the ADA request and expected the interactive process to be with him, yet ASHA routed ADA communications to ethics counsel with no authority to resolve his accommodations.

**Breakdown of the Interactive Process:** The ADA regulations require an "informal, interactive process" with the "individual with a disability." 29 C.F.R. § 1630.2(o)(3). By refusing to communicate with the only person authorized to discuss his disability—the pro se Plaintiff—ASHA failed to engage in a good-faith interactive process as a matter of law.

## V. CLARIFIED RELIEF: REMOVAL OF FLAGS, POP-UPS, AND WARNING NOTATIONS

In addition to the relief previously requested, Plaintiff specifically seeks an order directing the American Speech-Language-Hearing Association to remove any and all internal or public flags, pop-up alerts, boxes, warnings, annotations, notations, or other electronic indicators that appear when Plaintiff's name, member number, or record is accessed, so that his file is treated the same as any other certificant in good standing, and to refrain from re-adding any such indicator in the future based on the challenged ethics decision.

**CONCLUSION**

For the foregoing reasons, Plaintiff requests that Judge Maloney:

1. Set aside the Magistrate Judge's Order denying a protective order and enter a tailored protective order under Rule 26(c);

2. Reject the R&R and grant Plaintiff's Motion for Preliminary Injunction, ordering ASHA to cease enforcing and publishing the revocation of his CCC and to restore his certification status pending a final trial on the merits;

3. Order ASHA to remove any and all such flags, pop-ups, warning boxes, annotations, or other electronic notations attached to Plaintiff's file and to refrain from re-adding any similar indicator based on the challenged ethics decision; and

4. Find that the R&R's conclusion regarding the ADA interactive process contains a clear factual error, as Plaintiff's September 5, 2025 email (Attachment I) proves he was not represented by counsel for ADA matters.

Respectfully submitted,

Dated: March 23, 2026

/s/ Roderick Wright
Roderick Wright

6181 Lake Michigan Drive, Apt. 103
Allendale, MI 49401
(616) 990-9284
Email: wrightiir@yahoo.com
Plaintiff, pro se

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this document complies with the word-count limits of LCivR 7.2(b) and 7.3(b). According to the word processing system used to prepare this document (Microsoft Word), this brief contains 4,293 words, excluding the parts of the brief exempted by the Local Rules.

Respectfully submitted,

Dated: March 23, 2026

/s/ Roderick Wright
Roderick Wright
6181 Lake Michigan Drive, Apt. 103
Allendale, MI 49401
(616) 990-9284
Email: wrightiir@yahoo.com
Plaintiff, pro se

## INDEX OF ATTACHMENTS

**Attachment A:** Chronology of CF Initiation (Oct. 2022 hiring and onboarding).

**Attachment B:** CFCC COVID-19 Telepractice Transition Guidance (2022).

**Attachment C:** ASHA SLP Certification Standard VII-A.

**Attachment D:** NM Verification of Licensure (Issued Nov. 23, 2022).

**Attachment E:** Gallagher's Published Regulatory Guidance (Nov. 28, 2022).

**Attachment F:** Board of Ethics Adjudication Minutes (BE 25-003).

*(Note: System-generated footer on Page 315 confirms this file was last modified/saved on March 5, 2026—just five days prior to the Magistrate's R&R.)*

**Attachment G:** Employment Records (Displaced Status & Interview Emails).

**Attachment H:** Jackson LLP Legal Response (Respondent's Response).

**Attachment I:** ADA Reservation Email Chain (Sept. 3–5, 2025) — **HIGHLIGHTED**.