**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RODERICK WRIGHT,

Plaintiff,

Case No. 1:25-cv-1367
Hon. Paul L. Maloney

AMERICAN SPEECH-LANGUAGE-HEARING ASSOCIATION,

Defendant.

---

# DEFENDANT'S MOTION FOR SUMMARY DISPOSITION, BRIEF IN SUPPORT, AND REQUEST FOR ORAL ARGUMENT

---

## CONCISE STATEMENT

Plaintiff's Complaint should be dismissed in its entirety as there is no genuine issue of material fact that Defendant is entitled to judgment as a matter of law on all of Plaintiff's Counts. Plaintiff's Counts alleging violations of the ADA and Section 504 fail as a matter of law as the evidence establishes that Defendant not only engaged in the interactive process and granted Plaintiff his requested reasonable accommodations, but there is also no evidence Defendant discriminated against Plaintiff on the basis of his disability. Plaintiff's "Denial of Fair Procedure" Count fails as there is no dispute that Defendant engaged in a fair process, including multiple levels of procedural review related

to the revocation of Plaintiff's Certificate of Clinical Competence ("CCC"). Lastly, Plaintiff's Retaliation Claim fails as he has no evidence that the filing of the harassment claim and/or requested ADA accommodations was in any way related to the revocation of his CCC. Instead, the revocation of Plaintiff's CCC was based on Plaintiff's failure to complete the necessary certification prerequisites, and his violation of the Principle II, Rule B and Principle IV, Rules E and G of the Defendant's Code of Ethics. Specifically, the Board of Ethics revoked Plaintiff's CCC based on Plaintiff: (i) exceeding the 25% telepractice limit of direct client contact hours during the application process; and (ii) knowingly providing false data as part of his Certification Application.

# TABLE OF CONTENTS


**I. INTRODUCTION** .......... 1

**II. STATEMENT OF FACTS** .......... 1

**A. Plaintiff's American Speech-Language Hearing Association ("ASHA") Certification.** .......... 1

**B. ADA Accommodations** .......... 6

**C. Plaintiff's "Complaint" Against Amanda Gallagher** .......... 9

**III. STANDARD OF REVIEW** .......... 9

**IV. ARGUMENT** .......... 10

**A. Defendant Fully Engaged in the Interactive Process and Provided Reasonable Accommodations. Thus, Count I and II of Plaintiff's Complaint Alleging Violations of the ADA and Section 504 Fail as a Matter of Law.** .......... 10

**i. Plaintiff's Request for Additional "Accommodations" Fails as These Requests do not Constitute "Accommodations" Under the ADA and Section 504.** .......... 14

**ii. Plaintiff Cannot Establish that his Disability was a "But For" Cause in Revoking his CCC.** .......... 18

**B. Plaintiff's Denial of Fair Procedure Count Fails as a Matter of Law.** .......... 19

**C. Defendant's Revocation of Plaintiff's Certificate of Clinical Competence was Solely Related to his Failure to Complete the Necessary Certification Requirements and Submission of False Statements, thus, Plaintiff's Retaliation Count Must Fail.** 22

**V. CONCLUSION** .......... 25

# TABLE OF AUTHORITIES

## Cases


*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242, 248 (1986)........................................................................................................ 9

*Austin v. Am. Ass'n of Neurological Surgeons,* 120 F.Supp.2d 1151, 1152 (N.D.Ill.2000)......... 20

*Bledsoe v. Tennessee Valley Authority Board of Directors,* 42 F.4th 568, 580 (6th Cir. 2022) 18

*Celotex Corp. v. Catrett*,
477 U.S. 317, 325 (1986)...................................................................................................... 10

*Choulagh v. Holder,* 528 Fed.Appx. 432, 437 (6th Cir. 2013) ...................................................... 23, 26

*Clark v. City of Dublin, Ohio,* 178 Fed.Appx. 522, 525 (6th Cir.2006)............................................ 23

*Coffman v. Robert J. Young Co., Inc.,* 871 F.Supp.2d 703, 713 (M.D. Tenn. 2012)....................15

*E.E.O.C. v. Kohl's Dep't Stores, Inc.*, 774 F.3d 127, 133 (1st Cir.2014)......................................... 11

*Halpern v. Wake Forest Univ. Health Scis.,* 669 F.3d 454, 465 (4th Cir.2012)...........................16

*Hamilton v. SW. Bell Tel. Co.,* 136 F.3d 1047, 1052 (5th Cir.1998)..........................................16

*Harris v. Metro. Gov't of Nashville & Davidson Cnty.,* 594 F.3d 476, 486 (6th Cir. 2010).......... 23

*Hostettler v. Coll. of Wooster*, 895 F.3d 844, 857 (6th Cir. 2018)................................................... 11

*Jakubowski v. Christ Hosp., Inc.,* 627 F.3d 195, 202 (6th Cir. 2010) ............................................... 11

*Jones v. Nationwide Life Ins. Co.,* 696 F.3d 78, 90 (1st Cir.2012)...........................................16

*Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007) ..................................... 11,12

*Lewis v. Humbold Acquisition Corp.,* 681 F.3d 312, 315-16 (6th Cir.2012)...............................16

*Lincoln Mem'l Univ. Duncan Sch. of Law v. Am. Bar Ass'n,* No. 3:11–CV–608, 2012 WL 137851, at *9 (E.D.Tenn. Jan.18, 2012)................................................................................................ 20

*Lyons v. Legal Aid Soc.,* 68 F.3d 1512, 1515 (2d Cir. 1995) ............................................................. 11

*Mcy v. Hopkins County Sch. Bd. of Educ.,* 484 F.3d 357, 366 (6th Cir.2007)..............................16

*MacDonald v. UPS,* 430 Fed.Appx. 453, 463 (6th Cir.2011)............................................................. 23

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ............................... 10

*McNett v. Hardin Cmty. Fed. Credit Union,* 118 Fed.Appx 960, 956 (6th Cir.2004)...................24

*Palmer v. Circuit Court of Coook Cnty., Ill.,* F.3d 351,352 (7th Cir.1997)..................................16

*Peoria Sch. of Bus., Inc. v. Accrediting Council for Continuing Edu. and Training,* 805 F.Supp. 579, 583–84 (N.D.Ill.1992)..........................................................................................20

*Schmidt v. Methodist Hosp. of Indiana, Inc.,* 89 F.3d 342, 344-45 (7th Cir.1996)....................15

*Scott v. Harris*, 550 U.S. 372, 380 (2007).........................................................................9

*Siefken v. Village of Arlington Heights,* 65 F.3d 664 (7th Cir.1995).......................................15

*Smith v. Michigan Department of Corrections,* 159 F.4th 1067, 1082 (6th Cir.2025)................22

*Soriano v. Neshoba Co. General Hospital Bd. of Trustees,* 486 F. App'x 444, 446 (5th Cir.2012) ........................................................................................................................................ 20

*Staron v. McDonald's Corp.,* 51 F.3d 353, 355–56 (2d Cir.1995)..................................................... 12

*Thomas M. Cooley Law School v. American Bar Ass'n,* 459 F.3d 705, 712 (6th Cir. 2006) 89, 20
*Tubbs v. Formica Corp.,* 107 Fed.Appx. 485, 488 (6th Cir.2004) ........................................ 10, 11

**Statutes**

29 C.F.R. § 1630, App. § 1630.9 ........................................ 10
29 C.F.R. § 1630.2(o)(3) ........................................ 10
42 U.S.C. § 12111(9) ........................................ 11
45 C.F.R. § 84.12 ........................................ 11

**Other Authorities**

§ 12111(9) of the ADA ........................................ 11

**Rules**

Fed. R. Civ. P. 56(a) ........................................ 8
Fed. R. Civ. P. 56(c)) ........................................ 8

## I. INTRODUCTION

Defendant moves this Court for Summary Judgment on all of Plaintiff's Counts. The evidence establishes that Defendant not only engaged in the interactive process with Plaintiff but also granted Plaintiff all his requested reasonable accommodations. There is no evidence that Defendant discriminated or retaliated against Plaintiff in violation of the ADA or Section 504. Further, there is no evidence that Defendant engaged in an "unfair procedure."

Instead, the evidence establishes that Plaintiff's Certificate of Clinical Competence ("CCC") was rightfully revoked as Plaintiff failed to complete the necessary prerequisites to obtain the CCC and submitted false information on his Certification Application. Defendant provided Plaintiff with multiple levels of procedural review. Accordingly, Plaintiff's ADA, Section 504, Retaliation and Denial of Fair Procedure claims fail as a matter of law.

## II. STATEMENT OF FACTS

### A. Plaintiff's American Speech-Language Hearing Association ("ASHA") Certification.

In August of 2022, Plaintiff applied for his Certificate of Clinical Competence and noted on his Certification Application that his clinical fellowship ("CF") experience with Stepping Stones would begin in September

of 2022. ***See ECF No. 38-1,*** **PageID.415.** However, Plaintiff's start date was pushed back, and his clinical fellowship was later cancelled. *Id.* During his employment at Stepping Stones, Plaintiff only received non-client training and provided no direct client care. *Id.*

In February of 2023, Plaintiff began a position with Early Childhood Education Center, which consisted of 100% telepractice and telesupervision during his CF experience. *Id.* On September 12, 2023, Plaintiff emailed ASHA Clinical Certification and inquired what constituted the "initiation of his CF experience." *Id.* In a back-and-forth email exchange, Defendant informed Plaintiff that his time at Stepping Stones would not count toward his CF experience because (i) he did not meet the necessary direct and indirect mentorship during that time, and (ii) his time there did not include at least 80% direct care/care management of clients with communication, cognitive or swallowing difficulties. Defendant specifically notified Plaintiff that his documented experience at Stepping Stones ***did not provide him with a CF experience start date in 2022***, and therefore, Plaintiff needed to complete the CF requirements for individuals initiating the CF experience on or after January 1, 2023. *Id.* at PageID.416. Indeed, Marlaina Stevenson, Plaintiff's mentor at Stepping Stones, indicated that Plaintiff did not spend 80% of his work in direct clinical contact with patients with communication and/or swallowing

disorders. *Id.* Ms. Stevenson also noted that she could not rate Plaintiff's CF experience because she did not observe or rate any of his skills as he only attended training, and it was not possible for Plaintiff to meet the minimum requirements of 6 hours of direct and 6 hours of indirect supervision during this time. *Id.*

All of this information was conveyed to Plaintiff. On October 5, 2023, Defendant again notified Plaintiff that the time he spent under Ms. Stevenson's mentorship would not count towards his CF experience, which meant that the start date of his CF experience was later than January 1, 2023. *Id.* A CF start date after January 1, 2023, meant that to be eligible for ASHA certification, Plaintiff would need to complete at least 75% of his time in care and care management via direct, ***onsite, in-person*** service delivery.[1] *Id.* In December 2023, Plaintiff withdrew his Certification Application. *Id.*

---

[1] Prior to 2023, Defendant implemented temporary COVID-19 allowances to support students, clinical fellows and professionals during the pandemic, creating allowances for clinical fellows to complete up to 25% of their required hours via telepractice. These COVID-19 accommodations were extended multiple times with the last extension lasting through December 31, 2022, for students who ***began*** their fellowships before that date.

On April 13, 2024, Plaintiff submitted a second Certification Application[2] indicating that his mentor was Rachel Johannes. *Id.* At that time, Ms. Johannes verified that Plaintiff's CF experience started in October 2022 and that Plaintiff had COVID-19 allowances as justification for the use of more than 25% telepractice and 100% telesupervision during the CF experience. *Id.* Based on this misinformation, Plaintiff was awarded his Certificate of Clinical Competence on June 25, 2024. *Id.* at PageID. 417.

Just one day later, on June 26, 2024, Ms. Johannes sent Todd Philbrick, ASHA Chief Certification Officer, a clarifying email noting that while Plaintiff started his CF experience on October 17, 2022, his contract was cancelled before Plaintiff could start seeing students. *Id.* In an email on July 1, 2024, Ms. Johannes indicated that she was ***not*** Plaintiff's mentor in October 2022 but clarified that she ***started mentoring Plaintiff in early February of 2023.*** *Id.*

On October 2, 2024, Laura Verdun filed a Third-Party Complaint with the ASHA Board of Ethics. ***Exhibit A.*** The Complaint alleged that Plaintiff submitted a Certification Application on April 13, 2024, and that Plaintiff knowingly submitted false/incorrect data on the Certification Application to gain

---

[2] On this second Application, Plaintiff did not include his CF experience with Ms. Stevenson as a mentor and instead, included the October 2022 start date under the mentorship of Ms. Johannes.

certification. *Id.*

On June 26, 2025, an Initial Determination by Defendant's Board of Ethics found that Plaintiff had violated *Principle II*[3], *Principle of Ethics II, Rule B*[4], *Principle IV*[5], *and Principle IV, Rules E*[6], *and G*[7] *of the ASHA Code of Ethics.* ***Exhibit B.*** The Board of Ethics proposed a sanction of Revocation of Plaintiff's Membership and Certification for six months. *Id.* Plaintiff, with the assistance of counsel, requested a Further Consideration Hearing ("FCH") of the Initial Determination by the Board of Ethics.

At Defendant's October 24, 2025, Further Consideration Hearing, the Board of Ethics affirmed the sanction from the Initial Determination. ***See ECF***

---

[3] Principle of Ethics II: Individuals shall honor their responsibility to achieve and maintain the highest level of professional competence and performance.

[4] Principle of Ethics II, Rule B: ASHA members who do not hold the Certificate of Clinical Competence may not engage in the provision of clinical services; however, individuals who are engaged in the certification application process may provide clinical services consistent with current local and state laws and regulations and with ASHA certification requirements.

[5] Principle of Ethics IV: Individuals shall uphold the dignity and autonomy of the professions, maintain collaborative and harmonious interprofessional and intraprofessional relationships, and accept the professions' self-imposed standards.

[6] Principle of Ethics IV, Rule E: Individuals shall not engage in dishonesty, negligence, deceit or misrepresentation.

[7] Principle of Ethics IV, Rule G: Applications for certification or membership, and individuals making disclosures, shall not make false statements and shall complete all application and disclosure materials honestly and without omission.

***No. 38-2,*** **PageID. 421-422.** While Plaintiff requested an appeal of the Decision after Further Consideration, on January 20, 2026, that request was denied because the appeal request failed to meet the requirements set forth in Section III.1.2 of the *Practices and Procedures of the Board of Ethics (2024).* On that same date, the Board of Ethics issued a final decision affirming the revocation of Plaintiff's CCC for a period of six months following the decision. ***See ECF No. 45-1,*** **PageID.505.** The final decision noted at the completion of the revocation period, Plaintiff could petition the Board of Ethics for approval to seek reinstatement of his CCC. *Id.*

**B. ADA Accommodations**

On June 30, 2025, prior to his FCH, Plaintiff sent a letter to Defendant informing Defendant of his PTSD disability. ***See ECF No. 38-3,*** **PageID. 424.** Plaintiff indicated in the correspondence that his Complex PTSD significantly impaired his ability to fully engage in the ethics complaint and appeal process. *Id.* Plaintiff requested accommodations in connection with the ethics process, which included: modifications to communication methods, extensions or modifications of deadlines, and any additional assistance necessary to ensure a fair and accessible process. *Id.* In addition, Plaintiff requested:

1) A detailed explanation and all supporting documentation used to form the teletherapy hours allegation.
2) An explanation and documentation addressing why ASHA

> records reflect a CF start date of 2023, when I have already submitted clear, verifiable evidence demonstrating my CF began in 2022.

*Id.*

On July 17, 2025, Defendant emailed Plaintiff and his counsel indicating that it had received a letter from Plaintiff requesting reasonable accommodations due to his Complex PTSD. ***See ECF No. 38-4,*** **PageID. 427-428.** At that time, Defendant requested Plaintiff to provide documentation from a qualified healthcare provider that:

1) Confirmed the existence of a disability (as defined under the ADA);
2) Described the functional limitations relevant to Plaintiff's participation in the ethics complaint review process; and
3) Recommended accommodations that would provide Plaintiff with equal access in the complaint review process.

*Id.* Defendant requested that Plaintiff submit that documentation by July 31, 2025. *Id.* In that same email, Defendant notified Plaintiff and his counsel that to ensure that Plaintiff had appropriate time to request a Further Consideration Hearing, Defendant was extending the FCH request deadline to August 11, 2025. *Id.*

On July 29, 2025, Defendant emailed Plaintiff and his counsel to indicate that it had received a letter from Plaintiff which stated that Plaintiff would not be able to obtain the information from his healthcare provider until August 1, 2025. ***See ECF No. 38-5,*** **PageID. 430.** Defendant agreed to extend the deadline

for Plaintiff to provide the documentation requested to August 6, 2025, and informed Plaintiff and his counsel that the delay would not prejudice his right to a Further Consideration Hearing. *Id.*

On July 31, 2025, Plaintiff emailed Defendant a letter signed by Stephen J. Hickner, MD, stating that Dr. Hickner recommended the following reasonable accommodations:

- Extended deadlines
- Written only accommodations
- Clear, plain-language instructions
- Recognition of disability-related challengers
- Flexibility in submission formats[8]

***See ECF No. 38-6,*** **PageID.434.** On August 5, 2025, Defendant emailed Plaintiff and his counsel to confirm that it received the medical documentation sent from Plaintiff via US Mail. On August 18, 2025, Defendant emailed Plaintiff and his counsel to ***approve*** Plaintiff's accommodation request. ***See ECF No. 38-7,*** **PageID. 438-439.** Per Plaintiff's request, Defendant confirmed that all FCH communications would be conducted in writing. *Id.* Defendant invited Plaintiff to provide a written FCH statement in place of an in-person presentation and attached the Board of Ethics' questions for Plaintiff to complete. *Id.* Plaintiff was

[8] There was no medical documentation from Plaintiff's healthcare provider to support his additional "requests" of documentation and explanation detailing Defendant's decision.

given ***60 days*** to submit the written FCH statement and the responses to the Board of Ethics' questions. *Id.*

### C. Plaintiff's "Complaint" Against Amanda Gallagher

Despite Plaintiff's voluntary email engagement with Defendant related to his CF start date, on October 5, 2023, via Defendant's "ActionCenter" website, Plaintiff submitted a "Complaint" for "unwanted communication." **Exhibit C.** Plaintiff indicated that he "kept receiving emails from an Amanda Gallagher. She keeps telling me that my CFY will not count." The remainder of Plaintiff's "comments," were essentially an argument as to why his CF experience started in 2022 and that he could prove his CF start date in 2022.

## III. STANDARD OF REVIEW

A motion for summary judgment under Federal Rule of Civil Procedure 56 shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "[F]acts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56(c)). "Where the record taken as a whole could

not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986). The moving party may discharge its burden by showing "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

## IV. ARGUMENT

### A. Defendant Fully Engaged in the Interactive Process and Provided Reasonable Accommodations. Thus, Count I and II of Plaintiff's Complaint Alleging Violations of the ADA and Section 504 Fail as a Matter of Law.

Under either the ADA or the Rehabilitation Act, a plaintiff can state a claim for discrimination based upon his employer's failure to accommodate his handicap by alleging facts showing (1) that the employer is subject to the statute under which the claim is brought, (2) that he is an individual with a disability within the meaning of the statute in question, (3) that, with or without reasonable accommodation, he could perform the essential functions of the job, and (4) that the employer had notice of the plaintiff's disability ***and failed to provide such accommodation***. *Lyons v. Legal Aid Soc.,* 68 F.3d 1512, 1515 (2d Cir. 1995). In order to establish a claim of failure to accommodate, Plaintiff must present evidence that he requested and was denied a reasonable accommodation. *Tubbs v. Formica Corp.,* 107 Fed.Appx. 485, 488 (6th Cir.

2004); *see also Jakubowski v. Christ Hosp., Inc.,* 627 F.3d 195, 202 (6th Cir. 2010). "[O]nce an employee requests an accommodation, the employer has a duty to engage in an interactive process." *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 857 (6th Cir. 2018).

The Department of Labor's regulations implementing the ADA state that, "[t]o determine the appropriate reasonable accommodation [for a given employee,] it may be necessary for the [employer] to initiate an informal, interactive process with the [employee]." 29 C.F.R. § 1630.2(o)(3). The purpose of that process is to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Ibid.* The Sixth Circuit has explained that "[e]ven though the interactive process is not described in the statute's text, the interactive process is mandatory, and both parties have a duty to participate in good faith." *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007) (footnote and citations omitted). "The refusal to give [an employee a] specific requested accommodation does not necessarily amount to bad faith, so long as the employer makes an earnest attempt to discuss other potential reasonable accommodations." *E.E.O.C. v. Kohl's Dep't Stores, Inc.*, 774 F.3d 127, 133 (1st Cir.2014); *see also* 29 C.F.R. § 1630, App. § 1630.9 (explaining that an employer may choose between reasonable accommodations). Accordingly, "[t]he

interactive process requires communication and good-faith exploration of possible accommodations." *Kleiber v. Honda of Am. Mfg., Inc.,* 485 F.3d 862, 871 (6th Cir.2007).

Neither the ADA nor the Rehabilitation Act provides a closed-end definition of "reasonable accommodation." *Id.* The ADA sets out a nonexclusive list of different methods of accommodation encompassed by that term, stating that

> [t]he term "reasonable accommodation" *may include*—
>
> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9) (emphasis added). The Rehabilitation Act does not include a definition of reasonable accommodation, but the regulations promulgated under that Act use virtually the same language as § 12111(9) of the ADA. *See* 45 C.F.R. § 84.12. The term is to be interpreted in the same way with respect to both the ADA and the Rehabilitation Act. *See, e.g., Staron v. McDonald's Corp.,* 51 F.3d 353, 355–56 (2d Cir.1995) (applying Rehabilitation Act analysis to ADA

claim).

The evidence unequivocally establishes that not only did Defendant engage in the interactive process with Plaintiff, but also that Defendant ***granted Plaintiff's requested accommodations.*** Indeed, after receiving a correspondence from Plaintiff on June 30, 2025, regarding his need for accommodations, Defendant (while engaging in the interactive process) communicated to Plaintiff that it needed additional information including a healthcare provider diagnosis, the functional limitations that Plaintiff experienced, and recommended accommodations that would provide Plaintiff equal access to the appeal process. Defendant also extended the FCH response deadline at that time to allow Plaintiff time to provide the requested information. When Plaintiff responded that he required additional time to provide the requested medical information, Defendant again agreed to extend the deadline, allowing Plaintiff additional time to provide the requested medical information.

After Defendant received a letter from Plaintiff's medical provider listing the requested accommodations, Defendant (shortly thereafter) ***granted all of the accommodations listed by Plaintiff's treating provider,*** including written only proceedings and extended deadlines.

The evidence establishes that upon Plaintiff requesting accommodations, the Defendant engaged in an interactive process with Plaintiff, including extending deadlines, requesting additional information when necessary, and advising Plaintiff of updates. Ultimately, Defendant (consistent with Plaintiff's medical provider's recommendation) granted all of Plaintiff's requested accommodations. Accordingly, Count I and II of Plaintiff's Complaint alleging violations of the ADA and Section 504 fail as a matter of law.

**i. Plaintiff's Request for Additional "Accommodations" Fails as These Requests do not Constitute "Accommodations" Under the ADA and Section 504.**

Defendant anticipates that Plaintiff will allege that it failed to grant "all of his" requested accommodations, specifically pointing to his June 30, 2025, correspondence in which he requested:

> 1) A detailed explanation and all supporting documentation used to form the teletherapy hours allegation.
>
> 2) An explanation and documentation addressing why ASHA records reflect a CF start date of 2023, when I have already submitted clear, verifiable evidence demonstrating my CF began in 2022.

However, these "requests" do not constitute "reasonable accommodations" under the Statute. Specifically, 42 USCA § 12111(9) defines reasonable accommodation to include:

> (A) Making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) Job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

The ADA serves as a mechanism to "level the playing field" so that individuals living with disabilities are treated fairly and afforded equal opportunity within the workplace. *Coffman v. Robert J. Young Co., Inc.,* 871 F.Supp.2d 703, 713 (M.D. Tenn. 2012). The ADA does not obligate an employer to provide a disabled employee every accommodation on his wish list. *Schmidt v. Methodist Hosp. of Indiana, Inc.,* 89 F.3d 342, 344-45 (7th Cir. 1996). In *Siefken v. Village of Arlington Heights,* 65 F.3d 664 (7th Cir. 1995), the Seventh Circuit held that giving a discharged employee a "second chance" was not an "accommodation" under the ADA. In *Siefken,* the Seventh Circuit opined that a terminated employee's request for an employer to give him "another chance" to change his monitoring technique related to his medical condition to sufficiently allow him to perform the duties of a patrol officer did not constitute an "accommodation" under the ADA. *Id.* at 666. Circuit courts which have consistently explained that a 'second chance' or overlooking misconduct that otherwise warrants termination is not a "reasonable accommodation."

See *e.g., Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 465 (4th Cir.2012) ("[T]he law does not require [defendant] to ignore misconduct that has occurred because the student subsequently asserts it was the result of a disability."); *Jones v. Nationwide Life Ins. Co.,* 696 F.3d 78, 90 (1st Cir.2012) ("When an employee requests an accommodation for the first time only after it becomes clear that an adverse employment action is imminent, such a request can be 'too little, too late.' "); *Macy v. Hopkins County Sch. Bd. of Educ.,* 484 F.3d 357, 366 (6th Cir.2007) (assuming that verbal outbursts stated to be the reason for her termination were symptomatic behaviors of her disability, yet finding "[T]his court has repeatedly stated that an employer may legitimately fire an employee for conduct, even conduct that occurs as a result of a disability, if that conduct disqualifies the employee from his or her job.") *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.,* 681 F.3d 312, 315–16 (6th Cir.2012) (en banc); *Hamilton v. Sw. Bell Tel. Co.,* 136 F.3d 1047, 1052 (5th Cir.1998) ("[T]he ADA does not insulate emotional or violent outbursts blamed on an impairment.... [Plaintiff] cannot hide behind the ADA and avoid accountability for his actions."); *Palmer v. Circuit Court of Cook Cnty., Ill.,* 117 F.3d 351, 352 (7th Cir.1997) ("[I]f an employer fires an employee because of the employee's unacceptable behavior, the fact that that behavior was precipitated by a mental illness does not present an issue under the

Americans with Disabilities Act."). The ADA does not require an employer to excuse an employee's previous misconduct, even if it was precipitated by their disability.

Plaintiff's "requests" for documentary evidence falls short of establishing an ADA violation as 1) it does not constitute a "reasonable accommodation," and 2) lacks any medical support. As noted above, Plaintiff's treating physician detailed the specific accommodations that Plaintiff required to fairly participate in the Ethics proceedings, none of which included a "document" and "explanation" request. Even if Plaintiff's medical provider ***had*** included these specific requests as "accommodations," they would still fall short of establishing an ADA violation as these "requests" do not constitute reasonable accommodations. Indeed, Plaintiff's additional "requests" are akin to discovery requests in litigation and are not consistent with "leveling the playing field," based on Plaintiff's disability. These "requests" would fundamentally alter the Board of Ethics review process by granting Plaintiff access to view documents ***that would not be available to any other respondent.*** Accordingly, as Defendant granted all "reasonable accommodations" as defined by the ADA, Plaintiff's allegation that Defendant discriminated him by failing to grant all reasonable accommodations is unfounded.

### ii. Plaintiff Cannot Establish that his Disability was a "But For" Cause in Revoking his CCC.

Under claims brought alleging discrimination under the ADA or the Rehabilitation Act, Plaintiff must show that the disability discrimination was a "but for" cause of the adverse employment action. *Bledsoe v. Tennessee Valley Authority Board of Directors,* 42 F.4th 568, 580 (6th Cir. 2022). Here, Plaintiff's disability had absolutely nothing to do with Defendant's decision to revoke his CCC. The decision to revoke Plaintiff's CCC was exclusively based on Plaintiff's inaccurate representation regarding his CF start date and his failure to meet the certification requirements. Given that Plaintiff did not complete the necessary CF prerequisites for obtaining a CCC and knowingly provided the Defendant with incorrect information on his Certification Application, Defendant rightfully revoked his certification. There is not a scintilla of evidence to indicate that Plaintiff's disability[9] had any influence at all on Defendant's decision. Accordingly, Counts I and II of Plaintiff's Complaint fail as a matter of law.

---

[9] In fact, the Board of Ethics had already made an Initial Determination to revoke Plaintiff's Certification before he informed the Board of Ethics (or ASHA) of his disability.

### B. Plaintiff's Denial of Fair Procedure Count Fails as a Matter of Law.

In *Thomas M. Cooley Law School v. American Bar Ass'n,* 459 F.3d 705, 712 (6th Cir. 2006), the Sixth Circuit found that "the standard of review that has developed in the common law" applies to accreditation decisions; that is, a court reviews "only whether the decision of an accrediting agency such as the ABA is arbitrary and unreasonable or an abuse of discretion and whether the decision is based on substantial evidence." *Id.* at 712–13 (citations omitted). Although recognizing "[t]his standard of review resembles the review applied under the Act," the Sixth Circuit "emphasize[d], however, that while principles of federal administrative law provide guidance in our analysis, judicial review of accreditation decisions is more limited than review under the Act ." *Id.* at 713. Because accrediting agencies are private organizations, "judicial review is limited to protecting the public interest," and "great deference should be afforded the substantive rules of these bodies and courts should focus on whether an accrediting agency such as the ABA followed a fair procedure in reaching its conclusions." *Id.* Courts therefore "are not free to conduct a *de novo* review or substitute [their] judgment for that of the ABA or its Council." *Id.* "Rather, in analyzing whether the ABA abused its discretion or reached a decision that was arbitrary or unreasonable, [courts] focus on whether the agency 'conform[ed] its actions to fundamental principles of

fairness.'" *Id.*

Other federal courts have similarly held that a review of decisions made by private organizations would also be limited to the record, especially since review of decisions made by private accrediting or certifying organizations is even more limited than review of decisions made by public agencies. *See Soriano v. Neshoba Co. General Hospital Bd. of Trustees,* 486 F. App'x 444, 446 (5th Cir.2012) (applying arbitrary and capricious standard to due process claim and appearing to limit review to the record); *Austin v. Am. Ass'n of Neurological Surgeons,* 120 F.Supp.2d 1151, 1152 (N.D.Ill.2000) (noting that review of the due process claim focused only on whether the association's procedures conformed to fundamental principles of fairness, a standard less strict than judicial standards of due process); *Peoria Sch. of Bus., Inc. v. Accrediting Council for Continuing Edu. and Training,* 805 F.Supp. 579, 583–84 (N.D.Ill.1992) (applying arbitrary and capricious standard and looking only as to whether the council's internal rules provided a fair and impartial procedure for the plaintiff and whether the council followed its own procedures); *Lincoln Mem'l Univ. Duncan Sch. of Law v. Am. Bar Ass'n,* No. 3:11–CV–608, 2012 WL 137851, at *9 (E.D.Tenn. Jan.18, 2012) (applying arbitrary and capricious standard to common law due process claim and noting that review of a private organization was "more limited" than review under the administrative

procedures act such that courts should focus on whether the private organization followed a fair procedure with the plaintiff and whether the organization conformed its actions to fundamental principles of fairness and should not engage in de novo review).

There is no evidence to substantiate Plaintiff's allegation that he was denied a "fair procedure." It should be noted at the outset that Plaintiff was represented by counsel throughout the entirety of the Complaint, Initial Determination and the Further Consideration Hearing. Throughout the entirety of the process related to the revocation of Plaintiff's CCC, Defendant extended deadlines, accommodated Plaintiff's written only accommodation requests and provided consistent updates to Plaintiff and his counsel.

Following the filing of the Complaint by Ms. Verdun, Defendant engaged in a lengthy review process. Plaintiff, was provided with a copy of the Complaint and with the assistance of counsel, responded to the Complaint on March 3, 2025. After the Initial Determination Hearing, taking into account Plaintiff's accommodation request, Defendant not only granted Plaintiff's written only accommodation request, but also extended the deadline to submit his written FCH statement. In addition, Defendant provided Plaintiff with a written questionnaire, listing the specific questions that Defendant's Board of Ethics would have raised at a hearing. Plaintiff, with the assistance of counsel,

submitted his written FCH statement. Following the November 4, 2025, Decision after Further Consideration from Defendant's Board of Ethics, Defendant provided Plaintiff with an additional appeal request.

The evidence unequivocally establishes that Defendant provided a fair procedure for Plaintiff to contest the revocation of his CCC. He was provided the opportunity to contest the Complaint, seek Further Consideration, and appeal the Board's Decision after Further Consideration. Its decision to revoke Plaintiff's CCC was based on supporting evidence that unequivocally established Plaintiff did not meet the necessary prerequisites for said certification and provided false information on his certification application. Accordingly, Defendant's decision was not arbitrary and capricious and Count III of Plaintiff's Complaint fails as a matter of law.

### C. Defendant's Revocation of Plaintiff's Certificate of Clinical Competence was Solely Related to his Failure to Complete the Necessary Certification Requirements and Submission of False Statements, thus, Plaintiff's Retaliation Count Must Fail.

In order to establish a prima facie case of retaliation under the ADA[10], it is the plaintiff's burden to demonstrate that: (1) he participated in a protected

[10] The Sixth Circuit has recently held that § 504 of the Rehabilitation Act does not provide a private cause of action for retaliation. *Smith v. Michigan Department of Corrections,* 159 F.4th 1067, 1082 (6th Cir. 2025).

activity, (2) his employer knew of the protected activity, (3) he suffered an adverse employment decision, and (4) there was a causal connection between the protected activity and the adverse employment decision. *MacDonald v. UPS,* 430 Fed.Appx. 453, 463 (6th Cir.2011); *Clark v. City of Dublin, Ohio,* 178 Fed.Appx. 522, 525 (6th Cir.2006). Once a prima facie case is established, the burden shifts to the defendant to show there was a legitimate, non-discriminatory reason for the adverse employment action. *Choulagh v. Holder,* 528 Fed.Appx. 432, 437 (6th Cir. 2013). If such a reason is offered, the burden shifts back to the plaintiff to show that the reason was pretextual. *Id.* A plaintiff can show pretext by demonstrating that the employer's proffered reason (1) had no basis in fact, (2) did not actually motivate the employer's decision, or (3) was insufficient to motivate the employer's action. *Harris v. Metro. Gov't of Nashville & Davidson Cnty.,* 594 F.3d 476, 486 (6th Cir. 2010) (citation omitted).

Plaintiff's CCC was revoked based on his failure to meet the 2023 certification requirements and his intentional misrepresentations on his second Certification Application. Indeed, as fully detailed above, Plaintiff was mistakenly granted a CCC based on inaccurate information provided by Plaintiff to Defendant related to Plaintiff's CF experience. Specifically, Plaintiff reported that his CF experience began before January 1, 2023, which improperly granted

him the COVID-19 telepractice allowances for his CF experience. However, his mentor, Ms. Johannes subsequently clarified that Plaintiff's contract was cancelled in 2022, and he did not actually see clients during the 2022 calendar year. Instead, Ms. Johannes' mentorship of Plaintiff (and his CF experience) began in February 2023, thus subjecting him to the 2023 certification requirements and making him ineligible for the COVID-19 telepractice allowances. There is no dispute, and Plaintiff cannot dispute that he did not meet the 2023 certification requirements, including the requisite direct client contact hours. Specifically, more than 25% of Plaintiff's direct client contact hours were via telepractice, thus, these hours did not meet the 2023 certification requirements.

Plaintiff's "form submission" of a complaint against an ASHA staff member in October of 2023[11] and his request of ADA accommodations had no

---

[11] Plaintiff cannot rely on the "temporal proximity" of the filing of the harassment claim and the revocation of his CCC as evidence of retaliation. Indeed, the filing of the harassment complaint occurred in October of 2023, Plaintiff's CCC was not revoked until a Final Decision in January of 2026. This length of period undermines any causal link between the filing of the harassment complaint and the revocation of Plaintiff's CCC. Indeed, the Sixth Circuit has consistently held that temporal proximity may provide a causal link between the protected activity and adverse employment action when the temporal proximity is much shorter. *See McNett v. Hardin Cmty. Fed. Credit Union,* 118 Fed.Appx. 960, 965 (6th Cir.2004) (finding causation when "only 13 days" separated protected activity from adverse action, reasoning that an "employer's knowledge of the protected activity coupled with an adverse action

causal connection to the revocation of his CCC. Instead, the revocation of Plaintiff's CCC was based solely on the inaccurate information provided by Plaintiff on his Certification Application and his failure to complete the necessary requirements to obtain a CCC. Accordingly, Plaintiff's Retaliation Count should be dismissed as he cannot establish a prima facie case of retaliation as a matter of law.

## V. CONCLUSION

Plaintiff's Complaint should be dismissed in its entirety. Plaintiff's ADA and Section 504 claims must fail as Defendant engaged in the interactive process and granted Plaintiff his requested accommodations. Plaintiff has no evidence to establish that Defendant discriminated against him based on his disability. Plaintiff's retaliation claim also fails as there is no evidence that Defendant retaliated against Plaintiff based on his submission of a statement to the ActionCenter against an ASHA staff member or his request for ADA accommodations. Plaintiff's Denial of Fair Procedure Count must also be

---

occurring close in time can create an inference of causation where the particular circumstances strengthen the inference of causation"); *Shefferly v. Health Alliance Plan of Michigan,* 94 Fed.Appx. 275, 285 (6th Cir.2004) (stating that "the passage of less than three weeks between [the employer's] receipt of the charges and the adverse actions gives rise to an inference of discrimination" and "[t]herefore, in this case, [the plaintiff] has established a prima facie case of retaliation").

dismissed as it fails as a matter of law as there is no evidence that Defendant engaged in an arbitrary process.

PLUNKETT COONEY

Dated: May 29, 2026 By: */s/ Joshua J. Trombley*

Joshua J. Trombley (P78858)
Attorneys for Defendant
333 Bridge Street, NW, Suite 530
Grand Rapids, MI 49504
(616) 752-4617
jtrombley@plunkettcooney.com

**CERTIFICATE OF CONFERRAL (LCivR 7.1(d)(i)**

On May 28, 2026, at 12:45 p.m., Defense counsel, Joshua Trombley, sent a copy of Defendant's proposed Motion for Summary Disposition and Brief in Support to Plaintiff via email at wrightiir@yahoo.com requesting concurrence in the Motion. Defense counsel requested a response by 4:00 p.m. on May 29, 2026. As of this filing, Plaintiff has not provided concurrence.

**CERTIFICATE OF COMPLIANCE (LCivR 7.2(b)(ii)**

I, Joshua J. Trombley, certify that the accompanying Motion for Summary Disposition and Brief in Support complies with the word count limitations of this Court.

I further certify that this document, excluding the parts of the document exempted by LCivR 7.2(b)(i), contains 6359 words.

This certification is made in reliance on the word-count function of the word processing system Microsoft Word, used to prepare this document.