**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RODERICK WRIGHT,

Plaintiff,

AMERICAN SPEECH-LANGUAGE-HEARING ASSOCIATION,

Defendant.

Case No. 1:25-cv-1367
Hon. Paul L. Maloney

---

**DEFENDANT'S RESPONSE TO PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON COUNT III**

---

## I. INTRODUCTION

Plaintiff's Motion for Summary Judgment on Count III should be denied. Plaintiff asks this Court to conduct a *de novo* factual review of ASHA's ethics proceedings — to reweigh evidence, substitute its judgment for that of the Board of Ethics, and second-guess determinations made through a multi-layered, procedurally fair review process. That is not the function of this Court. The Sixth Circuit has repeatedly held that judicial review of private professional organizations is limited to determining whether the decision was arbitrary and unreasonable, or an abuse of discretion, and whether it was based on

substantial evidence. *Thomas M. Cooley Law School v. American Bar Ass'n*, 459 F.3d 705, 712–13 (6th Cir. 2006). The review is "more limited" than review under the Administrative Procedures Act. *Id.* at 713.

Plaintiff's 35-page brief is an effort to relitigate the merits of his certification dispute by marshaling evidence obtained in discovery — documents not before the Board — and asking this Court to conduct the very independent factual investigation that controlling law prohibits. Plaintiff cannot establish that Defendant's proceedings were arbitrary or unreasonable or that its decision lacked substantial evidence. His motion should be denied in its entirety.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the record shows no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The movant bears the burden of demonstrating entitlement to judgment. *White v. Baxter Healthcare Corp.,* 533 F.3d 381, 389-90 (6th Cir. 2008).

The governing standard for Count III is well-established. The Sixth Circuit holds that courts review the decisions of private professional accrediting and certifying organizations to determine "only whether the decision . . . is arbitrary

and unreasonable or an abuse of discretion and whether the decision is based on substantial evidence." *Cooley*, 459 F.3d at 712–13. This standard is "more limited" than review under the APA. *Id.* at 713. Courts are "not free to conduct a de novo review or substitute [their] judgment" for that of the professional body. *Id.* "Great deference should be afforded, the substantive rules of these bodies and courts should focus on whether an accrediting agency . . . followed a fair procedure in reaching its conclusions." *Id.* "There is probably no area of the law where deference is as necessary as it is when a court reviews the decision of an accreditation association." *Transport Careers, Inc. v. National Home Study Council,* 646 F.Supp. 1474, 1482 (N.D. Ind. 1986).

Review is confined to the record before the decision-making body. *See Found. for Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 39 F. Supp. 2d 889, 894 (W.D. Mich. 1998), *aff'd*, 244 F.3d 521 (6th Cir. 2001) ("[C]ourts have reviewed denials of accreditation similarly to decisions of administrative agencies, limiting review to the record before the accrediting body at the time of its decision.").

## III. ARGUMENT

### A. PLAINTIFF SEEKS IMPERMISSIBLE DE NOVO REVIEW.

Plaintiff's brief is premised on an impermissible litigation strategy: assembling evidence obtained through federal discovery — internal emails,

metadata, drafting histories, and staff communications — none of which was part of the record before the Board of Ethics, and asking this Court to reweigh the Board's decision on that expanded record.

This approach is squarely foreclosed by controlling authority. The Sixth Circuit and courts in this district have consistently held that review of a private professional body's decision is confined to the record before that body. *See Cooley*, 459 F.3d at 712–13; *Foundation*, 39 F. Supp. 2d at 894. Courts "are not free to conduct a de novo review or substitute their judgment for the professional judgment of the [professionals] involved in the accreditation process." *Wilfred Academy of Hair and Beauty Culture, Houston, Tex. v. Southern Ass'n of Colleges and Schools*, 957 F.2d 210, 214 (5th Cir. 1992).

Plaintiff's reliance on *Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997), is misplaced. That decision addressed supplementation of the record in review of a *federal agency* action governed by the APA. *Cooley* expressly distinguished review of private organizations from APA review, holding that the former is "more limited." 459 F.3d at 713. The exceptions to the record-limitation rule that apply to federal agencies do not govern review of private professional organizations.

Plaintiff offers no authority — because none exists — for the proposition that a court reviewing a private professional organization's disciplinary

decision may go behind the administrative record and conduct a full-blown factual investigation using litigation discovery materials.

### B. Defendant Is Entitled to Deference Regardless of Whether the Case Involves Institutional Accreditation or Individual Certification.

Plaintiff devotes substantial briefing to arguing that the deference owed to accrediting agencies in institutional-accreditation cases does not apply here because this case involves an individual's credential. This argument fails for several reasons.

First, the Sixth Circuit in *Cooley* articulated the governing standard in broad terms applicable to "quasi-public professional organizations and accrediting agencies." 459 F.3d at 711. The court did not cabin its holding to institutional accreditation.

Second, Plaintiff's own authority defeats his argument. *Foundation for Interior Design Education Research v. Savannah College of Art & Design*, 244 F.3d 521 (6th Cir. 2001), articulated the very standard Plaintiff acknowledges governs here: courts must "determine whether the procedure was fair and whether arbitrary factors were used to determine the result." *Id.* at 528–29. That standard does not require de novo factual review; it requires the Court to assess whether the association followed a fair procedure and whether its decision rests on substantial evidence.

Third, Plaintiff's citation to *Dietz v. American Dental Ass'n*, 479 F. Supp. 554 (E.D. Mich. 1979), actually supports Defendant's position. *Dietz* requires "notice and an opportunity to be heard" — which Plaintiff received in full. Plaintiff was provided with the complaint, responded through counsel, received a written-only hearing (per his ADA request), submitted written materials, and was afforded multiple levels of appellate review. That Plaintiff disagrees with the outcome does not establish a procedural deficiency.

Fourth, to the extent Plaintiff invokes *Lieberman v. American Osteopathic Ass'n*, 620 F. App'x 470 (6th Cir. 2015), that decision cites *Dietz* with approval and does not establish a lesser deference standard. The physician there lost because the organization reasonably applied its own rules. The same is true here.

### C. DEFENDANT'S DECISION WAS BASED ON SUBSTANTIAL EVIDENCE AND WAS NOT ARBITRARY.

Plaintiff's CF start date was central to the Board's determination. Substantial evidence supported the Board's finding that Plaintiff's fellowship did not begin before January 1, 2023, including:

1. **Plaintiff's own withdrawal**: Plaintiff withdrew his initial certification application in December 2023 after being informed his time at Stepping Stones did not meet certification requirements.

2. **Mentor confirmation**: Marlaina Stevenson, Plaintiff's mentor at Stepping Stones, indicated that Plaintiff did not spend 80% of his work in

direct clinical contact, that she could not rate his CF experience because she did not observe or rate any of his skills, and that it was not possible for him to meet the minimum supervisory requirements.

3. **Lack of direct client contact**: During his time at Stepping Stones, Plaintiff only received non-client training and provided no direct client care.

4. **Subsequent misrepresentation**: On his second application (April 13, 2024), Plaintiff omitted his CF experience under Stevenson and instead listed an October 2022 start date under the mentorship of Rachel Johannes — who later clarified that her mentorship did not begin until February 2023.

5. **Johannes clarification**: One day after Plaintiff was awarded his CCC, Ms. Johannes sent a clarifying email noting that while Plaintiff started his CF experience on October 17, 2022, his contract was cancelled before he could start seeing students, and that she did not begin mentoring him until early February 2023.

The Board considered this evidence and reached its determination through multiple levels of review: Initial Consideration (7–0), Further Consideration (13–0), and an appeal opportunity. A finding supported by this evidence is not "arbitrary."

Plaintiff's argument reduces to a disagreement with how the Board weighed the evidence. But under the governing standard, the Court does not reweigh evidence or substitute its judgment. The question is whether *any* substantial evidence supports the finding, and it plainly does.

### D. DEFENDANT FOLLOWED FAIR PROCEDURES THROUGHOUT.

Plaintiff's procedural complaints are belied by the record:

1. **Notice**: Plaintiff received the complaint, responded through counsel, and was informed of the findings and proposed sanction at each stage.

2. **Opportunity to be heard**: Plaintiff was afforded a written Further Consideration Hearing (consistent with his own ADA accommodation request), submitted a written statement through counsel, and answered the Board's written questions.

3. **Multiple levels of review**: Plaintiff received an Initial Determination, a Further Consideration Hearing, a Decision After Further Consideration, and an opportunity to appeal to the Ethics Appeal Panel.

4. **Accommodation of disability**: Defendant granted Plaintiff's requested accommodations — written-only proceedings, extended deadlines, and modified format — and afforded him every procedural opportunity its rules provide.

5. **Exhaustion**: Plaintiff acknowledges he exhausted internal remedies. The fact that he did so demonstrates that procedures were available and utilized.

Plaintiff's complaint that the "rationale" was not delivered in a specific form, or that internal drafting preceded the vote, does not establish procedural unfairness. Organizations routinely prepare draft findings before hearings; this is standard practice, not prejudgment. The Board voted twice — unanimously both times — after considering all materials, including Plaintiff's submissions through counsel.

Plaintiff also inaccurately portrays Ms. Meyer's role in "pre-judging" the case. *See* **PageID.2572.** Plaintiff's mischaracterizes the purpose Ms. Meyer's August 6, 2024 "ethic consult." The purpose of Ms. Meyer's August 6, 2024, consult was to determine if Plaintiff's case should go before the Board of Ethics or the Council for Clinical Certification. **Exhibit A – Meyer Declaration ¶ 7.** Ms. Meyer simply advised certification leadership to be consistent and follow past precedent and that keeping a person certified that did not meet the certification requirements was problematic. *Id.* ¶8. Further, Plaintiff continues to allege and "assumes" that Ms. Meyer had any decision-making authority, which is inaccurate. *Id.* ¶ 9. The Board of Ethics, which is comprised of Plaintiff's peers, is the ultimate "judge" or decision maker on any potential sanctions. *Id.* ¶ 10.

### E. PLAINTIFF CANNOT ESTABLISH PREJUDICE.

Even assuming arguendo that any procedural irregularity existed, Plaintiff cannot establish prejudice. Under *Cooley*, a procedural complaint fails unless the party shows "that it would not have been sanctioned had these alleged errors not occurred." 459 F.3d at 716.

Plaintiff's CF fellowship did not begin before January 1, 2023, as established by his own mentor's statements, his withdrawal of his first application, and the undisputed fact that he provided no direct client care during his time at Stepping Stones. No procedural adjustment would change the

underlying substantive reality that Plaintiff did not meet the 2022 eligibility requirements for COVID-19 telepractice allowances.

The Board's findings rest on facts Plaintiff cannot dispute: he performed 100% telepractice during his fellowship, he needed a pre-2023 start date to qualify for COVID-19 allowances permitting that level of telepractice, and his only basis for claiming a 2022 start date[1] was a period of non-client training that his own mentor confirmed did not constitute a clinical fellowship experience. While Plaintiff attempts to minimize this matter as a simple "calendar date," ("The subject matter here is a calendar date, **PageID.2578**), this is inaccurate. The subject matter goes beyond just a calendar date: the subject matter is knowingly falsifying documentation related to his mentorship.

Further, Plaintiff's allegation that the "rationale that actually decided the case was never delivered to him in writing and his objection that the Board had been given a partial document" is also false. The decision letter (i.e. the rationale) was provided to Plaintiff. **Exhibit A – Meyer Declaration ¶14.** Further, all documents and written arguments Plaintiff provided were given to the Board of Ethics for their review. *Id.* ¶ **15.**

[1] Plaintiff continues to allege that Defendant's own Portal Entry indicates a Start Date of "10/17/22." **PageID.2576.** However, this is inaccurate. That "start date," is not a date entered by ASHA staff. This is a date ***pulled from the report that the Applicant, i.e. Plaintiff, submits.***

Further, Plaintiff's allegation that a "sanction was elected before any vote," is inaccurate. *See* **PageID.2585; Exhibit A – Meyer Declaration.** The Lead Reviewer decides on what sanction they are going to recommend to the Board of Ethics before a hearing. **Exhibit A – Meyer Declaration, ¶ 12.** However, the Board of Ethics then either accepts or rejects that sanction at the hearing. *Id.* It is common for the Board of Ethics to reject a sanction recommended by the Lead Reviewer. *Id.* ¶ 13.

### F. PLAINTIFF'S "INITIATION THEORY" MISCHARACTERIZES DEFENDANT'S RULES.

Plaintiff argues that Defendant's "Clinical Fellowship Guide" treats a partial segment as part of the Clinical Fellowship, and that therefore his time at Stepping Stones constitutes "initiation" of his fellowship regardless of whether it met substantive requirements. This argument conflates two distinct concepts: (1) the administrative tracking of time periods within ASHA's certification system, and (2) the substantive question of whether a fellow has "initiated" a clinical fellowship for purposes of the telepractice standard.

Defendant is entitled to interpret its own rules, and that interpretation is entitled to deference unless "clearly erroneous." *Cooley*, 459 F.3d at 714. Defendant determined that a period during which a fellow received only non-client training, provided no direct client care, and did not meet minimum supervisory requirements does not constitute "initiation" of a Clinical

Fellowship for purposes of the telepractice eligibility cutoff. That interpretation is reasonable, consistent with the purpose of the Clinical Fellowship (supervised clinical practice), and not clearly erroneous.

An accrediting body "is also entitled to make a conscious choice in favor of flexible standards to accommodate variation in purpose and character." *Parsons College v. North Central Ass'n of Colleges and Secondary Schools*, 271 F. Supp. 65 (N.D. Ill. 1967). "Neither precise definitions nor objective criteria are necessary." *St. Andrews Presbyterian Coll. v. S. Ass'n of Colleges & Sch., Inc.*, 679 F. Supp. 2d 1320, 1329 (N.D. Ga. 2009).

### G. Michigan Law Does Not Require a Different Result.

Plaintiff invokes Michigan common law and various Michigan authorities. Regardless of whether Michigan or federal common law governs, the standard is the same: whether the private professional association followed a fair procedure and whether its decision was arbitrary. *See Foundation*, 244 F.3d at 528 (identifying Michigan's *Maitland* standard as consistent with the federal approach). Under either framework, the question is whether the decision "is arbitrary and unreasonable or an abuse of discretion." That question is answered by the analysis above.

Plaintiff's reliance on *James v. Midland County Agricultural & Horticultural Society*, 107 Mich. App. 1, 308 N.W.2d 688 (1981), is misplaced. The conjunctive

test in *James* — requiring both that the association provide a speedy and effective process and that there be no evidence of fraud or oppression — is satisfied here. Plaintiff received a year-long, multi-stage process with counsel representation at every step, and his claims of "fraud" or "oppression" amount to disagreements with the Board's factual conclusions, not evidence of dishonest conduct by Defendant.

## IV. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that this Court deny Plaintiff's Motion for Summary Judgment on Count III. Defendant's Board of Ethics conducted a fair, multi-stage proceeding that provided Plaintiff with notice, opportunity to respond through counsel, accommodation of his disability, and multiple levels of review. The Board's decision was based on substantial evidence and was neither arbitrary nor unreasonable. Plaintiff's effort to obtain de novo factual review of the ethics proceedings is foreclosed by controlling Sixth Circuit authority.

Respectfully Submitted,

PLUNKETT COONEY

Dated: September 14, 2026 By: /s/Joshua J. Trombley

Joshua J. Trombley (P78858)
Attorneys for Defendant
333 Bridge Street, NW, Suite 530
Grand Rapids, MI 49504
(616) 752-4617
jtrombley@plunkettcooney.com

**CERTIFICATE OF COMPLIANCE (LCivR 7.2(b)(ii)**

I, Joshua J. Trombley, certify that the accompanying Motion for Summary Disposition and Brief in Support complies with the word count limitations of this Court.

I further certify that this document, excluding the parts of the document exempted by LCivR 7.2(b)(i), contains 2,687 words.

This certification is made in reliance on the word-count function of the word processing system Microsoft Word, used to prepare this document.