**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

RODERICK WRIGHT,

Plaintiff,

AMERICAN SPEECH-LANGUAGE-HEARING ASSOCIATION,

Defendant.

Case No. 1:25-cv-1367
Hon. Paul L. Maloney

---

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR AN ORDER UNDER FED. R. CIV. P. 56(g) STATING THAT A MATERIAL FACT IS NOT GENUINELY IN DISPUTE AND TREATING IT AS ESTABLISHED, OR IN THE ALTERNATIVE FOR DECLARATORY JUDGMENT**

---

## I. INTRODUCTION

Defendant American Speech-Language-Hearing Association ("ASHA") respectfully submits this Response in Opposition to Plaintiff Roderick Wright's Brief in Support of Motion for an Order Under Fed. R. Civ. P. 56(g) Stating That a Material Fact Is Not Genuinely in Dispute and Treating It as Established, or in the Alternative for Declaratory Judgment (ECF No. 91-1). The motion should be denied in its entirety.



63031678.1

Interestingly, the opening line of Plaintiff's Brief states that this is a case about "Defendant's retroactive reclassification of a Clinical Fellowship . . . " PageID.2504. This is despite the fact that Plaintiff's Complaint labeled this action as a claim under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973. *See* PageID.594. It appears that Plaintiff has abandoned those counts, despite the fact that those Counts are the ones that provided this Court subject matter jurisdiction over this lawsuit.

Plaintiff's motion is yet another attempt to relitigate the merits of ASHA's credentialing and ethics proceedings before this Court. Through the vehicle of Rule 56(g)—or, alternatively, declaratory judgment—Plaintiff asks this Court to establish as an undisputed fact that his Clinical Fellowship ("CF") "initiated no later than December 31, 2022." But this is precisely the disputed factual and interpretive question at the heart of this case. It is not a background fact amenable to a Rule 56(g) order; it is the central contested issue.

Plaintiff's strategy is transparent: if the Court declares the CF initiated in 2022, then ASHA's determination that Plaintiff exceeded the 25% telepractice limit (applicable to CFs beginning on or after January 1, 2023) collapses, and with it the foundation of the Board of Ethics' revocation decision. Plaintiff thus seeks to have this Court substitute its own factual finding for ASHA's considered

professional judgment—precisely the *de novo* review that Sixth Circuit precedent forbids.

The motion fails for multiple independent reasons. First, Rule 56(g) is unavailable because the CF initiation date is genuinely disputed—as Defendant has consistently maintained through extensive briefing and evidence in this case. Second, declaratory judgment under 28 U.S.C. § 2201 is improper because the start-date question is already subsumed within Plaintiff's existing claims. Third, and most fundamentally, this Court owes great deference to ASHA's interpretation of its own certification standards. *Thomas M. Cooley Law School v. American Bar Ass'n*, 459 F.3d 705, 712 (6th Cir. 2006). ASHA's determination that Plaintiff's CF did not validly begin until he commenced actual mentored clinical activities in 2023 is neither arbitrary nor unreasonable, and this Court should not second-guess it.

## II. STATEMENT OF FACTS

While Defendant restates that it is not the purpose of this Court to engage in its own "trial on the merits" or "factual review," Defendant submits this Statement of Facts to address Plaintiff's inaccurate statements and representations to this Court.

### A. ASHA's Clinical Fellowship Requirements.

ASHA's Certificate of Clinical Competence in Speech-Language Pathology ("CCC-SLP") requires, among other things, successful completion of a Clinical Fellowship. The CF is a mentored professional experience that must meet specific substantive requirements set forth in ASHA's Standards for the Certificate of Clinical Competence and the accompanying Implementation Procedures. These requirements include, inter alia, that at least 80% of the Clinical Fellow's major responsibilities during the CF experience must involve direct clinical contact with patients/clients, and that the CF must be completed under the mentorship of an ASHA-certified professional who provides both direct and indirect supervision. **PageID.661.**

The CF is not merely a period of employment or licensure—it is a structured professional experience that must satisfy ASHA's substantive standards from its inception. ASHA's Implementation Procedures and COVID-19 Telepractice Transition Guidance draw a critical line at December 31, 2022: CF experiences "beginning on or before December 31, 2022" permit up to 100% of direct client contact hours to be earned through telepractice, while those "beginning on or after January 1, 2023" permit only up to 25%. **PageID.661; PageID.670.**

## B. PLAINTIFF'S 2022 ASSIGNMENT AT STEPPING STONES WAS CANCELLED BEFORE CLINICAL WORK BEGAN.

In October 2022, Plaintiff entered into an employment agreement with The Stepping Stones Group for a placement as a Clinical Fellow at Albuquerque Public Schools in New Mexico. **PageID.11-16.** It should be noted that this private contract between Plaintiff and Stepping Stones ***has no relevancy to ASHA Certification.*** Plaintiff obtained a New Mexico Clinical Fellow license (SLPCF22006) on November 23, 2022.[1] **PageID.668.** A Clinical Fellowship Year Plan was signed on October 14, 2022 listing an October 17, 2022 beginning date. **PageID.17-18.**

However, critically, the Albuquerque placement was cancelled before Plaintiff ever began seeing clients, i.e. engaged in direct client contact. The assignment did not survive the winter break: client sessions never commenced, and Stepping Stones moved Plaintiff to "displaced" status—the employer's category for an employee "without an active assignment"—used "to redirect the employee to another assignment." **PageID.684-685; PageID.954.** Therefore, Plaintiff's supervisor, Hanawalt stated that she could not sign off on the Clinical Fellowship as she provided no clinical supervision to Plaintiff.

[1] This similarly has no relevancy to ASHA Certification.

Plaintiff's employment ran through January 31, 2023, but he performed no direct clinical services during the 2022 period. **PageID.684-685; PageID.954.**

### C. PLAINTIFF'S MENTOR DID NOT BEGIN SUPERVISING UNTIL FEBRUARY 2023

Rachel Johannes, who ultimately served as Plaintiff's CF mentor, confirmed in her own words: "I started as his mentor in early February 2023." **PageID.2396.** Johannes' mentorship began at a new placement—Hillcrest Elementary School in Carlsbad, New Mexico—where Plaintiff actually commenced direct clinical services with clients. This is when the substantive requirements of a Clinical Fellowship—mentored clinical experience with direct client contact—first began to be satisfied.[2]

While Johannes later signed a Clinical Fellowship Year Plan for the Carlsbad placement on October 24, 2023 (entering an "ESTIMATED BEGINNING DATE OF CFY" as "10/17/2022"), she did so eleven months after that date and confirmed this was the beginning date of the overall CF

---

[2] Plaintiff continues to attempt to conflate the state/employer clinical fellowship positions with ASHA Clinical Fellowship, which is ***separate and distinct.*** *See* PageID.2507. *See also* PageID.948 (identifying that ASHA's Certificate of Clinical Competence requirements are governed by ASHA's Standards and Implementation Procedures for the Certificate of Clinical Competence in Speech-Language Pathology and not by state regulations).



63031678.1

*experience*—not the period she personally supervised.[3] **PageID.354.** Johannes did not begin mentoring Plaintiff until approximately four months after the listed start date. **PageID.509.**

### D. Marlaina Stevenson Could Not Verify Clinical Work in 2022

Marlaina Stevenson was introduced as a mentor for Plaintiff on November 8, 2022. However, Stevenson was never able to observe or rate Plaintiff's clinical skills because no direct clinical services occurred during the 2022 period. The Stepping Stones assignment was cancelled before client sessions began. Stevenson could not serve as a CF mentor in any meaningful sense because there was no clinical work to supervise—the very essence of the mentoring requirement.

### E. ASHA Informed Plaintiff That His 2022 Period Did Not Count

On September 13, 2023, Director of Clinical Certification Amanda Gallagher specifically informed Plaintiff that his Stepping Stones period would not count and that his fellowship would be treated as beginning in 2023. **PageID.415-416.** This was not an arbitrary decision—it reflected ASHA's

[3] It should be noted that a separate report must be entered for each setting and each mentor during the CF experience. Therefore, Ms. Johannes could not verify time or activities that occurred before she became Plaintiff's mentor.

determination that the substantive requirements of a CF (direct clinical contact under proper mentorship) had not been met during the 2022 period.

### F. Plaintiff's April 2024 Application Reported a 2022 Start Date Under Johannes' Mentorship

In April 2024, Plaintiff submitted his application for certification reporting an October 2022 start date under the mentorship of Rachel Johannes. But Johannes did not begin supervising Plaintiff until February 2023—approximately four months after the reported start date. The application did not separately account for the period under Stevenson (during which no clinical work occurred) and the period under Johannes. This misrepresentation—reporting a start date under a mentor who had not yet begun supervising—formed part of the basis for the Board of Ethics complaint regarding false data in the application.

### G. The Board of Ethics Proceedings

Based on the discrepancies in Plaintiff's application, the Council for Clinical Certification ("CFCC") referred the matter for an ethics complaint. Laura Verdun, Vice-Chair of the CFCC, filed the complaint. The Board of Ethics conducted its review and determined that Plaintiff had (i) exceeded the 25% telepractice limit applicable to CFs beginning on or after January 1, 2023, and

(ii) knowingly provided false data as part of his Certification Application. The Board revoked Plaintiff's Certificate of Clinical Competence. **PageID.681.**

## III. STANDARD OF REVIEW

### A. RULE 56(G) STANDARD

Federal Rule of Civil Procedure 56(g) provides: "If the court does not grant all the relief requested by the motion, it may enter an order stating any material fact—including an item of damages or other relief—that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g). The rule thus permits the Court to identify facts *not genuinely in dispute*—it does not authorize the Court to resolve disputed factual questions in favor of the movant. The standard for whether a fact is "genuinely" in dispute is the same as under Rule 56(a): a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). But where—as here—the nonmovant (Defendant) has presented specific facts showing a genuine dispute, the movant is not entitled to have that fact established in its favor.

### B. Deference to Accrediting Bodies

Equally critical to the analysis here is the standard of review applicable to ASHA's credentialing decisions. The Sixth Circuit has made clear that courts review the decisions of private accrediting and professional certification bodies with "great deference." *Thomas M. Cooley Law School v. American Bar Ass'n*, 459 F.3d 705, 712 (6th Cir. 2006). Courts do not conduct de novo review; they examine only whether the accrediting body's action was "arbitrary and unreasonable." *Id.* at 713.

This deference extends to the organization's interpretation of its own standards. *Foundation for Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 244 F.3d 521, 528 (6th Cir. 2001). Professional organizations may maintain standards that are "stricter than the minimum requirements" of state licensing. *Liberman v. American Osteopathic Ass'n*, 620 Fed.App'x 470, 473 (6th Cir. 2015). And accrediting agencies are "entitled to make a conscious choice in favor of flexible standards" that need not be reduced to precise definitions. *Parsons College v. North Central Ass'n*, 271 F.Supp.65, 70 (N.D. Ill. 1967); *St. Andrews Presbyterian Coll. v. S. Ass'n of Colleges & Sch., Inc.*, 679 F. Supp. 2d 1320, 1329 (N.D. Ga. 2009).

## IV. ARGUMENT

### A. Plaintiff's Rule 56(g) Motion Must Be Denied Because the CF Initiation Date Is Genuinely Disputed.

While Defendant maintains that this Court should not engage in a *de novo* factual review as it relates to the "CF Initiation date," the CF initiation date is not an undisputed background fact. By Plaintiff's own admissions, it is the most contested factual and interpretive issue in this litigation. Defendant has consistently maintained—through its Answer, its Motion for Summary Disposition, its Response to Plaintiff's sanctions motion, and its Reply brief—that Plaintiff's CF did not validly begin until 2023. The parties have briefed this issue extensively, each presenting evidence and argument supporting their respective positions.

That Plaintiff presents evidence supporting a 2022 start does not mean the fact is *undisputed*. A party cannot convert a contested issue into an "established" fact under Rule 56(g) merely by filing a motion declaring the other side's position meritless. If that were sufficient, every summary judgment motion could be repackaged as a Rule 56(g) motion. The rule requires the *absence* of genuine dispute, not merely the *presence* of evidence on one side. *Anderson*, 477 U.S. at 248.

Here, the record demonstrates precisely the kind of genuine dispute that precludes a Rule 56(g) order:

First, Defendant has consistently taken the position—supported by evidence in the record—that the 2022 period at Stepping Stones did not constitute a valid CF start because: (a) Plaintiff performed no direct clinical services during that period; (b) the assignment was cancelled before client sessions began; (c) no adequate mentorship occurred (Stevenson could not rate Plaintiff's skills because she never observed clinical work); and (d) the substantive requirements of a CF—mentored clinical experience involving at least 80% direct client contact—were never met in 2022. **PageID.684-685; PageID.954.**

Second, Rachel Johannes—the mentor whose name appears on Plaintiff's application—confirmed that she "started as his mentor in early February 2023" **PageID.2396**, not in October 2022 as the application reports.

Third, ASHA's Director of Clinical Certification specifically informed Plaintiff on September 13, 2023 that the 2022 period did not count and that the fellowship would be treated as beginning in 2023. **PageID.415-416.** This was ASHA's formal institutional position, not merely preliminary staff guidance.

These are not "metaphysical doubts"—they are specific, concrete factual disputes supported by record evidence. *Matsushita*, 475 U.S. at 586. Accordingly, Plaintiff's Motion should be denied.

### B. DECLARATORY JUDGMENT IS NOT AN APPROPRIATE VEHICLE FOR RESOLVING THIS DISPUTE.

Plaintiff's alternative request for declaratory relief under 28 U.S.C. § 2201 fares no better. The Declaratory Judgment Act provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). But declaratory judgment is a discretionary remedy, and it is inappropriate where—as here—the issue raised is already fully subsumed within the parties' existing claims. *Boyles v. Am. Heritage Life Ins. Co.,* 2016 WL 4031295, at *11 (W.D. Pa. July 26, 2016).

The CF start date is not an independent controversy suitable for standalone declaratory relief. It is a subsidiary factual question that will be resolved as part of the adjudication of Plaintiff's existing claims—specifically, his denial-of-fair-procedure count (which challenges ASHA's revocation decision). Issuing a declaratory judgment on this subsidiary factual question would improperly pre-determine the merits of those claims by effectively ruling that ASHA's interpretation of its own standards was wrong.

Moreover, declaratory judgment cannot resolve genuinely disputed factual questions any more than Rule 56(g) can. Indeed, the summary judgment standard applies equally in the declaratory judgment context. *See e.g., Olympic Arms v. Magaw,* 91 F.Supp.2d 1061, 1066 (E.D. Mich. 2000). The existence of competing evidence on both sides of the CF start-date question makes declaratory relief wholly inappropriate. A declaratory judgment presupposes that a justiciable controversy exists and cannot be used to resolve factual disputes better suited for trial or summary judgment on the merits.

Plaintiff's motion is, in substance, a partial summary judgment motion dressed in declaratory judgment clothing. *Encore Furniture Thrifts & More LLC v. Doubletap, Inc.,* 281 F.Supp.3d 665 (M.D. Tenn. 2017))(declaratory judgment actions must not be used to bypass the procedural safeguards of summary judgment). The Court should not permit this procedural sleight of hand to circumvent the ordinary standards for resolving disputed facts.

### C. THE CF INITIATION DATE IS GENUINELY DISPUTED AND THIS COURT SHOULD DEFER TO ASHA'S INTERPRETATION OF ITS OWN STANDARDS.

#### i. ASHA's Determination That the CF Did Not Begin Until 2023 Is Entitled to Deference.

Even if Rule 56(g) or declaratory judgment were procedurally appropriate vehicles for resolving the start-date question (they are not), this Court should defer to ASHA's interpretation of when a CF has "initiated" under

its own standards. The Sixth Circuit has unequivocally held that courts must give "great deference" to the substantive decisions of private accrediting and certification bodies, reviewing their actions only for whether they are "arbitrary and unreasonable." *Cooley*, 459 F.3d at 712-13.

Courts are "not free to substitute [their] own judgment for that of the accrediting agency concerning the interpretation and application of accreditation standards." *Wilfred Academy v. Southern Ass'n of Colleges and Schools*, 957 F.2d 210, 214 (5th Cir. 1992); accord *Cooley*, 459 F.3d at 712. This principle applies with full force here.

ASHA has interpreted its standards to mean that a CF "initiates" when the fellow actually commences a mentored professional experience meeting ASHA's substantive requirements—including direct clinical contact comprising at least 80% of the fellow's major responsibilities. This interpretation is reasonable. A CF is not a mere administrative designation; it is a substantive professional experience designed to prepare the fellow for independent clinical practice. It would be unreasonable to treat a CF as having "begun" during a period when the fellow performed no clinical work, had no active client caseload, and received no clinical mentorship.

Plaintiff's position—that the CF "initiated" the moment paperwork was filed and a state license was issued, regardless of whether any actual clinical

fellowship activities commenced—collapses the substantive requirements of the CF into a mere administrative formality. ASHA was not arbitrary or unreasonable in rejecting that position.

### ii. Plaintiff's Documentary Evidence Does Not Establish an Undisputed Fact.

Plaintiff marshals an impressive array of documents—the employment agreement, the CFY Plan, the state licenses, the portal records—to argue that the CF "initiated" in 2022. But these documents establish, at most, that the administrative prerequisites for beginning a CF were in place in 2022. They do not establish that the substantive requirements of a CF were being met.

The employment agreement, **PageID.11-16**, shows that Plaintiff was hired for a placement as a Clinical Fellow. It does not establish that clinical fellowship activities—direct client contact under mentorship—actually commenced. Indeed, the record shows the opposite: the placement was cancelled before client sessions began.

The state licenses (SLPCF22006 and the Public Education Department license) show that New Mexico authorized Plaintiff to practice as a Clinical Fellow. But ASHA's certification requirements are independent of—and may be more stringent than—state licensing requirements. A state license to practice does not establish that an ASHA Clinical Fellowship has validly commenced

under ASHA's own standards. *Liberman*, 2015 WL 4925719, at *3 (professional organizations may maintain stricter standards than state licensing requires).

The Clinical Fellowship Portal records reflect *self-reported data* entered by Plaintiff, not ASHA's institutional determination that the CF had validly begun. The 1.00 week and 15.00 hours credited in the system were from an application segment that Plaintiff later cancelled. **Exhibit A – Meyer Declaration, ¶ 17.** Portal entries are data points, not adjudications. Indeed, the time entered was not credited; the system simply reflects the hours/weeks entered into each report, then ***shows that the time was not verified.*** *Id.* ¶ 18.

The CFY Plan signed October 14, 2022, **PageID.17-18**, lists an "ESTIMATED BEGINNING DATE" of October 17, 2022—but an estimated beginning date is precisely that: an estimate. It does not constitute ASHA's determination that the CF experience validly commenced on that date, particularly when the placement was cancelled before clinical work began.

### iii. Plaintiff's Reliance on Staff Communications Is Misplaced.

Plaintiff places great weight on Lilly Schwartz's September 12, 2023 guidance that the start date is "whatever day you actually began working at your placement" and that it "could include training/orientation on your first day/week." **PageID.26.** But this preliminary staff guidance does not constitute

a binding institutional determination. ASHA is a large organization with established procedures for formal determinations regarding certification.

Importantly, Director of Clinical Certification Amanda Gallagher entered the same email thread the very next day—September 13, 2023—and specifically contradicted Schwartz's preliminary guidance, informing Plaintiff that the Stepping Stones period would not count and the fellowship would be treated as beginning in 2023. **PageID.415-416**. Gallagher's determination, as Director, superseded the preliminary staff response. Plaintiff cannot cherry-pick the earlier, lower-level guidance while ignoring the subsequent formal institutional position communicated by the Director.

Similarly, Gallagher's internal email stating that Plaintiff "feels that he initiated the CF in 2022" and that "[t]he CFCC may very well approve it once appealed" is not an admission. It is a description of internal deliberation—Gallagher was reporting Plaintiff's own characterization and speculating about a future CFCC decision. Internal deliberation about possible outcomes is not a concession that one outcome is correct.

**iv. Rachel Johannes' Statement Does Not Resolve the Dispute.**

Plaintiff cites Johannes' statement that "Rodney started his CF experience on 10/17/2022." But Johannes simultaneously confirmed that *she* did not begin mentoring Plaintiff until February 2023—approximately four months later.

**PageID.2396.** The "CF experience" that Johannes references is the overall fellowship timeline, not the period of mentored clinical activity. Indeed, ASHA censured Johannes precisely for "[a]ffirm[ing] on a Clinical Fellow's mentor verification form that a Clinical Fellow began their Clinical Fellowship (CF) approximately four (4) months before the Respondent started supervising the individual." **PageID.509.**

The fact that ASHA found this very affirmation to be an ethics violation underscores that, in ASHA's professional judgment, the CF does not "begin" merely because a placement exists on paper. It begins when the substantive requirements—including actual mentorship—are being met. Johannes' statement is evidence of a disagreement, not proof that ASHA's position is wrong.

## D. PLAINTIFF'S EVIDENTIARY ARGUMENTS DO NOT WARRANT THE REQUESTED RELIEF.

### i. The Board of Ethics Review and Motions Form Is Properly Before the Court.

Plaintiff attacks ECF No. 38-1—the Board of Ethics Review and Motions Form—as "unsworn" and therefore inadmissible to create a factual dispute. **PageID.2517**. This argument fundamentally mischaracterizes the nature and function of the document.

The Review and Motions Form is an official ASHA document reflecting the Board of Ethics' proceedings—it is the Board's own record of its review and determination. Under the deferential standard applicable to credentialing bodies, this Court reviews the *record before the Board*, not a de novo evidentiary proceeding. *Cooley*, 459 F.3d at 712-13. The Board's official record of its proceedings is precisely the kind of document this Court should consider in assessing whether ASHA's decision was arbitrary or unreasonable.

Plaintiff's insistence on sworn testimony and trial-type evidence reflects a fundamental misunderstanding of the Court's role. The question is not whether this Court, sitting as a *de novo* factfinder, would reach the same conclusion as the Board. The question is whether the Board's determination—reflected in its official records—was arbitrary and unreasonable. The Review and Motions Form shows that the Board considered the evidence before it and reached a determination. That is sufficient to establish that ASHA acted through a reasoned process.

### ii. Plaintiff's Falcone Argument Is Inapposite.

Plaintiff cites *Falcone v. Middlesex County Medical Society*, 34 N.J. 582, 170 A.2d 791 (1961), for the proposition that applying an "unwritten requirement" is "patently arbitrary." **PageID. 2523.** At the outset, it should be noted that a decision from the New Jersey court has no binding effect in this Court.



63031678.1

Notwithstanding this deficiency, ASHA's position does not rest on an unwritten requirement. ASHA's published standards require that the CF involve direct clinical contact comprising at least 80% of the fellow's major responsibilities and that the experience be conducted under proper mentorship. **PageID.661.** These are written, published requirements.

ASHA's interpretation—that a CF has not "initiated" until these substantive requirements begin to be met—is a reasonable application of existing written standards, not the imposition of a new, unwritten requirement. Accrediting agencies are "entitled to make a conscious choice in favor of flexible standards" that need not define every term with mathematical precision. *Parsons College*, 271 F. Supp. at 70; *St. Andrews*, 679 F. Supp. 2d at 1329. The absence of a precise written definition of "initiation" does not make ASHA's reasonable interpretation arbitrary.

**iii. ASHA's Discovery Responses Do Not Concede the Issue.**

Plaintiff points to ASHA's "alleged" discovery admission that its standards do not "condition a 'start date' on prior direct client services," **PageID.865**, as though this settles the matter. It does not. The admission reflects that ASHA's *written standards* do not contain a textual prerequisite stating "you must have provided direct client services before a start date can be recognized." But the absence of that specific textual formulation does not mean

ASHA may not reasonably interpret its standards—which require 80% direct clinical contact and proper mentorship—to mean that a CF has not "initiated" when zero clinical contact and zero mentorship have occurred.

The discovery response also noted that the CF's components must be "verified by the proper CF mentor using the CF Mentor Verification Form." **PageID.865**. This qualification is significant—it reflects that ASHA's standards contemplate verification of substantive compliance, not merely administrative filing.

### E. GRANTING PLAINTIFF'S MOTION WOULD IMPROPERLY CONDUCT DE NOVO REVIEW OF ASHA'S DECISION.

At its core, Plaintiff's motion asks this Court to substitute its own interpretation of ASHA's standards for ASHA's considered professional judgment. If the Court declares that the CF "initiated" in 2022, it will have effectively ruled that ASHA's interpretation of its own standards—that initiation requires the commencement of actual mentored clinical activities—is wrong. That is precisely the kind of *de novo* substantive review that the Sixth Circuit has foreclosed.

*Cooley* instructs that courts must afford "great deference" to accrediting bodies' application of their own standards. 459 F.3d at 712. The question is not whether this Court might interpret "initiation" differently than ASHA did—it is

whether ASHA's interpretation was "arbitrary and unreasonable." *Id.* at 713. An interpretation that requires actual mentored clinical activity before a clinical fellowship is deemed to have "begun" is eminently reasonable—it is, in fact, the most natural reading of what a "clinical fellowship" means.

Plaintiff may disagree with ASHA's determination. He may present evidence supporting a different conclusion. But disagreement and competing evidence are what trials are for—they are not a basis for the Court to declare, as an established fact, that ASHA's professional interpretation of its own standards is wrong. To do so would "substitute [the Court's] own judgment for that of the accrediting agency concerning the interpretation and application of accreditation standards"—exactly what *Wilfred Academy* forbids. 957 F.2d at 214.

## V. CONCLUSION

For the foregoing reasons, Defendant ASHA respectfully requests that this Court deny Plaintiff's Motion for an Order Under Fed. R. Civ. P. 56(g) Stating That a Material Fact Is Not Genuinely in Dispute and Treating It as Established, or in the Alternative for Declaratory Judgment. The CF initiation date is genuinely disputed, Rule 56(g) and declaratory judgment are procedurally inappropriate vehicles for resolving this dispute, and this Court should defer to ASHA's reasonable interpretation of its own certification standards.

Respectfully Submitted,

PLUNKETT COONEY

Dated: September 14, 2026 By: /s/Joshua J. Trombley

Joshua J. Trombley (P78858)
Attorneys for Defendant
333 Bridge Street, NW, Suite 530
Grand Rapids, MI 49504
(616) 752-4617
jtrombley@plunkettcooney.com

**CERTIFICATE OF COMPLIANCE (LCivR 7.2(b)(ii)**

I, Joshua J. Trombley, certify that the accompanying Response in Opposition to Plaintiff Roderick Wright's Brief in Support of Motion for an Order Under Fed. R. Civ. P. 56(g) Stating That a Material Fact Is Not Genuinely in Dispute and Treating It as Established, or in the Alternative for Declaratory Judgment (ECF No. 91-1) complies with the word count limitations of this Court.

I further certify that this document, excluding the parts of the document exempted by LCivR 7.2(b)(i), contains 4,526 words.

This certification is made in reliance on the word-count function of the word processing system Microsoft Word, used to prepare this document.