UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

RODERICK WRIGHT,
Plaintiff,

v.

AMERICAN SPEECH-LANGUAGE-HEARING ASSOCIATION,
Defendant.

Case No. 1:25-cv-01367-PLM-MV
Hon. Paul L. Maloney
Magistrate Judge Maarten Vermaat

**PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT ON COUNT III**

## I. Introduction

Defendant's response states the governing test: "courts should focus on whether an accrediting agency . . . followed a fair procedure in reaching its conclusions." (ECF No. 94, PageID.2646, quoting *Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 713 (6th Cir. 2006).) Count III is a Michigan common-law fair-procedure claim against a private association with monopoly power. The duty is the fair procedure *Cooley* describes; the breach is the false account the Board was given; the sanction rests on that account. The record the Board voted on was false, and Defendant assembled it. Plaintiff's supervisor's December 8, 2022 email, the proof that his fellowship began in 2022, sits in the Board's file twice, and both copies are cut off at the same point (ECF No. 86-3, PageID.2418, 2426). Defendant's Review and Motions Form dropped two statements from the timeline it was built from: his question whether Defendant was "planning on doing this to everyone who began their CF in August," and his statement that he "will be submitting documents" showing he began in 2022 (ECF No. 86-3, PageID.2425, 2427; ECF No. 86-8, PageID.2444; ECF No. 38-1, PageID.416). The Form's opening entry states that

Plaintiff's "CF start date with Stepping Stones would be September of 2022," that his "CF was cancelled," and that he "only received non-client training." (ECF No. 38-1, PageID.415.) The last two are false. The September date comes from an application Plaintiff never submitted, and Defendant put it before the Board as his statement (ECF No. 86-3, PageID.2413; ECF No. 86-6, PageID.2439; ECF No. 71-4, PageID.771). Plaintiff's fellowship began on October 17, 2022 (ECF No. 1-3, PageID.18; ECF No. 1-2, PageID.12, 14). It was not cancelled (ECF No. 38-1, PageID.417; ECF No. 84-2, PageID.954). His training was not non-client (Ex. A, APS SLP Liaison email, Dec. 8, 2022; Ex. B, Hanawalt email, Dec. 12, 2022). The Form describes Marlaina Stevenson, the clinician Stepping Stones named as his prospective mentor, as the one who "was supposed to be" his mentor "before he was terminated." (ECF No. 38-1, PageID.416.) The claim that he was terminated is false (ECF No. 84-2, PageID.954). The Form calls the April 2024 application his "second." (ECF No. 38-1, PageID.416.) That is false. It was the only application he submitted (ECF No. 86-6, PageID.2439; ECF No. 86-3, PageID.2413). The remedy for a sanction imposed on a false record is a remand: "[t]he preferred remedy where a trial court finds an arbitrary decision is to refer the matter to the school for a fair hearing." *Maitland v. Wayne State Univ.*, 76 Mich. App. 631, 639, 257 N.W.2d 195 (1977).

**II. The record-limitation argument does not reach a claim about how the record was made.**

Defendant's lead argument is that review "is confined to the record before the decision-making body," so that "internal emails, metadata, drafting histories, and staff communications" may not be considered (ECF No. 94, PageID.2646-2647). It fails three ways. First, the statements Plaintiff challenges are in the Board's record. The complaint is the charging document (ECF No. 80-1, PageID.910-912), and the Review and Motions Form is, in Defendant's words, "the Board's own record of its review and determination." (ECF No. 95, PageID.2681.) Second, *Cooley*

directs the inquiry Defendant says is forbidden. Whether the agency "followed a fair procedure" asks how the record came to exist: who drafted the findings, on what account, and whether the respondent's submissions reached the decision-makers in the form he submitted them. 459 F.3d at 713. Defendant's case, *Foundation for Interior Design Education Research v. Savannah College of Art & Design*, 39 F. Supp. 2d 889, 894, 897-98 (W.D. Mich. 1998), addressed the bias allegations separately. Third, the drafting record was in Defendant's exclusive possession until March and April 2026. A record-limitation rule applied to evidence the deciding body withheld does not protect professional judgment. It protects the withholding. Plaintiff objected to the cropped email (ECF No. 61-6, PageID.681) and could not object to what Defendant held.

**III. Deference runs to a body's judgment, not to the accuracy of the account the judgment was built on.**

Defendant argues that *Dietz v. American Dental Ass'n*, 479 F. Supp. 554 (E.D. Mich. 1979), "actually supports Defendant's position" because it requires only "notice and an opportunity to be heard." (ECF No. 94, PageID.2649.) "Where an exclusion or expulsion is for a disciplinary reason[,] for example, failure to follow the rules[,] courts have held that a professional association must give notice and an opportunity to be heard . . . ." *Dietz*, 479 F. Supp. at 557. BE 25-003 found that Plaintiff "[k]nowingly provided false data" (ECF No. 45-2, PageID.508), the disciplinary side of that line. Affirming *Foundation*, *Found. for Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 244 F.3d 521, 528 (6th Cir. 2001), the Sixth Circuit read *Dietz* to hold that an association with "monopoly power" in its profession "has a fiduciary duty to be substantively rational and procedurally fair" (quoting *Dietz*, 479 F. Supp. at 557), and that *Dietz* "found that there were disputed issues of fact requiring discovery." *Id.* Defendant describes its programs as "the only NCCA-accredited programs in Audiology and

Speech-Language Pathology" (Ex. C, ASHA press release, July 9, 2018). Defendant does not dispute that it holds monopoly power.

An opportunity to be heard means an opportunity to have what one submits reach the people who vote, in the form submitted. Defendant's Practices and Procedures require the panel and the Board to "consider all information provided by" the respondent (ECF No. 92-3, PageID.2617, 2619). Plaintiff submitted his supervisor's December 8, 2022 email confirming that he could "complete [his] CFY experience as a TeleSLP since [he] began the CF experience before 12/31/2022." (ECF No. 1-5, PageID.22.) The complaint file contains that email twice, and both copies are cut off at the right margin, losing the ten words that carry the confirmation (ECF No. 86-3, PageID.2418, 2426). Plaintiff had sent that email to Defendant himself in September and October 2023, nearly a year before the complaint and before he had counsel (*id.*, PageID.2417, 2425). The Form recites the complete sentence, in its summary of Plaintiff's position, two pages after the opening entry (ECF No. 38-1, PageID.417). Counsel placed the complete email before the Board under its own tab (Bates 000191-000192) and objected that the complaint's copy was cut off (ECF No. 61-8, PageID.690-691). The Board voted 7-0. Asked to admit that the materials given to the Board contained only a partial version of the email, Defendant did not answer. It said only that "the emails contained within its previously produced claim file materials are the only emails in its possession related to Ms. Hanawalt." (ECF No. 77, RFA No. 8, PageID.867.) The response says only that Plaintiff's documents "were given to the Board," citing the declaration of Katharine Meyer and nothing else (ECF No. 94, PageID.2653). That sentence says nothing about the condition of the copies Defendant placed in the complaint file, or that anyone weighed the complete version against the cropped ones. A declaration is not the Board's record. The Form the Board voted on recites the email's confirmation only as

Plaintiff's position (ECF No. 38-1, PageID.417); neither the Form, the decision, nor the minutes mentions that the complete copy was before the Board or reconciles it with the cropped ones (*id.*, PageID.415-418; ECF No. 38-2, PageID.421-422; ECF No. 61-6, PageID.672-673).

Defendant argues that *James v. Midland County Agricultural & Horticultural Society*, 107 Mich. App. 1 (1981), is satisfied because Plaintiff's claims "amount to disagreements with the Board's factual conclusions, not evidence of dishonest conduct by Defendant." (ECF No. 94, PageID.2655-2656.) *James* conditions deference on the "absence of fraud or oppression." 107 Mich. App. at 7. Plaintiff does not dispute what follows from the facts the Board was given. He disputes that they were his facts, and that is the fraud. The entire basis stems from an application Plaintiff started in 2022 and never submitted. After his initial placement was cancelled, he asked Defendant to close that application, by phone "several times" and in writing (ECF No. 86-3, PageID.2413, 2430-2432; ECF No. 77, PageID.868; ECF No. 76-3, PageID.845). A Board that decides correctly on a false account has followed Defendant's procedure. It has not made that procedure fair.

**IV. The statements the Board was given that Defendant's documents contradict, and the five items Defendant calls substantial evidence.**

The Board voted on the Review and Motions Form (ECF No. 38-1, PageID.415-418). Defendant's panel reviewer built it from a four-page timeline written by Ms. Meyer (ECF No. 86-8, PageID.2442-2445; ECF No. 86-10, PageID.2458). Defendant offers five items as substantial evidence (ECF No. 94, PageID.2649-2650). Not one states a 2023 date on which the fellowship began, and each lands on a statement in the Form that Defendant's documents contradict. The ten numbered items below concern what the Board was given. Defendant's five items are answered where each one lands.

1. "[H]is CF start date with Stepping Stones would be September of 2022." (ECF No. 38-1, PageID.415.) That date comes from a draft Plaintiff never submitted. Plaintiff reported October 17, 2022, and Defendant's system records it (ECF No. 86-3, PageID.2391; ECF No. 1-3, PageID.18). *Defendant's first item*, "Plaintiff's own withdrawal" of that draft in December 2023, is not evidence of when a fellowship began in 2022. Plaintiff had asked Defendant to close it because the placement it named had been cancelled (ECF No. 76-3, PageID.845; ECF No. 86-3, PageID.2413, 2430). Defendant closed it (ECF No. 86-6, PageID.2437), and now calls the closure his withdrawal. That draft is why the Form calls the April 2024 application "the Respondent's second ASHA certification application" (ECF No. 38-1, PageID.416). That is false. Plaintiff submitted one application.

2. "[H]is CF was cancelled." (ECF No. 38-1, PageID.415.) That is false. The same Form, two pages later: he "continued his CF under Ms. Johannes" (*id.*, PageID.417). His employer: the contract "remained active beginning on 12/08/2022 and was **not canceled or terminated**." (ECF No. 84-2, PageID.954 (emphasis added).) The email the timeline quotes beneath that entry says what was cancelled: "the assignment was canceled at the last minute." (ECF No. 86-8, PageID.2442-2443.) Plaintiff's word is "assignment." The Form's word is "CF."

3. "During this employment, he only received non-client training." (ECF No. 38-1, PageID.415.) That is false. *Defendant's third item*, "lack of direct client contact," is this statement (ECF No. 94, PageID.2650). The training was on the district system for providers who "document their IEP related services for students on their caseload," which "also bills Medicaid for those students." (Ex. A; Ex. B.) Defendant holds no document from his employer or the district that the training did not occur (ECF No. 77, RFA Nos. 7, 14, PageID.866, 869). The Form recites that he "received his caseload of patients." (ECF No. 38-1, PageID.417.) Direct

client contact before November 23, 2022, would have required a state license he did not yet hold (ECF No. 61-4, PageID.668); on Defendant's reading, the absence of the one thing New Mexico law did not yet allow is evidence that his fellowship had not begun.

4. "In February of 2023, the Respondent began a new position with a different employer, which consisted of 100% telepractice and telesupervision during his CF experience." (ECF No. 38-1, PageID.415.) Plaintiff **continued** his CFY with a different employer (*id.*, PageID.417). Defendant's Guide provides for that: "Clinical Fellows may work in more than one location and they may have more than one CF mentor." (ECF No. 91-5, PageID.2555.) His fellowship was governed by the standards for fellowships beginning on or before December 31, 2022, which permitted 100% telepractice and telesupervision (ECF No. 86-3, PageID.2391; ECF No. 1-5, PageID.22). That percentage is the entire stated basis for the Principle II, Rule B finding, "exceeding the 25% telepractice limit" (ECF No. 38-2, PageID.421). Despite Defendant's record of an October 17, 2022 start (ECF No. 86-3, PageID.2391), the finding assumes a 2023 start, the only start date that makes the percentage a violation. The 2022 half of the standard is attached to the complaint twenty-one pages after the half the complaint recites (ECF No. 86-3, PageID.2388, 2409-2410).

5. "[T]he SLP who was supposed to be the Respondent's CF mentor at Stepping Stones before he was terminated." (ECF No. 38-1, PageID.416.) The claim that he was terminated is false. His employer states that the contract "was not canceled or terminated" (ECF No. 84-2, PageID.954). *Defendant's second item*, Ms. Stevenson's "mentor confirmation," is a statement by the mentor Plaintiff's employer had lined up to take over once client sessions began. Sessions never began at that placement, and Defendant's brief says so: "client sessions never commenced" (ECF No. 95, PageID.2666). Plaintiff's supervisor when the fellowship began was Victoria

Hanawalt, who signed his New Mexico Clinical Fellowship Year Plan naming October 17, 2022 (ECF No. 1-3, PageID.18), whom his employer identified to Ms. Stevenson as "the temporary supervisor on record" when it introduced her on November 8, 2022 (ECF No. 85-16, PageID.1279-1286), and whom the district copied as "his CFY supervisor" on the December 9 assignment (Ex. D).

6. "He requested that Certification not insist that he needs to do his CF after he completed 9 months of his CF." (ECF No. 38-1, PageID.416.) That is misleading. He wrote: "Please do not continue to insist that I 'need to do my Clinical Fellowship' after I completed 9 months of my Clinical Fellowship toward ASHA certification. I fall under the 2022 guidelines as already verified at the start of my CF Experience." (ECF No. 86-3, PageID.2427; *see* ECF No. 86-2, PageID.2385-2387.) The Form drops "as already verified at the start of my CF Experience."

7. *Defendant's fourth item*, that the April 2024 application omitted Ms. Stevenson, makes the omission of a mentor who mentored nothing a misrepresentation. No written standard requires listing a mentor under whom no hours were earned. The report form asks for the dates the **experience** began and ended, "Begin (Required)" and "End (Required)." It has no field for a mentor's dates (ECF No. 86-9, PageID.2451). Defendant's footnote that Plaintiff entered the October 17, 2022 date (ECF No. 94, PageID.2653 n.1) describes the screen headed "Time Reported by You"; Defendant issued the certificate on the screen reading "Mentor Verification Completed." (ECF No. 29-16, PageID.351; ECF No. 86-9, PageID.2451.) *Defendant's fifth item*, the "Johannes clarification," is, in Defendant's words, that "Plaintiff started his CF experience on October 17, 2022." (ECF No. 94, PageID.2650.)

8. The timeline records that Plaintiff "asks whether ASHA is planning on doing this to everyone who began their CF in August." (ECF No. 86-8, PageID.2444.) That sentence does not appear in the Form (ECF No. 38-1, PageID.416).

9. The timeline records that Plaintiff "states he will not be redoing his CF experience, and will be submitting documents to that effect." (ECF No. 86-8, PageID.2444.) That is misleading. It is not what he wrote. His words were: "I obviously will not be redoing my ‘CF experience’ since I have already completed the majority of the hours after I started my CF Experience in 2022 and will be submitting documents to that effect." (ECF No. 86-3, PageID.2427.) The Form keeps the first half of that sentence and drops the second (ECF No. 38-1, PageID.416). The document was proof that he began in 2022: his supervisor's December 8, 2022 email. He sent it on September 13, 2023, forty-five minutes after Defendant employee Amanda Gallagher first told him he had no 2022 start date (ECF No. 86-3, PageID.2417-2419; ECF No. 38-1, PageID.416). On October 5, after he had asked her to stop writing to him, she ignored his request and wrote again (ECF No. 86-3, PageID.2424). In response, he sent his supervisor's email a second time (*id.*, PageID.2425).

10. Between the August 2022 entry and the February 2023 entry, the Form records nothing (ECF No. 38-1, PageID.415). In that period Plaintiff held a New Mexico Clinical Fellow license (ECF No. 61-4, PageID.668), was assigned a caseload at Apache Elementary School, "Apache ES 1.0 FTE" (Ex. D, APS assignment emails, Dec. 9, 2022), and was trained in the systems the district uses to document and bill client services (Ex. A; Ex. B).

A decision-maker that supplies its evaluator with a selectively incomplete file acts arbitrarily: the Sixth Circuit reversed where an administrator "'cherry-picked' [the claimant's] file in hopes of obtaining a favorable report," *Spangler v. Lockheed Martin Energy Sys., Inc.*, 313

F.3d 356, 362 (6th Cir. 2002); *see Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 118 (2008). That is what happened here.

**V. The procedure Defendant describes is the procedure on paper. The record shows what happened inside it.**

Defendant lists notice, a written hearing, multiple levels of review, accommodation, and exhaustion (ECF No. 94, PageID.2651). Where the substance would appear, the record is blank: the page headed "EVIDENCE FOR FCH" is empty in every copy produced (ECF No. 92-4, PageID.2628-2630), and the minutes of both hearings record the motions and votes and no discussion of any document (ECF No. 61-6, PageID.672-677). The written hearing was, in Ms. Meyer's words a week before it, "no actual hearing." (ECF No. 71-2, PageID.768.) The full Board affirmed 13-0, carrying the panel's findings and sanction forward under "ICH DECISION WITH PROPOSED ICH SANCTION." (ECF No. 38-1, PageID.415, 418; ECF No. 38-2, PageID.421-422.) The second level changed nothing.

The rationale changed after the vote. The Principle II, Rule B rationale on the Review and Motions Form marked FINAL before the hearing reads: "as evidenced by the Respondent affirming they had met ASHA's certification requirements for their Clinical Fellowship after being informed by the ASHA's Director of Clinical Certification that he did not meet these requirements." (ECF No. 61-6, PageID.682.) That describes no violation. Plaintiff affirmed that he had met the requirements because he had: his mentor verified the 1,260 hours and 36 weeks Defendant's Guide requires, and Defendant certified him (ECF No. 91-5, PageID.2557; ECF No. 86-9, PageID.2451; ECF No. 86-3, PageID.2394). As for being "informed," that was Ms. Gallagher's email that his fellowship had not begun in 2022: one staff member's opinion, sent seven months before he applied, before there was anything to decide. The record says it had

begun: his supervisor's written confirmation (ECF No. 1-5, PageID.22) and the Council's rule for fellows who began on or before December 31, 2022 (ECF No. 61-2, PageID.661), which Ms. Gallagher had published under her byline on November 28, 2022 (ECF No. 61-5, PageID.669-670). The minutes of both hearings give a different rationale: "as evidenced by the Respondent exceeding the 25% telepractice limit of direct client contact hours." (ECF No. 61-6, PageID.672, 676.) Either the Board amended its rationale and its minutes record no motion doing so, or the words changed after the vote.

Drafting before the vote. Defendant calls draft findings "standard practice, not prejudgment." (ECF No. 94, PageID.2651.) On May 11, 2025, Ms. Meyer wrote to the panel reviewer, "I don't think there is another option other than revocation," and "we could revoke him for a short period of time, and then reinstate him." She wrote that Plaintiff's application came "with another CF mentor [Ms. Johannes] stating that she oversaw his mentorship from October 2022. (which he knew wasn't true.)" (ECF No. 71-3, PageID.769.) The application says no such thing; it reports October 17, 2022, as the date the experience began, and its form has **no field for when mentoring began** (ECF No. 86-9, PageID.2451). That day Ms. Meyer created version 1.0 of the Form and the timeline sent to the Board (ECF No. 76-2, PageID.836-839; ECF No. 86-11, PageID.2459). The reviewer wrote the Form from that timeline and voted at both hearings; the "Recused" line is blank (ECF No. 86-10, PageID.2458; ECF No. 92-7, PageID.2636-2637; ECF No. 61-6, PageID.672, 678). The rules and the sanction were written down by Ms. Meyer a month before the hearing. Paragraph 10 of her declaration (ECF No. 95-1) states that the Board of Ethics "is the sole authority on any sanctions, including revocation." That is false. Defendant's Practices and Procedures give the Council for Clinical Certification "final authority to deny or withdraw certification" (ECF No. 92-3, PageID.2625). Paragraph 8 describes the August 6, 2024

consult as advice "to be consistent with their past precedent." That is misleading. The email reads, "I am hoping that your past precedent in cases like these includes revoking his certification," and "it does appear that Mr. Wright engaged in dishonestly [sic]" (ECF No. 71-4, PageID.770). Paragraph 11 states that Plaintiff "inaccurately states that a sanction was decided in his case before a vote by the Board"; Plaintiff's motion states that the sanction was settled before the hearing, and paragraph 12 concedes it: the lead reviewer "decides on a proposed sanction . . . before a hearing." Paragraph 16 states that the portal time is not "verified time by ASHA." That is misleading. In Defendant's process, the mentor verifies the hours in Defendant's portal and recommends them "so that they count toward the CF experience" (ECF No. 91-5, PageID.2557), and Defendant's Certification Department then reviews the completed reports (ECF No. 96-1, PageID.2706). The screen Defendant acted on reads "Mentor Verification Completed," and Defendant issued the certificate on it (ECF No. 86-9, PageID.2451). Plaintiff objects to the declaration under Rule 56(c)(2) and (c)(4).

The Council. Defendant says the Council "referred the matter." (ECF No. 95, PageID.2669.) Defendant's production contains no record that the Council met, voted, or delegated authority to file. The complaint names the Council in a field reading "COMPLAINANT: (Individual filing the complaint)" and bears one signature (ECF No. 80-1, PageID.910-911). Defendant's staff drafted it. On October 5, 2023, Ms. Gallagher told Plaintiff he could appeal Ms. Stevenson's report to the Council, a report on a mentorship that had not begun (ECF No. 86-8, PageID.2444). His start rested on his supervisor's confirmation, which needed no appeal. Eleven months later, after sending Laura Verdun, a Council member, a staff-drafted complaint against his mentor to sign, Ms. Gallagher wrote: "Once this has been submitted, I will put together the complaint against Mr. Wright." (ECF No. 86-5, PageID.2436.)

She was the employee Plaintiff had complained about. Defendant's timeline says his October 5, 2023 complaint to its Action Center was that "she is harassing him" (ECF No. 86-8, PageID.2444). It omits that he had already asked twice: "I have told her twice so far to not contact me again." (ECF No. 86-3, PageID.2427.) That complaint sits in the ethics file she assembled against him (*id.*). The appeal route became the complainant. The complaint she drafted against him followed his complaint against her, and carried his complaint inside it.

**VI. Defendant's "initiation" requirement appears in no standard.**

Defendant's Clinical Fellowship Guide names the conditions for beginning: the CF "cannot begin until conferral of master's degree and appropriate state licensure." (ECF No. 91-5, PageID.2551.) Plaintiff's degree was conferred in 2002, and New Mexico licensed him on November 23, 2022 (ECF No. 71-4, PageID.771; ECF No. 61-4, PageID.668). Defendant admitted that its written standards contain no direct-contact prerequisite to a start date (ECF No. 77, PageID.865), and its certification staff told Plaintiff a start "could include training/orientation on [his] first day/week" (ECF No. 38-1, PageID.415). Plaintiff could not have knowingly reported a false start date in April 2024 by a test found in no standard Defendant has produced. Defendant calls Ms. Gallagher's September 13, 2023 email "Gallagher's determination, as Director" and "ASHA's formal institutional position" (ECF No. 95, PageID.2673, 2679). Defendant's Practices and Procedures vest that authority elsewhere: the Council for Clinical Certification "defines the standards for clinical certification, applies those standards in granting certification to individuals, and has final authority to deny or withdraw certification" (ECF No. 92-3, PageID.2625). Defendant's Guide makes the mentor's verification the means by which a fellowship is established (ECF No. 91-5, PageID.2557).

**VII. Prejudice is established by the same documents.**

Defendant argues that no error could have mattered because the fellowship "did not begin before January 1, 2023." (ECF No. 94, PageID.2652.) That is false. His supervisor confirmed in writing that he "began the CF experience before 12/31/2022" (ECF No. 1-5, PageID.22), and Defendant certified him on a verified October 17, 2022 start (ECF No. 86-3, PageID.2391, 2394). *Cooley* asks whether the party "would not have been sanctioned had these alleged errors not occurred." 459 F.3d at 716. Defendant says Plaintiff's "only basis" for a 2022 start was non-client training "his own mentor confirmed" was not a fellowship (ECF No. 94, PageID.2653). That is false on each point. The training was **not non-client training**: it was in the district's client documentation and billing systems (Ex. A; Ex. B). It was not his only basis: his supervisor's written confirmation was another (ECF No. 1-5, PageID.22). And Ms. Stevenson was not his mentor: his mentor, Ms. Johannes, verified the fellowship (ECF No. 86-3, PageID.2394).

**VIII. Conclusion**

The Board followed Defendant's procedures on a false account. A remand is the remedy. Plaintiff respectfully requests that the Court grant summary judgment on liability on Count III, set aside the decision in BE 25-003, and remand for a proceeding under Defendant's written procedures on a complete and accurate record, on the terms stated in the motion: an initiation date fixed as clause (i) provides; Board members and staff who had no role in BE 25-003; and no chronology or staff summary, "including the BE 25-003 case timeline and the Board of Ethics Review and Motions Form," that states or implies that Plaintiff cancelled his fellowship or began in 2023 (ECF No. 92, PageID.2567-2568).

Respectfully submitted,

Dated: September 28, 2026

/s/ Roderick Wright
Roderick Wright
6181 Lake Michigan Drive, #103
Allendale, MI 49401
(616) 990-9284
wrightiir@yahoo.com
Plaintiff, pro se

**CERTIFICATE OF COMPLIANCE**

Pursuant to LCivR 7.2(b)(ii), I certify that this reply brief complies with the word-count limitation set forth in LCivR 7.2(c). Applying the exclusions in that rule, this brief contains 4,257 words. The word count was generated by Microsoft Word, Version 2608 (Build 20326.20158).