UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

RODERICK WRIGHT,

Plaintiff,

v.

AMERICAN SPEECH-LANGUAGE -HEARING ASSOCIATION,

Defendant.
_______________________________/

Case No. 1:25-cv-01367

Hon. Paul L. Maloney
U.S. District Judge

**REPORT AND RECOMMENDATION**

## I. Introduction

This Report and Recommendation (R. & R.) addresses several motions:

- Defendant's motion for summary judgment – ECF No. 80;
- Plaintiff's motion for sanctions – ECF No. 84;
- Plaintiff's motion for summary judgment – ECF No. 91;
- Plaintiff's motion for summary judgment on Count III – ECF No. 92, and;
- Plaintiff's objections to the declaration of Katherine Meyer and Rule 56(h) motion – ECF No. 99.

Plaintiff Roderick Wright filed this complaint against Defendant American Speech-Language-Hearing Association (ASHA) challenging the revocation of a Certificate of Clinical Competence (CCC). Defendant revoked Plaintiff's CCC after determining that Plaintiff misrepresented his clinical fellowship experience. Plaintiff disagrees with Defendant's conclusion and states that Defendant violated the Americans with Disabilities Act (ADA) by failing "to make reasonable

modifications to policies, practices, or procedures" and by failing to "engage in the interactive process." ECF No. 58, PageID.601, (Count I). Plaintiff alleges that Defendant violated Section 504 of the Rehabilitation Act (RA) "by refusing to provide reasonable accommodations and by proceeding with disciplinary actions without addressing Plaintiff's disability needs." *Id.*, PageID.602, (Count II). Plaintiff further alleges a denial of fair procedures by conducting an ethics proceeding against him in a manner that denied him a fair opportunity to present evidence. *Id.*, (Count III). Plaintiff alleges that Defendant retaliated against him after he submitted a complaint for harassment in October of 2023 against Defendant's staff members, and after he requested accommodation in July of 2025. *Id.*, PageID.603, (Count IV).

The Sixth Circuit summarized the facts of this case in affirming the denial of Plaintiff's request for injunctive relief to prevent the enforcement and publication of the ASHA Board of Ethics decision:

> ASHA is a professional, scientific, and credentialing body for "audiologists; speech-language pathologists; speech, language, and hearing scientists; audiology and speech-language pathology assistants; and students." ASHA.ORG, *About the American Speech-Language-Hearing Association (ASHA)*, https://www.asha.org/about/ (last visited June 12, 2026). Graduate students seeking ASHA certification must complete a clinical fellowship, including a minimum number of hours providing care. At the start of 2023, ASHA ended its COVID-19-era policy of allowing applicants to complete their clinical fellowship hours 100% through telehealth; clinical fellowships beginning on or after January 1, 2023, cap telehealth hours at 25%.
>
> In October 2022, Wright began a placement as a clinical fellow to provide services to public schools in Albuquerque, New Mexico. He completed onboarding and training, but the placement was cancelled before he provided any direct care, and he did not begin his alternative placement until February 2023. Notwithstanding guidance from ASHA staff, Wright applied for certification using the 2022 start date and with more

> than 25% of his clinical hours completed by telehealth. ASHA granted Wright's application, but it subsequently determined that his application violated ASHA's code of ethics and revoked his membership for six months, after which Wright could petition for reinstatement.
>
> Wright sought further consideration and requested ADA accommodations based on his Complex PTSD diagnosis. His physician recommended six accommodations: "1. Extended deadlines (e.g., 45-60 days); 2. Written-only communication; 3. Clear, plain-language instructions; 4. Recognition of disability-related challenges; 5. Flexibility in submission formats; [and] 6. An interactive process acknowledging these needs." ASHA granted the request, promising to conduct all communications in writing, extending his time to respond, allowing Wright to submit a written statement, and accepting written answers to the Board's questions in lieu of an in-person hearing. ASHA's Board of Ethics ultimately affirmed the initial determination and six-month sanction.

ECF No. 83, PageID.925-926.

Defendant and Plaintiff both move for summary judgment. It is respectfully recommended that the Court grant Defendant's motion for summary judgment and dismiss this case, and deny Plaintiff's two motions for summary judgment. It is further recommended that the Court deny Plaintiff's motion for sanctions.

## II. The ASHA Board of Ethics Determination

In August of 2022, Wright applied for his CCC. In his application, he indicated that his clinical fellowship with Stepping Stones would begin in September of 2022. ECF No. 38-1, PageID.415. However, his start date was pushed back and "he only received non-client training and no direct client care." *Id.* Plaintiff then began a new position in February of 2023 with Early Childhood Education Center that involved telepractice and telesupervision. *Id.*

ASHA staff informed Plaintiff that his Stepping Stones experience would not count toward his clinical fellowship experience:

- September 13, 2023 (10:40 a.m.), Amanda Gallagher, ASHA's Director of Clinical Certification, responded to the Respondent and stated: "**Unfortunately, the scenario you described does not provide you with a CF experience start date in 2022 therefore you will need to meet the CF requirements for individuals initiating the CF experience on or after January 1, 2023. If I understand correctly, you did not ultimately work with any clients during your time with the Stepping Stones Group? If that is the case, then the experience cannot count toward your CF because: (i) you didn't receive the necessary direct and indirect mentorship during that time (which would be considered as a partial segment for purposes of your CF report) and (2) the time didn't include at least 80% direct care/care management of clients with communication, cognitive or swallowing difficulties.**"

- October 5, 2023 (3:55 p.m.), **Ms. Gallagher emailed the Respondent and again stated that the time spent under Ms. Stevenson's mentorship will not count toward his CF experience, which means that the start date of his CF experience was later than January 1, 2023. A CF start date after January 1, 2023, means that to be eligible for ASHA certification, the Respondent would need to complete at least 75% of their time in care and care management via direct, onsite, in-person service delivery.** Ms. Gallagher stated that the Respondent could appeal the information submitted by the CF mentor by sending a letter to the CFCC.

*Id.*, PageID.416 (ICH Review, October 2, 2024, complaint).

Further notations explain the rationale in more detail in response to Plaintiff's questions to ASHA:

- September 13, 2023, the Respondent sent several additional emails asserting that his CF experience started in 2022 and stated the following points: (1)He was assured his CF experience would count; (2) ASHA had stated that his orientation and training with the school system counted; (3) There is no difference between a CF who did their CF teletherapy and one who did not; (4) Individuals who did in-person Clinical Fellowship Years (CFYs) were not better than him; (5) It is not his fault his assignment was cancelled; and (6) ASHA should not contract him anymore, as he has enough stress in his life, and he will continue the process of his application submission.
- September 25, 2023, Marlaina Stevenson, the SLP who was supposed to be the Respondent's CF mentor at Stepping Stones before he was terminated, sent in an attachment to the Respondent's Clinical Fellowship Skills Inventory (CFSI) and she stated that the Respondent did not spend 80% of his work week in direct clinical contact with patients with communication and/or swallowing disorders. Ms. Stevenson noted that she couldn't rate the Respondent's CF experience because she did not observe or rate any of his skills as he only attended training, and it was not possible for the Respondent to meet the minimum requirement of 6 hours of direct and 6 hours of indirect supervising during this time.
- September 28, 2023, ASHA certification emailed the Respondent and noted that his CF Mentor stated that the hours he reported for his CF experience were not accurate.

*Id.*

Wright later filed a complaint with ASHA stating that Ms. Gallagher was harassing him and that he did not want to hear from her again. *Id.* In December of 2023, Wright withdrew his Certification Application. *Id.*

About four months later, on April 13, 2024, Wright submitted a second Certification Application to ASHA, which indicated that his mentor was Rachael Johannes. *Id.* Ms. Johannes initially verified that Wright's clinical fellowship experience started in October of 2022, and that accommodation during the COVID-19 pandemic justified a 25 percent telepractice and 100 percent telesupervision. *Id.* ASHA's Chief Certification Officer emailed Ms. Johannes, who confirmed that Wright's start date was October 17, 2022, and that his end date was February 29, 2024. *Id.*, PageID.417. The next day, on June 25, 2024, Plaintiff was awarded his CCC. *Id.* The very next day, on June 26, 2024, Ms. Johannes sent a clarifying email that indicated that Wright started his Clinical Fellowship on October 17, 2022, but it was cancelled before he could start seeing students, and then Wright began a new Clinical Fellowship (CF) under Ms. Johannes. *Id.* On July 1, 2024, Ms. Johannes reported in an email that she did not begin mentoring Wright until February of 2023. *Id.*

Since Wright had been previously advised by ASHA staff "that the CF experience he reported that began on October 5, 2022 (under the supervision of Ms. Stevenson) did not meet certifications standards and could not count toward CF experience for ASHA certification", a complaint before the ASHA ethics board was initiated against Mr. Wright. *Id.* Wright was aware of this fact, and he withdrew his initial application only to file a second application that failed to disclose the full factual details and falsely implied that he started his Clinical Fellowship in October of 2022, under the supervision of Ms. Johannes. *Id.*

During the ethics complaint process, Plaintiff was represented by counsel, and he denied making misrepresentations in his application. On June 26, 2025, the Board of Ethics found that Wright violated ASHA's Code of Ethics and revoked his membership and certification for six months. Wright was notified that the "proposed sanction is a formal disciplinary action of public record." *Id.*, PageID.418. Through his attorney, Wright requested further consideration. On October 24, 2025, the Board of Ethics affirmed the Initial Determination. ECF No. 38-2.

Wright filed this lawsuit on November 5, 2025. ECF No. 1. Wright filed his first amended his complaint on March 11, 2026. ECF No. 58.

## III. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475

U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

## IV. Analysis

The Sixth Circuit summarized the Counts in Wright's complaint and concluded that each Count was dependent on Wright's alleged claim that ASHA failed to accommodate him during the Board of Ethics proceedings. The Sixth Circuit stated:

> In his complaint, Wright alleges that ASHA failed to accommodate him as required by the ADA, that ASHA's failure to accommodate him was discrimination under the Rehabilitation Act, that ASHA's failure to accommodate him deprived him of fair procedure, and that ASHA's failure to accommodate him was retaliation for complaining about an ASHA staff member. In other words, all four counts in Wright's complaint depend on proving that he requested a reasonable accommodation during the ethics review process and that ASHA failed to provide it. *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 525 (6th Cir. 2021) (setting out the standard for a prima facie failure-to-accommodate claim). Even if Wright is attempting to argue that ASHA failed to engage in the informal interactive process required by the ADA, *see* 29 C.F.R. § 1630.2(o)(3), he still must start by showing that ASHA denied his request for accommodations, *see Thompson*, 985 F.3d at 525 (explaining that the "failure to engage in the interactive process does not give rise to an independent claim," and "[i]nstead, it is a violation of the ADA only if the plaintiff establishes a prima facie case of failure to accommodate").

ECF No. 83, PageID.927.

Wright alleges that Defendants violated his ADA and RA rights <u>during the ethics complaint process</u> by failing to fully address his requests and provide him with accommodations due to Post-Traumatic Stress Disorder. "Because the ADA sets forth the same remedies, procedures, and rights as the Rehabilitation Act . . . claims brought under both statutes may be analyzed together." *Thompson v. Williamson County*, 219 F.3d 555, 557, n. 3 (6th Cir. 2000) (citing *Maddox v. University of Tenn.*,

62 F.3d 843, 846, n. 2 (6th Cir. 1995)). Wright claims that Defendant ASHA failed to engage in the interactive process and failed to accommodate his requests during the Board of Ethics proceedings.

In determining the appropriate reasonable accommodation, both parties must engage in an informal interactive process in good faith. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 202-03 (6th Cir. 2010); *Hostettler v. Coll. of Wooster*, 895 F.3d 844, 857 (6th Cir. 2018). As set forth above, the Sixth Circuit recognizes that the "failure to engage in the interactive process does not give rise to an independent claim." *Thompson v. Fresh Prods., LLC*, 985 F.3d 509, 525 (6th Cir. 2021). Instead, Wright must establish a prima facie case of failure to accommodate. *Id.* First, Wright must show that he requested accommodation and that ASHA failed to provide it. *Id.* The Sixth Circuit has already observed that this is a difficult hurdle for Wright to overcome based upon the facts of this case. ECF No. 83, PageID.927. The Sixth Circuit stated:

> The opposite is true. After receiving documentation supporting Wright's request, ASHA agreed to significantly modify its procedure, going so far as to eliminate all-in-person proceedings. Wright fails to show that those accommodations were insufficient or that other requested accommodations were denied.

*Id.*

During the ethics proceeding, in which Wright was represented by counsel, Wright requested what he describes as "accommodations" during the process to allow him to better understand the process and make it easier for him to proceed through the process. As explained, Wright made a request for accommodation during the

Board of Ethics proceedings. On June 30, 2025, Wright sent a letter to ASHA informing ASHA of his PTSD with requested accommodation. ECF No. 38-3. A portion of that letter, which is dated June 30, 2025, is shown below.

> **Subject:** Request for Reasonable Accommodations Under the Americans with Disabilities Act (ADA)
>
> **To Whom It May Concern,**
>
> I am writing to formally notify ASHA that I have a diagnosed disability— Post-Traumatic Stress Disorder (PTSD), chronic, with dissociative symptoms (ICD-10 code F43.12), commonly referred to as Complex PTSD—which significantly impairs my ability to fully engage in the current ethics complaint and appeal process against me.
>
> I hereby request reasonable accommodations under the Americans with Disabilities Act (ADA) in connection with this matter. These accommodations may include, but are not limited to:
>
> - Modifications to communication methods,
> - Extensions or modifications of deadlines,
> - Any additional assistance necessary to ensure a fair and accessible process.
>
> Additionally, I request detailed information and supporting documentation regarding the basis for ASHA's initial determination—specifically the allegations relating to the teletherapy hours percentage. The Initial Determination provides no evidence or explanation to support its claims, severely impacting my ability to prepare an adequate response.
>
> **As a reasonable accommodation, I request:**
>
> 1. A detailed explanation and all supporting documentation used to form the teletherapy hours allegation.
> 2. **An explanation and documentation addressing why ASHA records reflect a CF start date of 2023, when I have already submitted clear, verifiable evidence demonstrating my CF began in 2022.**

*Id.*, PageID.424-25.

ASHA notified Plaintiff that it would require additional information by July 31, 2025. ECF No. 38-4. That deadline was subsequently extended to Aug. 11, 2025. ECF No. 38-5. Wright responded with a letter from Dr. Stephen J. Hickner stating that Dr. Hickner recommended: (1) extended deadlines, (2) written only commendations, (3) clear, plain-language instructions, (4) recognition of disability-related challenges, (5) flexibility in submission formats, and (6) an interactive process acknowledging these needs. ECF No. 38-6, PageID.434-35.

ASHA notified Wright's attorney that the requested accommodations were approved. ECF No. 38-7. Relevant portions of ASHA's letter dated Aug. 18, 2025, are shown below.

Ms. Kurzweil:

We have reviewed Mr. Wright's accommodation request to conduct the upcoming Further Consideration Hearing (FCH) entirely through written communication, based on his qualifying disability under the Americans with Disabilities Act (ADA). Thank you for providing the ASHA Ethics Office with medical documentation supporting Mr. Wright's need for this accommodation.

After careful consideration, ASHA has determined that granting Mr. Wright's request for written-only communication will not fundamentally alter the nature of the FCH process or create an undue burden on the organization.

Accordingly, Mr. Wright's accommodation request is **approved**. This means that:

- All FCH communications will be conducted in writing.
- Mr. Wright is invited to provide a written FCH statement in place of an in-person presentation.
- The BOE's questions for Mr. Wright are attached to this correspondence. He may submit his written responses to these questions with his written FCH statement.
- Mr. Wright may include any supporting materials he wants the BOE to consider.

As set forth above, to ensure a complete review, we request that Mr. Wright respond to the **seven (7) additional questions** in his written submission. His responses should be as detailed as possible and may include relevant documents, evidence, or statements.

In addition, the BOE will grant Mr. Wright **60 days** to submit the written FCH statement and the responses. This will provide adequate time to prepare these materials. The new submission deadline is **Friday, October 17, 2025.**

Wright has failed to present evidence showing that a genuine issue of material fact remains with respect to the issue of whether ASHA denied his request for reasonable accommodation; the evidence shows that Wright's requested accommodations were granted. As the Sixth Circuit stated, each of Wright's four counts are dependent on a showing that ASHA denied a reasonable request by Wright

for accommodation. The record fails to indicate a genuine issue of material fact regarding whether ASHA denied any of Wright's requests for accommodation. For this reason, it is recommended that the Court grant Defendant's motion for summary judgment because no genuine issue of material fact exists, thus entitling ASHA to judgment.

In his 38-page response brief, Wright backs away from his ADA and RA claims. His introduction states: "[a]t its core, this case is not about disability accommodations. It is about Defendant's retroactive reclassification of a Clinical Fellowship that began in 2022." ECF No. 86, PageID.2345. Wright is essentially asking this Court to reverse the decision made by ASHA's Board of Ethics, determine that he qualified by completing an appropriate Clinical Fellowship, and order ASHA to grant him a CCC. ECF Nos. 91 and 92. However, judicial review of an accrediting agency or organization's decision is limited:

> [G]reat deference should be afforded the substantive rules of these bodies and courts should focus on whether an accrediting agency such as the [ASHA] followed a fair procedure in reaching its conclusions. We are not free to conduct a *de novo* review or substitute our judgment for that of the [ASHA] or its Council. Rather, in analyzing whether the [ASHA] abused its discretion or reached a decision that was arbitrary or unreasonable, we focus on whether the agency "conform[ed] its actions to fundamental principles of fairness."

*Thomas M. Cooley L. Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 713 (6th Cir. 2006).

Here, Wright merely disagrees with ASHA's conclusion that he did not meet the necessary Clinical Fellowship standards for certification. ASHA consistently informed Wright what he needed to do to qualify for a CCC. Wright's disagreement with ASHA staff as to what qualifies for a Clinical Fellowship does not make ASHA's

decision unreasonable. Nor does Wright's statement that he did not misrepresent his Clinical Fellowship start date in his second application establish that ASHA's Board of Ethic's decision was unreasonable or arbitrary and capricious. The record shows that ASHA was very fair in handling Wright's application for a CCC, and fair during the Board of Ethic's process. Wright's disagreement with the outcome is not a basis for this Court's interference with ASHA's decision.

Wright moves for Rule 11 sanctions against ASHA and counsel based upon representations made in Defendant's motion for summary judgment that Wright did not complete the necessary Clinical Fellowship to obtain a CCC. ECF No. 84. Wright continues to assert that this is false because he disagrees with ASHA's finding that his asserted 2022 Clinical Fellowship start date was a false statement. A Court may impose sanctions under Rule 11 against an attorney or party who make representations for an improper purpose, to harass, cause delay, or to increase the cost of litigation, or who asserts arguments that have no basis in law, or factual contentions that lack evidentiary support. Fed. R. Civ. P. 11(b). The problem with Wright's motion for sanctions is simply that neither ASHA nor defense counsel made any false statements or improper legal or factual arguments in the motion for summary judgment. In the opinion of the undersigned, Wright has presented no reason to justify the imposition of Rule 11 sanctions against ASHA or counsel.

Finally, Wright objects to the Declaration of Katherine Meyer and asks the Court to not consider parts of the declaration in ruling on these motions. ECF No. 99. First, Meyer's declaration, which is attached to Defendant's response to

Plaintiff's motion for summary judgment, has not been considered in this R. & R. ECF No. 94-1. For that reason, Plaintiff's objections to the declaration are moot and respectfully should be denied. Moreover, Plaintiff's objections are simply argumentative.

### V. Recommendation

It is respectfully recommended that the Court grant Defendants' motion for summary judgment and dismiss this case.

It is further recommended that the Court deny Plaintiff's motion for summary judgment, Plaintiff's motion for sanctions, and Plaintiff's objection to the Meyer declaration.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within fourteen (14) days of receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated: October 19, 2026

/s/ Maarten Vermaat
MAARTEN VERMAAT
U.S. MAGISTRATE JUDGE